THE FOX LAW CORPORATION, INC.
Steven R. Fox, SBN 138808
srfox@foxlaw.com
17835 Ventura Blvd., Suite 306
Encino, California 91316
Tel: 818.774.3545; Fax: 818.774.3707

Attorneys for Creditor Data Leverage, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No.: 2:14-bk-29611 RK |
| | ) |
| Nikolay Machevsky, | ) Chapter 7 |
| | ) |
| Debtor. | ) **MOTION UNDER F.R.C.P. RULE 60(B)(1), (3) AND (6) TO SET ASIDE ONE PORTION OF ENTERED ORDER (1) APPROVING COMPROMISE; (2) AUTHORIZING TRUSTEE TO TRANSFER REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS; (3) REQUIRING DEBTOR TO TURN OVER REAL PROPERTY OF THE ESTATE; AND (4) AUTHORIZING TRUSTEE TO UTILIZE U.S. MARSHAL AND OTHER LAW ENFORCEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT** |
| | ) |
| | ) **(**Motion seeking shortened notice concurrently filed) |
| | ) |
| _____ | ) Date  : To Be Set<br>) Time  :<br>  Place : |

### TO THE HONORABLE ROBERT KWAN AND ALL INTERESTED PARTIES:

**COMES NOW** Data Leverage, LLC, ("Data Leverage") a New Mexico limited

liability company, with its Motion Under F.R.C.P. Rule 60(b)(1), (3) and (6) to Set

Aside One Portion of Entered Order (1) Approving Compromise; (2) Authorizing

Trustee to Transfer Real Property Free and Clear of Liens and Interests; (3)
Requiring Debtor to Turn over Real Property of the Estate; and (4) Authorizing
Trustee to Utilize U.S. Marshal and Other Law Enforcement.

In brief, Data Leverage requests that the Court modify its "Order (1) Approving
Compromise; (2) Authorizing Trustee to Transfer Real Property Free and Clear of
Liens and Interests; (3) Requiring Debtor to Turn over Real Property of the Estate;
and (4) Authorizing Trustee to Utilize U.S. Marshal and Other Law Enforcement"
("Order")(entered September 16, 2020, at docket 54), specifically, that portion
approving a sale of the two condominium units (the "Units") to Behzad Daniel
Binafard ("Binafard") for the reasons discussed below.  Data Leverage does not
request that any other portion of the Court's Order be set aside.

Data Leverage holds an allowed claim in the chapter 7 case, though in unusual
facts. In this case, the debtor, originally, did not disclose his interests in the units in
his schedules.  His chapter 7 case closed without the units being administered. Post-
closing, the debtor entered into a Purchase And Sale Agreement with Data Leverage
under which Data Leverage infused $293,694.87 to bring mortgage payments and
other property obligations current.  Under the Purchase And Sale Agreement, Data
Leverage would receive title to the units with the debtor retaining a life estate in unit
1802. Prior to the reopening of the debtor's bankruptcy case, Data Leverage did not
know of the debtor's closed bankruptcy case and the debtor's failure to disclose.[1]
Upon discovery, Data Leverage retained counsel, Michael Sment, who filed a proof of
claim for the $293,694.87.

---

[1] When Data Leverage learned of the closed bankruptcy case, Tanya Linton,
on behalf of Data Leverage, originally consulted with attorney Nancy
Zamora to learn what Data Leverage should or should not do and gave to
her check for a retainer.  Data Leverage was concerned, having advanced
over $293,000 in monies to bring one unit out of foreclosure, to pay
mortgage payments and taxes, etc. but then learning about the bankruptcy
case and the debtor's failure to disclose his interests in the units.  Data
Leverage was surprised that when the case was reopened, Ms. Zamora
represented the trustee and not Data Leverage and she returned the
retainer monies.  Data Leverage retained Michael Sment as its counsel.

1   When the trustee filed his Sale Motion, he did not serve Data Leverage with

2   notice or the Motion. The Motion did not provide for overbids.  Had Data Leverage

3   been served with notice and given an opportunity to overbid, it would have done so.

4   The Declarations provide evidence showing Data Leverage's ability to pay $1 million

5   to the estate.  Data Leverage offers $1,000,000 to purchase the Units.  The Court

6   should set aside its prior Order to sell the Units, reopen the sale process, and permit

7   over-bidding.

8   In his Motion, the Trustee stated, in essence, that Binafard's action for specific

9   performance in the superior court had rendered title to the units unmarketable.  Data

10   Leverage disagrees and is willing to overbid for the units without requiring that

11   Binafard dismiss the superior court action.  Data Leverage has conducted its own

12   analysis of that action and believes that Binafard will not prevail in this action. The

13   Trustee here evidently arrived at the same conclusion given his statements in

14   paragraph 10 of his declaration in support of the Sale Motion.

15   Data Leverage's monetary contributions of $293,694.87, during the time before

16   the case was reopened to preserve the units, is entitled to enhanced status under at

17   least one of these three approaches:

18   •   As an administrative claim as an actual and necessary cost and expense

19       to preserve the estate and the units.  §503(b)(1);

20   •   As a secured claim under §§549 and 550; and/or

21   •   As a substantial contribution under §503(b); Mediofactoring v. McDermott

22       (In re Connolly N. Am. LLC), 802 F.3d 810, 822 (6th Cir. 2015)

23   Setting aside the Order, reopening the sale process and seeking overbids such

24   as by Data Leverage, benefits the estate.

25   Data Leverage believes that the sale has not closed.

26

27

28

1    **Wherefore**, Data Leverage requests that the Court enter an order affording the

2    following relief:

3    •    Setting aside that portion of its prior Order approving the sale of the units

4         to Binafard.

5    •    Directing the Trustee to put the two units back up for sale but with a

6         provision for overbidding;

7    Dated: October 17, 2020                    Respectfully submitted,

8                                               THE FOX LAW CORPORATION

9

10                                              /s/ Steven R. Fox
                                                Steven R. Fox,
11                                              Counsel for Data Leverage, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

Title                                                                                                    Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. UNDERLYING FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.     The Bankruptcy Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     B.     The State Court Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1. Machevsky vs. Kleemoff Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2. The Binafard Law Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.     Data Leverage's Arrangement with the Debtor . . . . . . . . . . . . . . . . . . . . . 9

III. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     A.     Data Leverage did not Receive Notice of the
           Sale Motion in Time to Object and/or to Request
           that it be Permitted to Overbid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     B.     Data Leverage Would Have Submitted an Overbid,
           Despite the Binafard Action in the Superior Court Had
           the Trustee Provided Proper Notice of the Sale Motion.
           Data Leverage's Formal Offer for $1,000,000 . . . . . . . . . . . . . . . . . . . . . . 11
     C.     Data Leverage Contributed Substantial Benefit
           to the Estate that the Estate Must Reimburse if
           the Sale to Binafard is Consummated . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     D.     Alternatively Data Leverage Holds a Secured
           Claim for its Monetary Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     E.     Alternatively Data Leverage Holds an Administrative
           Claim for its Monetary Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     F.     The Court Should Set Aside its Order Authorizing
           the Sale to Binafard under F.R.B.P. Rule 9024 . . . . . . . . . . . . . . . . . . . . . 15

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DECLARATION OF STEVEN R. FOX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

DECLARATION OF TANYA LINTON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

DECLARATION OF DAVID L. PREYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1

**Table of Authorities**

2

Caselaw authorities:

3

Burlington Northern Railroad v. Dant & Russell, Inc.,
853 F.2d 700, 709 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4

De Saracho v. Custom Food March, Inc.,
206 F.3d 874,880 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5

6

Decker vs. Tramiel (In re JTS Corp.),
617 F.3d 1102, 1111–12 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7

In re Greiner,
152 F.3d 787, 789 (8th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8

9

Harper Macleod Solicitors v. Keaty & Keaty,
260 F.3d. 389, 398, no. 11 (5th Cir. 20100). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

10

Liljeberg v. Health Care Servs. Acquisition Corp,
486 U.S. 847, 864 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11

In re Iraj Maqsoudi,
566 B.R. 40 (Bankr. C.D. Cal 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12

13

In re Mammoth Mart, Inc.,
536 F.2d 950 at 954 (1st Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14

Mathews v. Eldridge,
424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). . . . . . . . . . . . . . . . . . . . . . . 11

15

16

Mediofactoring v. McDermott (In re Connolly N. Am. LLC),
802 F.3d 810, 822 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

17

Mosier v. Kupetz (In re United Education and Software),
2005 WL 6960237 (9th Cir. BAP 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

19

Statutory Authorities:

20

11 U.S.C.:

21

     §503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22

     §503(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

23

     §503(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

24

     §549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25

     §550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

26

     §550(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27

     §554(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

28

     §550(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rules of Civil Procedure:

Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

Rule 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Rule 60(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Rule 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Rule 60(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rules of Bankruptcy Procedure:

Rule 9023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 9024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Data Leverage is a creditor in this case holding an allowed claim.  After the bankruptcy case was initially closed but before it was reopened, Data Leverage made substantial monetary contributions that kept the units out of foreclosure and paid substantial mortgage payments and property taxes.  The Trustee moved to sell the units but <u>did not give notice to Data Leverage</u>.  Data Leverage learned of the Sale Motion and the subsequent order more than 14 days after the Order was entered.  Data Leverage desires to own the units, is willing to overbid in the amount of $1 million, which is $120,000 more than the Binafard purchase at $880,000.  This higher offer will greatly enhance the return to creditors.

Data Leverage seeks reconsideration of the Court's Order under sub-sections of F.R.C.P. Rule 60(b), seeks to reopen the sales process and desires to bid $1,000,000 for the Units.

**II. UNDERLYING FACTS**

A.    <u>The Bankruptcy Case</u>

In his bankruptcy schedules, the debtor did not disclose his ownership interest in two condominium units commonly known as 10701 Wilshire Boulevard, Nos. 1802 and 1803, Los Angeles, California 90024, previously designated herein as the "Units".

The debtor's case was closed with the former trustee filing a report of no-assets.  The Units were not administered and remained part of the bankruptcy estate pursuant to 11 U.S.C. § 554(d).

In May, 2019, prior to the reopening of the debtor's case, Data Leverage, having advanced $293,694.87 for the benefit of the debtor and to preserve the units from foreclosure, learned of the debtor's bankruptcy case and his failure to disclose his interests in the units.

Data Leverage consulted with (and paid) Nancy Zamora who had provided legal services in the past for persons connected with Data Leverage. Mr. Zamora then

apparently spoke with the current trustee who approached the U.S. Trustee.  The Court reopened the case, Mr. Avery was appointed trustee and he retained Ms. Zamora as his counsel.  Ms. Zamora returned the retainer and Data Leverage retained other counsel, Michael Sment.

By Order entered September 16, 2020 (docket no. 54), the Court authorized the Trustee to sell the estate's interests in the Units to Behzad Daniel Binafard ("Binafard") provided (1) Binafard pay $880,000 for the units and (2) Binafard dismissed his superior court action for specific performance with prejudice.

The Trustee did not serve his motion to sell the Units or the notice on Data Leverage.  Later, when Data Leverage contacted Ms. Zamora to learn about the status of the case, Ms. Zamora, on October 5, 2020, emailed to Data Leverage the Trustee's Opposition to the debtor's motion for reconsideration which disclosed the Trustee's motion to sell. [2]

B.    The State Court Actions.

To understand the factual context for the sale of the Units, one must consider two superior court actions.  In the debtor's action, the superior court found that the debtor owned the units. In the other, Binafard is seeking specific performance of a contract he entered with Izabella Kleemoff, the debtor's mother, to sell the Debtor's Units to Binafard.

1.    Machevsky vs. Kleemoff Lawsuit [3]

On March 10, 2015, the debtor filed in the state superior court *Machevsky vs Kleemoff, etc., et al.*, bearing Los Angeles Superior Court Case No. BC574900 (the "Machevsky Action").  A true and correct copy of the verified complaint filed by the

---

[2]    In contrast, the Trustee did serve Data Leverage with notice of the motion to compromise with the trustee in Izabella Kleemoff's Florida bankruptcy case. (Docket no. 46) Data Leverage does not know why it was served with one motion but not the other motion. The Trustee managed to serve notice of the Sale Motion on creditors who did not file proofs of claim but did not serve the notice on the Data Leverage, the creditor that did file a proof of claim.

[3]    The facts contained in this section are taken from the exhibits referenced in the text of this Motion.

debtor is attached hereto as **Exhibit "A"** and incorporated herein by reference.  The

court entered judgment on or about August 26, 2016, a true and correct is attached

as **Exhibit "B."** The Trustee had been aware of this fact as he attached the judgment

to his Sale Motion.

The debtor purchased unit 1802 in 1994 and he has apparently lived there

since then.  The debtor is a relative of the Kleemoffs.  Izabella Kleemoff ("Izabella") is

his mother.  For reasons not clear, in 2000, the Kleemoffs convinced the debtor to

transfer unit 1802 to the Kleemoffs and in exchange, they would let him always

occupy and possess unit 1802.  They would hold the property in trust for him.

The Kleemoffs purchased unit 1803 in 2002 and by intra-family transfer,

transferred unit 1803 into the debtor's name.  They combined the Units and the

debtor lived in both units.  In 2014, the Kleemoffs convinced the debtor to transfer title

to both properties to them and he would still be able to live there and possess it.

They would hold it in trust for him.

In early 2015, the debtor learned the Kleemoffs had put the Units up for sale

and had entered a purchase agreement to sell, without his consent.  The Kleemoffs

denied he had rights to possession and demanded he vacate.

The debtor filed suit on March 10, 2015, and a default judgment against the

Kleemoffs was entered on August 26, 2016.  The superior court:

- • Found the Kleemoffs held the property in constructive trust for the
  Debtor.

- • Cancelled and nullified the gift deed of 2000 transferring unit 1802 to
  Kleemoff and the quitclaim deed of June 11, 2014 in which Debtor
  transferred both units to his mother.  (*The significance of this is that any
  agreement that the Kleemoffs signed with Binafard to convey title to him
  would be void on the ground that the Kleemoffs did not own the units*.)

- • Held as follows: "Defendants, and each of them, and their respective
  agents, servants, and employees, and all persons acting under, in

7

concert with, or for the, are enjoyed and prohibited from sale of the

Property, particularly the Units 1802 and 1803, and acts directed to sell

the Property, or disposing of the Property in any way without Plaintiff's

consent."

• Identified the transfer documents and directed that they were to be

cancelled. The documents that were cancelled by the court were: (1) Gift

Deed of Nov. 13, 2000, Instrument No. 00-1770410 BK-PG.  This was

the transfer of unit 1802 to Izabella Kleemoff or the Kleemoff Family

Trust; and (2) Quitclaim Deed of June 11, 2014, Instrument No.

14-0602686 BK-PG.  This was the transfer of unit 1803 to Izabella

Kleemoff.

Judgment was entered in the Machevsky Action against the Kleemoffs on

August 26, 2016.  No appeal was taken from this judgment.  The state court's

judgment is a final judgment.  In the four plus years since judgment was entered, no

party has tried to set aside the judgment and the state court's declaration as to

ownership of the units.

Izabella Kleemoff had nothing to sell to Binafard.  His superior court action

continues but it would seem, in vain.

2.    The Binafard Law Suit [4]

Binafard's verified complaint, filed on July 1, 2015, is entitled *Binafard, etc., vs*

*Izabella Kleemoff, etc., et al.*, and bears Los Angeles Superior Court Case No.

BC586794 (the "Binafard Action").  A true and correct copy of his verified complaint is

attached here as **Exhibit "C"** and incorporated here as though fully set forth.

Binafard alleges he entered a purchase agreement with the debtor's mother,

Izabella, in February, 2015, for Izabella to sell the Units to him. Paragraph 12 of the

purchase agreement attached to his verified complaint references the debtor's

_____

[4]    The facts contained in this section are taken from the exhibits referenced in
this section.

occupancy in the Units.

Binafard's first cause of action is for specific performance against Izabella Kleemoff to compel enforcement of his purchase agreement.  The second cause of action for declaratory relief admits the debtor has a claim to the property and wants this claim resolved (and that of Izabella's husband's community interest) such that Binafard can purchase the units.

Binafard obtained a default judgment on or about Aug 8, 2016, initially against all of the defendants including the debtor.  The judgment was thereafter amended.

The debtor, however, filed a motion for relief from default and an answer on September 7, 2016.  The superior court granted his motion for relief from default on October 31, 2016.  The court later granted the debtor leave to file a cross-complaint, filed in January, 2019.  Binafard filed a  demurrer to the cross-complaint but the court overruled the demurrer.  Binafard filed an answer.  A true and correct copy of the debtor's verified cross-complaint is attached hereto as **Exhibit "D"** and incorporated herein by reference.

In his cross-complaint, the debtor alleges the judgment in the Kleemoff case canceling the transfers to Izabella thus rendered Izabella unable to transfer title to the Units.  The cross complaint also sought quiet title, injunctive and declaratory relief.

The Binafard Action is pending in the superior court.  Judgment was entered against all defendants other than the debtor.

D.    Data Leverage's Arrangement with the Debtor

From October, 2018 through July, 2019, Data Leverage advanced $293,694.87 for the benefit of the debtor and the Units.  The advances included reinstating the secured loan on unit 1802 (saving that unit from a trustee's foreclosure sale), making mortgage payments to the same lender, paying off a junior mortgage, paying property taxes on both Units (saving unit 1803 from a tax sale) and advancing monies to the

9

1  debtor for his legal fees in the Binafard action. [5]

2  Data Leverage made these advances under the terms of a Purchase And Sale

3  Agreement, dated October 30, 2018 it entered with the debtor.  The essential terms

4  required Data Leverage to advance funds to save the Units and, in return, Data

5  Leverage would obtain title to both of the Units, subject to the debtor having a life

6  estate in unit 1802. [6]  A life estate would allow the debtor, then about 50 years of age,

7  to live rent free for perhaps 30 years. Though Data Leverage advanced the monies

8  and performed, the parties did not record deeds as contemplated in the Purchase

9  And Sale Agreement.

10  **III. LEGAL ARGUMENT**

11  A.      Data Leverage did not Receive Notice of the Sale Motion in Time to

12          Object and/or to Request that it be Permitted to Overbid.

13  The Trustee's proof of service for the Sale Motion does not reflect service on

14  Data Leverage or on its then counsel, Michael Sment.

15  The Trustee's proof of service for the Notice of filing the Sale Motion does not

16  list Data Leverage or on its then counsel, Michael Sment.

17  The Trustee did serve creditors listed in the debtor's Schedule F but none of

18  these creditors filed proofs of claim, as did Data Leverage.

19  When Data Leverage later contacted Ms. Zamora, she provided, on October 5,

20  2020, the Trustee's opposition to the debtor's motion for reconsideration which is

21  what informed Data Leverage that the units were being sold.

22  A creditor's fundamental right is to receive notice of matters impacting its legal

23  rights.  "The fundamental requirement of due process is the opportunity to be heard at

24

25  [5]   The advances are evidenced by Data Leverage's filed proof of claim which
26        is attached hereto, marked Exhibit "E," and incorporated herein by
        reference as though set forth in full herein.

27  [6]   A copy of the Purchase And Sale Agreement is attached here, marked
28        Exhibit "F," and incorporated herein by reference as though set forth in full
        here.

10

a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  Data Leverage is a party in interest, a party of record, that should have been served but was not.

      B.     Data Leverage Would Have Submitted an Overbid, Despite the Binafard Action in the Superior Court Had the Trustee Provided Proper Notice of the Sale Motion. Data Leverage's Formal Offer for $1,000,000.

Had Data Leverage been afforded notice of the Sale Motion, it would have attempted to submit an overbid.

This is evidenced by the deposit by Data Leverage of $350,000 into its new bankruptcy counsel's client trust account plus a verbal commitment from First Credit Bank for the balance of the $1,000,000 offer.

Data Leverage's overbid for the units *does not include* a requirement that Binafard dismiss his superior court action.

Data Leverage's offer is $120,000 higher than the Binafard offer.

The Trustee did not test the market value of the Units but instead made an assumption that no one else would be interested in bidding.

The Trustee's conclusion that net proceeds from the Binafard transaction would be $170,000 is not an amount of money sufficient to pay administrative claims plus other claims in full.  Data Leverage's claim is for more than $293,000.  The Florida trustee has an unsecured claim as well.

Data Leverage formally offers to purchase the Units for $1,000,000 and is willing to negotiate a contract with the Trustee pending a hearing on Data Leverage's Motion.

      C.     Data Leverage Contributed Substantial Benefit to the Estate that the Estate Must Reimburse if the Sale to Binafard is Consummated.

The attached proof of claim (**Exhibit "E"**) reflects the infusion of $293,694.87 to bring the Unit 1802 out of foreclosure, to save Unit 1803 from a tax sale, to make mortgage payments, to pay property taxes, to fund the litigation with Binafard, etc.

11

1    The Trustee may take issue with particular items in the proof of claim.  However, the

2    essential thrust of the expenditures was to preserve the Units, the estate's primary

3    asset.

4         Without Data Leverage's contributions of money, the Units would have been

5    lost to foreclosure and the Trustee would have had no Units to sell.

6         There is a line of cases that holds, despite the language in §503(b)(3) limiting

7    reimbursement of substantial contributions to cases in chapter 9 and 11, that courts

8    may award claims for substantial contribution in other chapters.  See Mediofactoring

9    v. McDermott (In re Connolly N. Am. LLC), 802 F.3d 810, 822 (6th Cir. 2015). In this

10   case, the 6th Circuit determined that creditors had made a substantial contribution

11   worthy of reimbursement under §503 where the trustee had committed gross

12   negligence.

13        Although the Ninth Circuit Bankruptcy Appellate Panel in an unpublished

14   decision concluded otherwise, Mosier v. Kupetz (In re United Education and

15   Software), 2005 WL 6960237 (9th Cir. BAP 2005), in a published opinion, a

16   bankruptcy court in the Central District of California took issue with United Education

17   and questioned its logic.  In re Iraj Maqsoudi, 566 B.R. 40 (Bankr. C.D. Cal 2017)

18   found that the bankruptcy court could grant reimbursement to a creditor providing a

19   substantial benefit in a chapter 7 case.

20        Data Leverage contends, as an alternative basis, that it holds a claim for

21   substantial contribution and should be reimbursed.

22        D.    Alternatively Data Leverage Holds a Secured Claim for its Monetary

23             Contributions.

24        It may be that the debtor has transferred an equitable interest in the form of

25   liens in the Units to Data Leverage by virtue of the Purchase And Sale Agreement

26   and the parties' performances.  Data Leverage may alternatively hold an ownership

27   interest that would need to be considered before the Court can authorize the sale of

28   the Units.  Title 11 U.S.C. §549 provides that a trustee may not avoid a transfer of the

units to a good faith purchaser who, without knowledge of the bankruptcy case, has provided present fair equivalent value for a good faith purchaser, unless a copy of or notice of the bankruptcy petition was recorded with the county recorder.

Assuming that Data Leverage holds a secured claim, something which would have to be litigated, the Trustee may be selling Binafard a pig instead of fee interests in the two Units.  While the Units remained property of the estate, 11 U.S.C. § 554(d), Data Leverage acted without knowledge of the bankruptcy case and provided present fair equivalent value by paying off a lender who had taken a unit into foreclosure, making mortgage payments and paying property taxes.  The Purchase And Sale Agreement creates for Data Leverage at least an equitable lien in the Units, if not more, especially as Data Leverage performed its obligations under the Purchase And Sale Agreement.

The Trustee may not avoid this transfer for the following reasons:

11 U.S.C. §550 provides in part that a trustee may not recover from a transferee, such as Data Leverage, who took for value, in good faith and without knowledge that the transfer could be avoided.  §550(b)(1).

Even if the Trustee here could recover against Data Leverage, that recovery is limited by §550(e) as follows:

(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of-

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
(B) any increase in the value of such property as a result of such improvement, of the property transferred.
(2) In this subsection, "improvement" includes-
(A) physical additions or changes to the property transferred;
(B) repairs to such property;
(C) payment of any tax on such property;

13

1            (D) payment of any debt secured by a lien on such property that is

2               superior or equal to the rights of the trustee; and

           (E) preservation of such property.

3 11 U.S.C. § 550

4      Referring to §550 and its limitations on a recovery from a transferee, the Ninth

5 Circuit had stated that while the section's purpose is to undo a transfer and to restore

6 an estate to its condition had the transfer not taken place, it also stated:

7      Abiding its equitable underpinnings, a trustee's recovery under § 550 is

8      limited if the transferee took the transfer for value in good faith without

     knowledge of its voidability. 11 U.S.C. § 550(b)(1). A good faith

9      transferee is also permitted under § 550 to recover the value of any

10      improvements that were made after the transfer. 11 U.S.C. §

11      550(e)(1)(A).

12 Decker vs. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1111–12 (9th Cir. 2010).

13      E.     Alternatively Data Leverage Holds an Administrative Claim for its

14            Monetary Contributions.

15      Section 503(a) states that "[a]n entity may timely file a request for payment of

16 an administrative expense, or may tardily file such request if permitted by the court for

17 cause."

18      The Units remained property of the bankruptcy estate following the closing of

19 the bankruptcy case.  Data Leverage's infusion of more than $293,000 preserved the

20 Units for the benefit of the estate and is entitled to administrative expense priority.

21 See,  Burlington Northern Railroad v. Dant & Russell, Inc., 853 F.2d 700, 709 (9th Cir.

22 1988) citing In re Mammoth Mart, Inc., 536 F.2d 950 at 954 (1st Cir. 1976);  11 U.S.C.

23 § 503(b)(1)(A).

24      In calculating a net for creditors, the Trustee did not calculate Data Leverage's

25 administrative claim.

26 ///

27 ///

28 ///

1
2

F.    The Court Should Set Aside its Order Authorizing the Sale to Binafard
under F.R.B.P. Rule 9024

3
4
5
6
7
8
9

Data Leverage does not here and now allege that the Trustee committed a
fraud.  He may not have fully considered the state court litigation, e.g. the judgment in
the Machevsky Action that essentially vitiated the basis for the Binafard litigation, or
his ability to bring the Binafard action to an end by a dispositive motion, based on the
judgment in the Machevsky Action. In his Sale Motion, the Trustee did not indicate
that he had investigated the Units' fair market value or that he consulted with
creditors.

10
11
12
13
14
15

The Court approved the Sale Motion presumably on the basis that the sale was
within the Trustee's business judgment.  However, his business judgment was not
properly vetted as he did not give notice of the sale and the Sale Motion to Data
Leverage, one of the two creditors that actually filed claims. [7]  Had the Trustee given
proper notice, Data Leverage would have objected on the grounds discussed above
and it would have offered to overbid.

16
17
18

F.R.B.P. Rule 9023 provides that a motion for a new trial or to alter a judgment
shall be filed within 14 days after entry of judgment.  Data Leverage lacked
knowledge of the Court's Order on the Sale Motion to be able to utilize Rule 9023.

19
20
21
22

F.R.B.P. Rule 9024 also provides for relief from an order, by reference to
F.R.C.P. Rule 60.  Under Rule 60, the motion must be filed within a reasonable time
period.  F.R.C.P. Rule 60(c)(1).  Data Leverage bears the burden as to proof.  Harper
Macleod Solicitors v. Keaty & Keaty, 260 F.3d. 389, 398, no. 11 (5th Cir. 20100).

23
24
25

The Court should alter the order based on the following subsections of Rule
60(b): (b)(1); (b)(3); and (b)(6).  In brief, Data Leverage did not have notice of the
Sale Motion.  If one also considers the Trustee's failures, e.g., his failure to properly

26

27
28

[7]    Instead the Trustee noticed all of the creditors who did not file proofs of
claim. They have no interest in the sale.  The creditors with a stake were not
noticed of the sale or the Sale Motion.

1   notice the Sale Motion, his resulting failure to obtain the highest price possible and

2   the Trustee's failure to explain to the Court that the specific performance claim

3   Binafard asserts would have to overcome the difficult (if not impossible) burden of the

4   conflicting Machevsky judgment, further grounds under Rule 60 apply.

5       With respect to Rule 60(b)(1), the Court has the authority to reconsider its

6   Order due to surprise.  Here the Trustee did not serve the creditor who would have

7   appeared for the Sale Motion and overbid the Binafard offer.  Evidence of surprise is

8   contained in the Declaration of Tanya Linton, that it only learned of the Sale Motion

9   on October 5, 2020, after the Order had been entered.  Clearly, Data Leverage had

10  no notice or knowledge and has established surprise.

11      The Trustee's mistake in failing to give notice to Data Leverage would mean a

12  loss of $120,000 to the estate, the difference between the Binafard offer at $880,000

13  and the Data Leverage bid at $1,000,000.

14      Rule 60(c) requires a motion for relief to be brought within a reasonable time.

15  Here, notice of this Court's Order was not known to Data Leverage until October 5,

16  2020, when Ms. Zamora provided Data Leverage with the Trustee's opposition to the

17  debtor's motion for reconsideration.  The filing of this motion within a few weeks of

18  discovery and obtaining a letter of credit as proof of ability to perform demonstrates a

19  reasonable effort to bring this to the attention of this Court.  Data Leverage saved the

20  Units from foreclosure and a tax sale, filed a claim in the reopened case and seeks to

21  overbid the Binafard offer.  It has acted in good faith.

22      With respect to Rule 60(b)(3), its purpose is to provide relief from an order that

23  was unfairly obtained.  De Saracho v. Custom Food March, Inc., 206 F.3d 874,880

24  (9th Cir. 2000).  Data Leverage must clearly substantiate the misconduct rendering the

25  order unfairly obtained.   In re Greiner, 152 F.3d 787, 789 (8th Cir. 1998)

26      Here the Order was unfairly obtained because the Trustee's failure to serve

27  notice of the Sale Motion led to the granting of the Order approving the Sale Motion

28  without notice to Data Leverage.  If the Trustee had properly served the notice, then

1  Data Leverage could have attempted to overbid, obtain title to the Units and, on its

2  own, address the Binafard litigation.

3       Data Leverage desires to own the Units.  Instead of having an opportunity to

4  overbid, or at least to argue to the Court that overbidding should be permitted, Data

5  Leverage is making its arguments in the more restrictive confines of a motion for relief

6  from an order.  The Trustee's failure to properly serve notice of the Sale Motion is

7  misconduct as to Data Leverage rendering the manner in which the Trustee obtained

8  the Order unfair.

9       With respect to Rule 60(b)(6), this is a catchall provision, permitting relief to be

10 granted for a reason not set forth in (b)(1) through (5).  A court may utilize (b)(6) to

11 accomplish justice.  Liljeberg v. Health Care Servs. Acquisition Corp, 486 U.S. 847,

12 864 (1988).  Subsection (b)(6) applies the Trustee's apparent failure to market the

13 Units and to give notice of the sale to Data Leverage resulted in unnecessary injury to

14 the estate.

15      Given Data Leverage's showing under Rule 60, as well as the benefit to the

16 estate of reopening the sale process, the Court should set aside that portion of Order

17 on the Sale Motion authorizing the Debtor to sell the Units to Binafard.

18      The Purchase and Sale Agreement and Settlement Agreement entered by the

19 Trustee and Binafard (Exhibit A to the Motion to Sell, starting at Bates No. 36)

20 provides for the close of the transaction in paragraph 6e (Bates No. 38).  Under these

21 terms, the closing of the sale from the Trustee to Binafard will not occur until the

22 Trustee provides notice that any occupants have been removed or have vacated the

23 property.  The Trustee has 90 days following the finality of this Court's Order

24 approving the sale.  Taking action on this Motion is not moot because of the sale.

25      **IV.   CONCLUSION.**

26      Based on the foregoing, the Court is respectfully requested to reconsider and

27 to set aside that portion of its September 16, 2020, Order permitting the sale of the

28 Units to Binafard without the proper marketing of the Units to over bidders.

17

1    Wherefore, Data Leverage requests that the Court enter an order affording the

2  following relief:

3    •    Set aside that portion of its prior Order approving the sale of the Units to

4        Binafard.

5    •    Directing the Trustee to put the two Units back up for sale but with a

6        provision for overbidding.

7  Dated: October 17, 2020.                    Respectfully submitted,

8                                THE FOX LAW CORPORATION

9

10                               /s/ Steven R. Fox

11                               Steven R. Fox,
                                Counsel for Data Leverage, LLC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

# DECLARATION OF STEVEN R. FOX

I, Steven R. Fox, hereby declare and state as follows:

1.    I am an attorney at law licensed to practice in the State of California and before this Court.  The facts set forth in this declaration are personally known to me to be true and correct and if called upon to do so, I could and would testify competently thereto.  I am the principal of the Fox Law Corporation, Inc. ("TFLC").  TFLC is substituted counsel for Data Leverage, LLC.  My declaration is offered in connection with Data Leverage's Motion under F.R.C.P. Rule 60(b)(1), (3) and (6) to Set Aside One Portion of Entered Order (1) Approving Compromise; (2) Authorizing Trustee to Transfer Real Property Free and Clear of Liens and Interests; (3) Requiring Debtor to Turn over Real Property of the Estate; and (4) Authorizing Trustee to Utilize U.S. Marshal and Other Law Enforcement (the Sale Motion").

2.    Attached hereto, marked **Exhibit "A"** and incorporated herein by reference as though set forth in full herein, is a true and correct copy of the verified complaint the Debtor filed on March 10, 2015, in the Los Angeles Superior Court, styled *Machevsky vs Kleemoff, etc., et al.*, bearing the case no. BC574900 (the "Machevsky Action").  Attached hereto marked **Exhibit "B"** and incorporated herein by reference as through set forth in full herein, is a true and correct copy of the judgment that the Superior Court entered on or about August 26, 2016.   Attached as **Exhibit "G"** and incorporated herein as through set forth in full here is a true and correct copy of the docket from the Machevsky Action.

3.    Attached hereto, marked **Exhibit "C"** and incorporated herein by reference as though set forth in full herein is a true and correct copy, downloaded from the Superior Court's website of Binafard's verified complaint, filed on July 1, 2015, in the action styled *Binafard, etc., vs Izabella Kleemoff, etc., et al.*, and bears Los Angeles Superior Court Case No. BC586794 (the "Binafard Action").  Attached hereto, marked **Exhibit "D"** and incorporated herein by reference as though set forth in full herein is a true and correct copy of the debtor's verified cross-complaint filed on

January 23, 2019, styled *Machevseky vs. Benzad Daniel Biafard, etc., et al.* Attached as **Exhibit "H"** and incorporated herein as through set forth in full here is a true and correct copy of the docket from the Binafard Action.

4.    Attached hereto, marked **Exhibit "E"** and incorporated herein by reference as though set forth in full herein, is a conformed copy of Data Leverage's proof of claim.  I obtained it from the Court's PACER system.

5.    The service list attached to the Sale Motion reflects no service of the notice on Data Leverage.  However, Data Leverage was served with notice of the Trustee's "Trustee's Motion for Order Approving Stipulation by and Between Trustee and Jacqueline Calderin, Trustee of Kleemoff Bankruptcy Estate, Regarding Allowed Amount and Nature of Claim" (Motion at docket 45; Notice at docket 46).  A conformed copy of the Notice including its service list is attached hereto, marked **Exhibit "I"** and incorporated in full herein as though set forth in full herein.

6.    Via the Internet, I checked my firm's account yesterday and ascertained that Data Leverage had wired $350,000 to the account.  The monies will be held in my firm's client trust account.

I declare under penalty of perjury and under the laws of the United States of America that the forgoing is true and correct.

Executed this October 17, 2020, at Encino, California.

/s/ Steven R. Fox

Steven R. Fox

# DECLARATION OF TANYA LINTON

I, Tanya Linton, declare as follows:

1.      I am an individual.  My business address is 3995 East Thousand Oaks,

Blvd., Westlake Village, CA 91362  My statements here are based on my personal

knowledge as someone who assists Data Leverage, LLC in the conduct of its

business affairs.  If called to testify concerning the contents of my declaration, I could

and would do so competently.

2.      With respect to Data Leverage, I am one of its custodian of records.  I

am one of the people who have responsibility for maintaining its books and records.  I

have negotiated on behalf of Data Leverage.  Its managing member is my son, David

L. Preys, under whose direction I have taken actions for Data Leverage's benefit.

3.      Data Leverage holds an allowed claim in the chapter 7 case, although in

unusual facts. The Debtor did not originally disclose his ownership interests in the two

Units in his bankruptcy schedules.  His case closed without the Units being

administered and, as I understand it, the Units did not leave the bankruptcy estate.

After the case closed, Data Leverage and he debtor entered into a Purchase And

Sale Agreement under which Data Leverage agreed to infused and in fact did infuse

$293,694.87 to bring mortgage payments, property taxes and other property

obligations current for the Units.  Under the Purchase And Sale Agreement, Data

Leverage would receive title to the Units with the debtor retaining a life estate in unit

1802.

4.      In May, 2019, Data Leverage, having advanced $293,694.87 for the

benefit of the debtor and to preserve the Units from foreclosure and tax sale, learned

of the debtor's bankruptcy case and his failure to disclose his interests in the Units.

5.      When we learned of the closed bankruptcy case, we knew enough to

know that there was a problem.  On Data Leverage's behalf, I consulted with Nancy

Zamora, an attorney I have known over the years and from whom I have previously

sought legal advice for persons or companies connected with Data Leverage. I hired

1  her for a consultation and for legal services so that Data Leverage would know what

2  to do.  Following the consultation, I sent her a retainer check from Data Leverage.

3       6.      Ms. Zamora then apparently spoke with the current trustee who

4  approached the U.S. Trustee.  The Court reopened the case, Mr. Avery was

5  appointed trustee and he retained Ms. Zamora as his counsel.

6       7.      I was surprised that when the case was reopened Ms. Zamora was

7  representing the trustee and not Data Leverage.  She returned the retainer monies and

8  Data Leverage retained Michael Sment as its counsel for this matter.  Mr. Sment then filed

9  Data Leverage's proof of claim for $293,694.87.  I understand that Mr. Sment did not put his

10  email address on the Court's electronic filing system for receiving pleadings.

11       8.      When the trustee filed his Sale Motion, he did not serve Data Leverage with

12  notice or the Motion. I am aware of this fact because I have read the notice of the Sale

13  Motion and it reflects service of the notice on a number of creditors but not on Data

14  Leverage.  Also, had the notice been served on Mr. Sment, then he would have made me

15  aware of the notice.  With notice, Data Leverage would have sought to overbid. Data

16  Leverage and affiliated companies have into the six figures in securities and other

17  investments.  We have already deposited $350,000 into Mr. Fox's client trust account and

18  have a verbal commitment for the balance of the monies through a letter of credit from to be

19  issued within a week by First Credit Bank for the balance of our offer for $1 million to

20  purchase the Units.

21       9.      I note the Trustee's statement in the Sale Motion that Binafard's action for

22  specific performance in the superior court had rendered title to the Units unmarketable.  I

23  disagree.  Data Leverage is willing to overbid for the Units without the requirement that

24  Binafard dismiss the superior court action.  We conducted our own analysis of his action

25  and we believe that Binafard will not prevail in his specific performance lawsuit.  I believe,

26  based on the Trustee's declaration at para. 10 in support of the Sale Motion that he agrees

27  with my assessment.

28  ///

10.    The Court granted the Trustee's Motion authorizing the Trustee to sell the estate's interests in the Units to Behzad Daniel Binafard ("Binafard") for $880,000 provided Binafard would dismiss the superior court action for specific performance with prejudice.

11.    Having known Ms. Zamora for many years, I telephoned her after Mr. Sment had been unsuccessful in reaching her.  While we did not speak, we were able to communicate by email where I learned on October 5, 2020 about the Debtor's motion for reconsideration of the Sale Motion and, through that, the Sale Motion itself.  Ms. Zamra attached the Trustee's Opposition to the debtor's Motion for Reconsideration to her email, but not the Sale Motion.

12.    In contrast to the Trustee's failure to serve notice of the Sale Motion on Data Leverage, when the Trustee served notice of its motion to compromise with the Florida trustee, the Trustee here served Data Leverage.  I do not understand how the Trustee could have served Data Leverage with one motion (to which it presumably would not have an objection) but chose to not serve Data Leverage with the Sale Motion (where Data Leverage very much had an interest).

13.    Perhaps 2 years ago, I spent time reading pleadings in both of the two lawsuits described below in my declaration.

1. Machevsky vs. Kleemoff Lawsuit

14.    On March 10, 2015, the debtor filed in the state superior court *Machevsky vs Kleemoff, etc., et al.*, bearing Los Angeles Superior Court Case No. BC574900 (the "Machevsky Action").  The court entered judgment in favor of the debtor on or about August 26, 2016.

15.    In this action, the debtor sued his mother, Izabella Kleemoff ("Izabella") and his step father.  The verified complaint describes the factual background.  In brief he sued to recover ownership of the two Units and he succeeded. The debtor sued the Kleemoffs after they put the Units up for sale and had entered a purchase agreement to sell to Binafard.  He obtained a judgment by default against the Kleemoffs.  To my knowledge, no one has taken an appeal from the judgment which is now about 4 years old.

23

2.    The Binafard Law Suit

16.    Binafard's verified complaint, filed on July 1, 2015, is entitled *Binafard, etc., vs Izabella Kleemoff, etc., et al.*, and bears Los Angeles Superior Court Case No. BC586794 (the "Binafard Action").  Binafard alleges a purchase agreement between the debtor's mother, Izabella and himself, entered into in February, 2015, for Izabella to sell the Units to him.

17.    Binafard obtained a default judgment on or about Aug 8, 2016, initially against all of the defendants including the debtor, the judgment was thereafter amended but then the debtor filed a motion for relief from default and an answer on September 7, 2016.  The superior court granted his motion for relief from default on October 31, 2016.  The court later granted the debtor leave to file a cross-complaint, filed in January, 2019.  Binafard filed a  demurrer to the cross-complaint but the court overruled the demurrer.  Binafard filed an answer.  This action including the cross complaint by debtor are pending in the state court.

3.    Data Leverage's claim.

18.    Between October, 2018 through July, 2019, Data Leverage advanced $293,694.87 for the benefit of the debtor and the Units.  The advances included taking unit 1802 out of foreclosure, pulling unit 1803 out of a property tax sale,  reinstating the secured loan held against unit 1802, making mortgage payments to the same lender, paying off a junior mortgage, paying property taxes and advancing monies to the debtor for his legal fees in the Binafard action. Data Leverage's proof of claim evidences these payments.

19.    Data Leverage made these advances under the terms of a Purchase And Sale Agreement, dated October 30, 2018 it entered into with the debtor.  The essential terms required Data Leverage to advance funds to save the Units and, in return, Data Leverage would obtain title to both of the Units, subject to the debtor having a life estate in unit 1802. We had estimated that the debtor's life estate would last for perhaps 30 years.  Though Data Leverage advanced the monies and performed, the parties did not record deeds as contemplated in the Purchase And Sale Agreement.

///

24

1    20.    A true and correct copy of Data Leverage's proof of claim is attached as

2 **Exhibit "E."** I approved the proof of claim before it was filed.  As to the Purchase And Sale

3 Agreement, I assisted in its preparation and negotiation. Attached hereto, marked **Exhibit**

4 **"F"** and incorporated herein by reference as though set forth in full herein, is a true

5 and correct copy of the Purchase And Sale Agreement under which Data Leverage

6 advanced funds.

7    21.    Data Leverage's overbid does not depend on Binafard dismissing his superior

8 court action.

9    22.    Data Leverage's offer is $120,000 higher than the Binafard offer.

10    23.    The Trustee's states that net proceeds from the Binafard transaction would be

11 $170,000. That is not an amount sufficient to pay the existing proofs of claim plus the

12 Florida trustee's unsecured claim of $66,000. [8]

13    24.    Data Leverage submits its bid for $1,000,000 without the requirement that

14 Binafard dismiss the specific performance action.

15    I declare under penalty of perjury and under the laws of the United States of America

16 that the forgoing is true and correct.

17    Executed this October 17, 2020, at Encino, California.

18

19

Tanya Linton

20

21

22

23

24

25

26

27

28

---

[8]    It is not clear whether the Trustee considered the homestead exemption.

25

# DECLARATION OF DAVID L. PREYS

I, David L. Preys, declare as follows:

1.      I am an individual.  My business address is 317 Commercial St. NE, Suite A PMB310, Albuquerque, NM 87102.  My statements here are based on my personal knowledge as the managing member of Data Leverage, LLC in the conduct of its business affairs.  If called to testify concerning the contents of my declaration, I could and would do so competently.

2.      Data Leverage, LLC seeks to make a formal offer to purchase the Units for $1,000,000.  We have tendered the sum of $350,000 to the client trust account of our current counsel, The Fox Law Corporation, Inc.  While Data Leverage, LLC has sufficient assets and securities to cover the balance of the offer, we have negotiated with First Credit Bank to issue a letter of credit for the $650,000 balance.  I have been verbally informed that the application has been approved, subject only to the approval of the bank's board which meets next week.

3.      Formally, as Data Leverage, LLC's managing member, I am authorized to and am making the offer of $1,000,000 to purchase the subject Units, commonly known as 10701 Wilshire Boulevard, Nos. 1802 and 1803, Los Angeles, California 90024.

I declare under penalty of perjury and under the laws of the United States of America that the forgoing is true and correct.

Executed this October 17, 2020, at Calabasas, California.


David L. Preys

26

# Exhibit "A"

FEE WAIVER

Filed in *forma -pauperis* (CRC s 50, et seq.) per order
dated: _____

Amount recoverable pursuant to GC §68637
Plus a one time administrative fee upon judgment if the
party becomes a judgment creditor (GC §§6103.5, 68608

1    Julia Sklar, Esq. (Bar No. 200948)
     LAW OFFICES OF JULIA SKLAR
2    14414 Hamlin Street.
     Van Nuys, California 91401
3    Telephone: (818) 904-1597
     Facsimile: (818)947-0177
4
     Attorneys for Plaintiff
5    Nikolay Machevsky

FILED
Superior Court Of California
County Of Los Angeles

MAR 1 0 2015

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Judi Lara

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

12   NIKOLAY MACHEVSKY,                    )   Case No:   BC 5 7 4 9 0 0
                                           )
13                Plaintiff,               )   PLAINTIFF'S VERIFIED COMPLAINT
                                           )   FOR:
14   vs.                                   )
                                           )   1. Fraud
15   IZABELLA KLEEMOFF; MICHAEL            )   2. Constructive Fraud
     KLEEMOFF; KLEEMOFF FAMILY TRUST       )   3. Imposition of Constructive Trust
16   AKA KLEEMOFF LIVING TRUST; and        )   4. Cancellation of Instrument
     DOES 1 through 100, inclusive,        )   5. Declaratory Relief
17                                         )   6. Injunctive Relief
                                           )
18                Defendants.              )
                                           )
19   _____ )

20        Plaintiff Nikolay Machevsky complains and alleges as follows:

21                       **GENERAL ALLEGATIONS**

22        1.    Plaintiff Nikolay Machevsky, the individual (hereinafter - "Plaintiff") is now, and

23   at all times mentioned in this complaint was, the resident of the State of California, County of Los

24   Angeles.

25        2.    Defendant Izabella Kleemoff is now, and at all times mentioned in this complaint

26   was, the resident of the State of California, County of Los Angeles.

27        3.    Defendant Michael Kleemoff is now, and at all times mentioned in this complaint

28   was, the resident of the State of California, County of Los Angeles.

                                            1

4.      Kleemoff Family Trust aka Kleemoff Living Trust is, and at all times mentioned herein was, a California trust formed under and by virtue of the laws of the State of California, with its principal place of business in Los Angeles, California, County of Los Angeles.

5.      Defendants Izabella Kleemoff,  Michael Kleemoff and Kleemoff Family Trust aka Kleemoff Living Trust and defendants designated as Doe are referred hereinafter collectively as "Defendants."

6.      The true names and capacities of Defendants Does 1-100, inclusive, are unknown to Plaintiff at this time, who therefore sue said Defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each defendant named as a DOE is responsible for each and every act/obligation hereinafter set forth.    Plaintiff will amend this complaint by inserting true names in lieu of the fictitious names, together with apt and proper charging words, when the true names and capacities are ascertained.    All references in this Complaint to Defendants shall be deemed to include DOE Defendants.

7.      Plaintiff is informed and believes, and thereon allege, that each Defendant named in this Complaint, including DOES, was at all times herein mentioned, and now is, the agent, servant, affiliate,  subsidiary, partner, member, associate, insider,  representative or employee of each of the other Defendants, including DOES, and all of the things alleged to have been done by Defendants were done in the course and scope of agency, employment, service, subsidiary relationship, partnership, membership, association, or representative relationship, with knowledge and consent of their respective principals, employers, masters, parent corporations, partners, members, associates or representatives.

8.      The obligations sued upon herein was incurred and payable in the County of Los Angeles, State of California.

9.      Plaintiff alleges that the real property subject to this Complaint is located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles, CA.   The Legal Description of the property is as follows: Tract no. 23389; Subd. Crown Towers HOA TR#23389Condominium Unit 90 City/Muni/TWP: Regional cluster 07/07/397.   The real property is further referred as "Unit 1802."

10.      Plaintiff further alleges that another real property subject to this Complaint is located

1  at 10701 Wilshire Blvd. Apt. 1803, Los Angeles, CA.   The Legal Description of the property is

2  as follows: Lot 1 Tract No. 23389 Map Ref. MB901 PG41-43 City/Muni/TWP: Los Angeles. The

3  real property is further referred as "Unit 1803."

4       11.   Plaintiff alleges that this complaint is a real property claim and affects the title

5  and/or right to possession of the aforesaid real properties.

### FIRST CAUSE OF ACTION

**Fraud**

**(Against All Defendants)**

9       12.   Plaintiff repeats, reiterates and incorporates all the allegations set forth in

10  paragraphs 1 through 11, inclusive, as if set forth in full herein.

11       13.   Plaintiff purchased in 1994 the real property designated herein as Unit 1802.   The

12  purchase was recorded on March 29, 1994 by Recorder's Office of the Los Angeles County as the

13  Document no. 94-0614792 BK-PG.   Plaintiff is the only one who has ever lived in this property.

14       14.   In 2000, defendants convinced plaintiff to transfer the Unit 1802 to them with the

15  promise that the property will be held always in trust for him, that he will always have the right to

16  possession of this property and be actually allowed to occupy the property.

17       15.   In reliance on the aforesaid representation of defendants, plaintiff transferred the

18  Unit 1802 to defendants by a Gift Deed which was recorded on November 13, 2000 by Recorder's

19  Office of the Los Angeles County as the Document no. 00-1770410 BK-PG.

20       16.   The Unit 1803 was purchased by defendants n 2002.  In 2012, defendants suggested

21  to plaintiff to combine the Units 1802 and 1803 in one large unit, and promised defendant that he

22  will always have the right to possession of this combined unit and actually allowed to occupy the

23  property.   For this purpose, defendants transferred the Unit 1803 to plaintiff by Intrafamily

24  Transfer which was recorded on March 15, 2012 by Recorder's Office of the Los Angeles County

25  as the Document no. 12-0407509 BK-PG.   The two units were actually combined, and, again,

26  plaintiff is the only one who has ever lived in this property.

27       17.   In 2014, defendants convinced plaintiff to transfer the Unit 1803 back to defendant

28  Izabella Kleemoff with the promise that the property will be held always in trust for him, that he

3

COMPLAINT
030

1 will always have the right to possession of this property and be actually allowed to occupy the

2 property.

3       18.    In reliance on the aforesaid representation of defendants, plaintiff transferred the

4 Unit 1803 to defendant Izabella Kleemoff by a Quitclaim Deed which was recorded on June 11,

5 2014 by Recorder's Office of the Los Angeles County as the Document no. 14-0602686 BK-PG.

6       19.    In 2015, plaintiff has discovered that defendants put the Units 1802 and 1803 on the

7 market for sale, and entered in a purchase agreement to sell the property, without plaintiff's

8 consent. Defendants deny plaintiff's right to possession of the property and demand that he vacate

9 the property.

10       20.    Each of the aforesaid representations by defendants to plaintiff were in fact false.

11 At the time these willful, malicious and fraudulent representations were made by defendants to

12 plaintiff, said defendants knew that the representations were false. Besides, defendants concealed

13 from plaintiff and suppressed the material facts as to their true intentions in making the

14 representations.

15       21.    The willful, malicious and fraudulent representations were made by defendants

16 with the intent to defraud plaintiff by inducing him to transfer to them the Units 1802 and 1803

17 and to defraud plaintiff in making said transfers, and by that falsely deprive plaintiff of his right

18 to possession of the property.

19       22.    At the time these representations were made, plaintiff was ignorant of their

20 falsity, but believed them to be true. Had plaintiff known the true facts, he would not have

21 transferred the property to defendants, to perform the acts described therein.

22       23.    Plaintiff transferred to defendants the Units 1802 and 1803 in reasonable reliance

23 on these representations by defendants, and risked by that his right to possession of the property.

24       24.    As a direct and proximate result of the aforesaid misrepresentations and/or failures

25 to disclose by defendants, plaintiff has been damaged in that he is deprived of his rights to

26 possession of the real property, faces the loss of the property that belongs in fact to him, and he has

27 to submit to the defendants' demand to vacate the property with no other place for plaintiff to live.

28 Defendants have infringed on the plaintiff's right to possession of the property.

1    25.    Defendants acted with the full knowledge of the consequences thereof and the

2    damage to plaintiff that may be caused, and that the substantial harm to plaintiff was substantially

3    certain to follow their conduct.   The conduct was not only willful, but also oppressive and

4    malicious.

5    26.    Defendants acted knowingly, maliciously, oppressively, willfully, in conscious

6    disregard of the probable consequences of their conduct, in despicable manner, with the full

7    knowledge of the risk and conscious disregard of plaintiff's rights, so as to justify an award of

8    exemplary and punitive damages.

9    ## SECOND CAUSE OF ACTION

10   ### Constructive Fraud

11   ### (Against All Defendants)

12   27.    Plaintiff repeats, reiterates and incorporates all the allegations set forth in

13   paragraphs 1 through 26, inclusive, as if set forth in full herein.

14   28.    As plaintiff and defendants are the close relatives, the fiduciary and/or confidential

15   relationship exist between the parties, especially because defendants are holding the title to the

16   aforesaid property in their name.  Therefore, plaintiff believed in the representations of defendants

17   that they will keep their promises, that after the transfer the Units 1802 and 1803 from plaintiff to

18   defendants the property will be held always in trust for him, that he will always have the right to

19   possession of this property and be actually allowed to occupy the property.

20   29.    As described herein above, the representations were false.   Defendants breached

21   the aforesaid trust and confidence that plaintiff reposed in them, and the duty owed to plaintiff as

22   arising from said trust and confidence, as defendants are selling the property without his consent.

23   At the same time, defendants are gaining an advantage from the confidential relationship as they

24   continue to hold the title to the property in their name.

25   30.    Defendants failed to disclose to plaintiff that they were going to sell the property,

26   did not intend to allow plaintiff to further occupy the property, and by that misled plaintiff to his

27   prejudice, in that he continues to live on the property and maintain it in all its interior and exterior

28   aspects.

31.     Plaintiff actually and justifiably relied on the false representations of defendants as he had transferred the property to them as described above.

32.     As a direct and proximate result of the defendants conduct, plaintiff has suffered damages as described herein above.

### THIRD CAUSE OF ACTION

**Imposition of Constructive Trust**

**(Against All Defendants)**

33.     Plaintiff repeats, reiterates and incorporates all the allegations set forth in paragraphs 1 through 32, inclusive, as if set forth in full herein.

34.     By virtue of the plaintiff's acquisitions of the Units 1802 and 1803, as described herein above, he has the right to the property in each and every respect, including the right to possession of the property.

35.     Defendant have failed and continue to fail and refuse to acknowledge the plaintiff's right to the property, including the right to possession of the property, as it had been promised to plaintiff upon the aforesaid transfers of the property to defendants.  In doing so, they violate the plaintiff's right to the property, including the right to possession of the property.

36.     In doing so, defendants violate the plaintiff's right to the property, including the right to possession of the property.   Defendant  fraudulently induced plaintiff to transfer the property to them, what he actually did, with the defendant's full knowledge that they were going to keep the property to themselves, to keep the title to the property, with the intention to sell the property on their own as if the property belongs to them, without allowing plaintiff to exercise his rights to the property, including the right to possession of the property.

37.     Plaintiff is informed and believes and on that basis allege that defendants now retain the title to the property fraudulently, by commission of a wrong.   Defendants  hold the title to the property which they should not, in equity and good conscience, hold , enjoy and sell, and which they are not entitled to by virtue of the breach of their promises to plaintiff.

38.     At the time plaintiff was transferring the property to defendants, he was unaware that defendants were not going to honor their promises, and justifiably relied on the promises.

COMPLAINT
033

39.    The failure of defendants to acknowledge the plaintiff's right to the property, the efforts to sell the property without the plaintiff's consent, entering into real estate purchase agreement to sell the property are the wrongful acts and defendants are going to be unjustly enriched if they are allowed to sell the property belonging to plaintiff.

40.    By committing the fraud, the wrongful acts described herein, defendants became involuntary trustee thereof, for the benefit of plaintiff, and therefore plaintiff seeks hereby imposition of a constructive trust over the defendants in regard to the subject property, to wit the Units 1802 and 1803.   To prevent unjust enrichment and to prevent defendants from taking advantage of their wrongdoing, plaintiff seeks a declaration that defendants as far as they hold their title to the property, either present or reverted back, hold therefrom the property in trust for plaintiff as constructive trustee for the benefit of plaintiff, and should convey the property to plaintiff.

41.    Unless the relief requested herein is granted, plaintiff will unfairly lose his rights to the real property, including the right to possession of the property, the right to occupy the property and actually to continue to live in the property, with no other place to live.   Unless the relief is granted, defendants will continue in their holding the title to the property, deriving benefits from the breach of their promises to plaintiff, including the sale of the property without plaintiff's consent.

## FOURTH CAUSE OF ACTION

### Cancellation of Instrument

### (Against All Defendants)

42.    Plaintiff repeats, reiterates and incorporates all the allegations set forth in paragraphs 1 through 41, inclusive, as if set forth in full herein.

43.    The following are the written recorded instruments:

Gift Deed recorded on November 13, 2000 by Recorder's Office of the Los Angeles County as the Document no. 00-1770410 BK-PG, in regard to the transfer of the property located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles CA.

Quitclaim Deed recorded on June 11, 2014 by Recorder's Office of the Los Angeles

1          County as the Document no. 14-0602686 BK-PG, in regard to the transfer of the

2          property located at 10701 Wilshire Blvd. Apt. 1803, Los Angeles CA.

3       44.      There is a reasonable apprehension that if left outstanding said instruments may

4 cause serious injury to plaintiff for the reasons set forth herein.

5       45.      For the reasons set forth in this Complaint, the conveyances of the property are

6 invalid, the corresponding instruments listed herein above are invalid and/or void, as defendants

7 obtained the property by the improper means, wrongfully and fraudulently, by inducing plaintiff

8 through the false promises to transfer the property to defendants.  For the foregoing reasons, the

9 instruments should be deemed canceled and of no effect, and removed from the Official Records

10 of the Los Angeles County.

11       46.      Unless the relief requested is granted, plaintiff will suffer immediate and irreparable

12 injury, including the loss of the property, for which there is no adequate remedy in law.

13 **FIFTH CAUSE OF ACTION**

14 **Declaratory Relief**

15 **(Against All Defendants)**

16       47.      Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1

17 through 46, inclusive, and incorporate them by reference as if set forth in full herein.

18       48.      An actual controversy has arisen and now exists between plaintiff and defendants,

19 and each of them, concerning their respective rights, duties and obligations arising from the

20 aforesaid dealings and promises.

21       49.      Plaintiff contends that defendants, and each of them, have the obligation to hold the

22 property for his benefit, as promised, allow him to occupy the property without any limitation and

23 not to sell the property without his consent.

24       50.      Plaintiffs desire a judicial determination of the respective rights and duties of

25 plaintiffs, on the one hand, and defendants, on the other hand, particularly that defendants have the

26 obligation to hold the property for his benefit, as promised, allow him to occupy the property

27 without any limitation and not to sell the property without his consent.

28       51.      Such a declaration is necessary and appropriate at this time in order plaintiff

8

1    and defendants may ascertain their rights and duties with respect to the acts alleged herein.

2    Furthermore, a determination of the respective rights and liabilities of said plaintiff and defendants

3    is necessary and appropriate in order to avoid a circumvention of laws and the circuitry and

4    multiplicity of actions concerning the subject transaction.

5                                        **SIXTH CAUSE OF ACTION**

6                                            **Injunctive Relief**

7                                         **(Against All Defendants)**

8        52.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1

9    through 51, inclusive, and incorporate them by reference as if set forth in full herein.

10       53.    As a direct and proximate result of the aforesaid misrepresentations by defendants,

11   plaintiff is deprived of his rights to possession of the real property, faces the loss of the property

12   that belongs in fact to him, and he has to submit to the defendants' demand to vacate the property

13   with no other place for plaintiff to live.  Defendants have infringed on the plaintiff's right to

14   possession of the property.

15       54.    Presently, defendants put the Units  1802 and 1803 on the market for sale, and

16   entered in a purchase agreement to sell the property, without plaintiff's consent.  Defendants deny

17   plaintiff's right to possession of the property and demand that he vacate the property.

18   Plaintiff is informed and believes, and thereon alleges, that, unless restrained and enjoined,

19   defendants, and each of them, will sell the property leaving plaintiff on the street.

20       55.    Plaintiff requests that defendants be ordered not to sell the property, to refrain from

21   any acts directed to sell the property, or disposing of the property in any aspect without plaintiff's

22   consent.

23       56.    Plaintiff has no plain, adequate or speedy remedy at law to enforce his rights, and,

24   particularly, to protect the property from the aforesaid sale, and, unless restrained, defendants will

25   cause plaintiff to suffer irreparable damages, injury and harm.

26       57.    There is a reasonable probability that plaintiff will prevail on the merits of his claims

27   as set forth in this Complaint.   The harm that plaintiffs may suffer in the absence of the injunction

28   sought greatly outweighs the harm to defendants from imposing the injunction.

58.  Given the equities of this action, plaintiff is entitled to appropriate injunctive relief (temporary restraining order, preliminary and permanent injunction) to enjoin and prohibit defendants from sale of the property, any acts directed to sell the property, or disposing of the property in any aspect without plaintiff's consent.

WHEREFORE, Plaintiff prays for relief as follows:

AS TO THE FIRST CAUSE OF ACTION:

1.    For general damages in a sum well in excess of the jurisdictional minimum of this court, according to proof;

2.    For special damages, including consequential and incidental expenses, according to proof;

3.    For punitive damages in an amount sufficient to punish and make example of the defendants, and each of them.

AS TO THE SECOND CAUSE OF ACTION:

1.    For general damages in a sum well in excess of the jurisdictional minimum of this court, according to proof;

2.    For special damages, including consequential and incidental expenses, according to proof;

3.    For punitive damages in an amount sufficient to punish and make example of the defendants, and each of them.

AS TO THE THIRD CAUSE OF ACTION:

1.    For an order declaring that defendants, as far as they holds their title to the property, particularly the Units 1802 and 1803, either present or reverted back, hold therefrom the property in trust for plaintiff as constructive trustee for the benefit of plaintiff, and should convey the property to plaintiff.

AS TO THE FOURTH CAUSE OF ACTION:

1.    An order from the Court canceling and nullifying the following instruments:
Gift Deed recorded on November 13, 2000 by Recorder's Office of the Los Angeles County as the Document no. 00-1770410 BK-PG, in regard to the transfer of the

10

1       property located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles, CA.

2       Quitclaim Deed recorded on June 11, 2014 by Recorder's Office of the Los Angeles

3       County as the Document no. 14-0602686 BK-PG, in regard to transfer of the

4       property located at 10701 Wilshire Blvd. Apt. 1803, Los Angeles, CA.

5    2.    For the Court's order that defendants, and each f them, deliver the originals of the

6       deeds recorded by them forthwith to the Clerk of the Court foe cancellation.

7    AS TO THE FIFTH CAUSE OF ACTION:

8    1.    For a judicial determination of the respective rights and duties of plaintiff, on the

9       one hand, and defendants, on the other hand, particularly, that defendants have the

10       obligation to hold the property, particularly the Units 1802 and 1803, for his benefit,

11       as promised, allow him to occupy the property without any limitation and not to sell

12       the property without his consent.

13    AS TO THE SIXTH CAUSE OF ACTION:

14    1.    For an order requiring defendants to show cause, if any they have, why they should

15       not be enjoined as set forth in this Complaint, during the pendency of this action;

16    2.    For appropriate injunctive relief (temporary restraining order, preliminary injunction

17       and permanent injunction), all enjoining and prohibiting defendants, and each of

18       them, and their respective agents, servants, and employees, and all persons acting

19       under, in concert with, or for them, from sale of the property, any acts directed to

20       sell the property, or disposing of the property in any aspect without plaintiff's

21       consent.

22    ALL CAUSES OF ACTION

23    1.    For costs of suit incurred herein and prejudgment interest;

24    2.    For such other and further relief as the Court deems just and proper.

25    Dated: March 4, 2015          LAW OFFICES OF JULIA SKLAR

26

27       Julia Sklar, Attorney for Plaintiff
       Nikolay Machevsky

28

COMPLAINT
038

1
## VERIFICATION

2    I, Nikolay Machevsky, am the plaintiff in this action.   I have read the complaint and it is

3 true of my own knowledge, except to those matters stated on information or belief and, as to those

4 matters, I believe them to be true.

5    I declare under penalty of perjury under the laws of the State of California that the

6 foregoing is true and correct.

7    Executed this 4th day of March, 2015 at Los Angeles, California.

8

9              _____

10              Nikolay Machevsky

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
039

Mar. 4. 2015  8:19PM                                      No. 7680   P. 1

**VERIFICATION**

I, *Nikolay Machavsky* a Plaintiff in this
action. I have read the Complaint and it is true of my own
knowledge, except for those matters stated on information or
belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.

Executed this _4th_ day of ___March__ 2015 Los Angeles,
California

040

# Exhibit "B"

1

LOS ANGELES SUPERIOR COURT
RECEIVED FOR FILING
LIMITED CALENDAR UNIT

JUN 01 2016

ORIGINAL FILED
AUG 2 6 2016
LOS ANGELES
SUPERIOR COURT

2

3

4

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

5

### FOR THE COUNTY OF LOS ANGELES

6

7

8   NIKOLAY MACHEVSKY,                     )   Case No: BC574900
                                            )   Assigned: Hon. Terry A. Green
9              Plaintiff,                   )   Department 14
                                            )
10  vs.                                     )   [PROPOSED] DEFAULT JUDGMENT
                                            )   BY COURT
11  IZABELLA KLEEMOFF; MICHAEL              )
    KLEEMOFF; KLEEMOFF FAMILY TRUST         )
12  AKA KLEEMOFF LIVING TRUST; and          )
    DOES 1 through 100, inclusive,          )
13                                          )
                                            )
14             Defendants.                  )

15

16          COMES NOW Plaintiff Nikolay Machevsky and respectfully submits the following

17  summary of the case.

18          Plaintiff Nikolay Machevsky ("Plaintiff") brought this action against Defendants Izabella

19  Kleemoff, Michael Kleemoff, the individuals, and also the Kleemoff Family Trust aka Kleemoff

20  Living Trust ("Defendants")   The dispute is about the real property located at 10701 Wilshire

21  Blvd. Unites 1802 and 1803, Los Angeles, CA "Property." As presented, Plaintiff has always lived

22  alone on the Property.   Defendants fraudulently induced Plaintiff to transfer the title to the

23  Property to them, with the promise that Plaintiff will continue to live on the Property, and his rights

24  thereof will not be disturbed in any way.  However, Defendants presently make the attempts to sell

25  the Property without Plaintiff's consent.

26          Plaintiff filed his complaint on March 10, 2015.   The complaint includes the following

27  causes of action: Fraud; Constructive Fraud; Imposition of Constructive Trust;. Cancellation of

28  Instrument; Declaratory Relief; and Injunctive Relief.

1       All Defendants have been properly served with the summons and complaint. However,

2 Defendants never answered the complaint. On March 1, 2016, the default was entered against each

3 defendant separately.

4       IT IS ORDERED, ADJUDGED AND DECREED that:

5     1.     Defendants, and each of them, have the obligation to hold the Property, particularly

6 the Units 1802 and 1803, for the benefit of Plaintiff, allow him to occupy the Property alone and

7 without any limitation, and not to sell or otherwise dispense with the Property without his consent.

8     2.     Defendants, and each of them, as far as they hold their title to the Property,

9 particularly the Units 1802 and 1803, either present or reverted back, hold therefrom the Property

10 in trust for Plaintiff as constructive trustee for the benefit of Plaintiff, and should convey the

11 property to Plaintiff;

12     3.     The following instruments are cancelled and nullified:

13       - Gift Deed recorded on November 13, 2000 by Recorder's Office of the Los

14 Angeles County as the Document no. 00-1770410 BK-PG, in regard to the transfer of the property

15 located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles, CA.

16       - Quitclaim Deed recorded on June 11, 2014 by Recorder's Office of the Los

17 Angeles County as the Document no. 14-0602686 BK-PG, in regard to transfer of the property

18 located at 10701 Wilshire Blvd. Apt. 1803, Los Angeles, CA.

19       Defendants, and each of them, within 30 days after this Judgment is entered, to

20 deliver the originals of the aforesaid deeds recorded by them forthwith to the Clerk of the Court

21 fo cancellation.

22     4.     Defendants, and each of them, and their respective agents, servants, and employees,

23 and all persons acting under, in concert with, or for them, are enjoined and prohibited from sale

24 of the Property, particularly the Units 1802 and 1803, any acts directed to sell the Property, or

25 disposing of the Property in any way without Plaintiff's consent.

26     5.     Defendants, and each of them, jointly and severally, are ordered to pay Plaintiff the

27 costs of the suit in the amount of $465.00.

28     6.     This Court will retain jurisdiction of this action to ensure that Defendants comply

[PROPOSED] JUDGMENT BY COURT.

0054

1  with the terms of this Judgment

2  Dated:  AUG 2 6 2016

*Judge Terry A. Green*

_____

3  Hon. Terry A. Green, Judge of the Superior Court

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "C"

FILED
Superior Court of California
County of Los Angeles

JUL 0 1 2015

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Cristina Grijalva

1
2
3
4
5

**HAYDEN & KASSEL**
a Law Corporation
5959 Topanga Canyon Boulevard, Suite 305
Woodland Hills, California 91367-3648

Telephone: (818) 704-4343
Facsimile: (818) 704-4300
Email: Glenn@HaydenKassel.com

GLENN M. HAYDEN
State Bar Number 35021

6  Attorneys for Plaintiff BEHZAD DANIEL BINAFARD
7  also known as B. DANIEL BINAFARD

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **FOR THE COUNTY OF LOS ANGELES**

10

11  BEHZAD DANIEL BINAFARD also       )  CASE NO.:
    known as B. DANIEL BINAFARD       )  **BC 586 794**
12                                    )  Unlimited Jurisdiction
                    Plaintiff,        )
13                                    )  COMPLAINT FOR SPECIFIC PERFORMANCE
                                      )  OF CONTRACT AND FOR DECLARATORY
14  vs.                               )  RELIEF
                                      )
15  IZABELLA KLEEMOFF, individually;  )
    MICHAEL KLEEMOFF, individually;   )
16  IZABELLA KLEEMOFF and MICHAEL     )
    KLEEMOFF, TRUSTEES OF THE         )
17  KLEEMOFF FAMILY TRUST OF 2006;    )
    NIKOLAY MACHEVSKY; and DOES 1     )
18  through 10, inclusive,            )
                                      )
19                  Defendants.       )
                                      )
20  _____   )

21  Plaintiff alleges:

22  **INTRODUCTORY ALLEGATIONS**

23      1.    Plaintiff BEHZAD DANIEL BINAFARD also known as B. DANIEL BINAFARD,
24  an individual, is a resident of Los Angeles County, California (hereinafter "Plaintiff").
25      2.    Defendants IZABELLA KLEEMOFF ("Izabella") and MICHAEL KLEEMOFF
26  ("Michael"), husband and wife, are residents of Los Angeles County, California.
27      3.    Defendant Nikolay Machevsky ("Nikolay") is the son of Defendant Izabella from a
28  prior marriage, and is a resident of Los Angeles County, California.

2043-200.COM
PLD::063015                    046        1        COMPLAINT FOR SPECIFIC PERFORMANCE AND
                                                   FOR DAMAGES

4.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

5.      At all times mentioned herein, each of the Defendants, including the Defendants served as DOES herein, were the agents and/or employees of each of the remaining Defendants and, in doing the things herein mentioned, were acting within the scope of such agency and/or employment.

6.      Plaintiff is informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

7.      Plaintiff is informed and believe and thereon allege that at all times material to this complaint, each of the Defendants and each of the fictitiously named Defendants in this Complaint in addition to acting for himself, herself or itself and on his, her or on its own behalf, individually, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of each and all of the Defendants and within the course, scope and authority of that agency, service, employment and representation.

8.      Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the other Defendants.

9.      Specifically and without limitation, Plaintiff alleges on information and belief that the actions, failure to act, breaches, conspiracy and misrepresentations alleged herein and attributed to one or more of the specific Defendants were approved, ratified and done with the cooperation and knowledge of each and all of the other Defendants.

**STATEMENT OF FACTS**

10.      On or about February 9, 2015, Plaintiff as Buyer, and Izabella as Seller, made and entered into a California Residential Purchase Agreement and Joint Escrow Instructions for the purchase of Condominium Units 1802 and 1803 located at 10701 Wilshire Boulevard, Los Angeles, CA 90024 for the purchase price of $835,000.00, a copy of which marked **Exhibit A** is attached hereto ("the Purchase Agreement") Assessor's Parcel Numbers 4360-011-129 and 4360-011-130,

1   legally described on **Exhibit B** attached hereto ("the Property").

2       11.    Pursuant to the Purchase Agreement, on February 10, 2015, an escrow was opened

3   by Plaintiff and Izabella at Homestead Escrow Inc., escrow instructions were signed ("the Escrow

4   Instructions"), and Plaintiff deposited funds in the amount of $25,050.00 as the initial deposit into

5   escrow which was to close on or before March 10, 2015.

6       12.    Nikolay is residing at the Property and will not agree to vacate the Property.

7       13.    Pursuant to provision 22A of the Purchase Agreement, Plaintiff requested mediation

8   and it was agreed by Izabella through her attorney, Jeffery S. Schuller that the mediation would be

9   held at ADR Serices Inc., before the Honorable Enrique Romero. Subsequently, her attorney advised

10   that he was no longer representing Izabella and she has refused to mediate the action.

11       14.    The Purchase Agreement provides that if any party refuses to mediate after a request

12   has been made, that party shall not be entitled to recover attorney fees in any action, proceeding or

13   arbitration between buyer and seller.

14       15.    The Purchase Agreement provides that the prevailing party in any action, proceeding

15   or arbitration is entitled to reasonable attorney fees and costs, unless the party failed or refused to

16   mediate the matter.

17   ### FIRST CAUSE OF ACTION

18   ### (Specific Performance of Contract)

19       16.    Plaintiff repeats and realleges Paragraphs 1 through 9 of the Introductory Allegations

20   and Paragraphs 10 through 15 of the Statement of Facts as if set forth herein at length.

21       17.    Plaintiff has performed or been ready, willing and able to perform all of his

22   obligations under the Purchase Agreement, but Izabella has been unwilling to proceed with the sale

23   of the Property to Plaintiff, she has failed to respond or provide documentation and information

24   requested by the escrow, and have Nikolay vacate the Property as required by the Purchase

25   Agreement.

26       18.    Plaintiff has performed all conditions required of him as provided in the Purchase

27   Agreement and has all sums available to deposit into escrow to close escrow as soon as Izabella

28   executes the deed and arranges to have the Property vacant at the close of escrow as required by the

1    Purchase Agreement and the Escrow Instructions.

2         19.    Izabella was represented and counseled by a licensed real estate broker at the time of

3    entering into the Purchase Agreement with Plaintiff and that the consideration of $835,000.00 for

4    the Property as stated in the Purchase Agreement to be received by Izabella is adequate when

5    compared to the value of the Property at the time of entering into the Purchase Agreement.

6         20.    The Purchase Agreement is fair, just and reasonable in all respects as to Izabella, as

7    Seller of the Property.

8         21.    Plaintiff remains ready, willing and able to consummate the purchase of the Property

9    and to pay the Purchase Price to Izabella as set forth in the Purchase Agreement.

10        22.    Plaintiff has no adequate remedy at law because the Property which is the subject of

11   the Purchase Agreement is a single-family dwelling which Plaintiff has made arrangements for

12   relatives to occupy, who wish to live in the area where the Property is located and Plaintiff's contract

13   remedy will not provide compensation to Plaintiff for the increase in value of the Property since

14   Izabella's refusal to perform.

15                        **SECOND CAUSE OF ACTION**

16                          **(For Declaratory Relief)**

17        23.    Plaintiff repeats and realleges Paragraphs 1 through 9 of the Introductory Allegations

18   and Paragraphs 10 through 15 of the Statement of Facts, Paragraphs 17 through 22 of the First Cause

19   of Action as if fully set forth herein at length.

20        24.    On or about February 1, 2012, title to the Property was vested in Izabella and

21   Michael, Trustees of the Kleemoff Family Trust of 2006, at which time it was transferred to Nikolay

22   by deed recorded on March 15, 2012, as Instrument No. 2012-407509.

23        25.    On or about April 8, 2014, Nikolay transferred title to the Property to his mother,

24   Izabella, individually, by deed recorded on June 11, 2014, as Instrument No. 2014-602686.

25        26.    Chicago Title Company issued a Preliminary Report on the Property printed on

26   February 24, 2015, stating that since no title insurance was obtained for the two (2) quitclaim deeds

27   transferring title to the Property as alleged in Paragraphs 24 and 25 above, it was not willing to divest

28   the interest of Nikolay from a policy of title insurance.

---

2043-200.COM
PLD::063015

COMPLAINT FOR SPECIFIC PERFORMANCE AND
FOR DAMAGES

1    27.    Plaintiff is informed and believes and based thereon alleges that Nikolay is

2    contending that he is entitled to possession and title to the Property even though he is not an owner

3    of record.

4    28.    Plaintiff is informed and believes and thereon alleges that Michael may have a

5    community property claim to the Property which could prevent Plaintiff from receiving clear title

6    to the Property.

7    29.    Plaintiff is informed and believes and based thereon alleges that an actual controversy

8    has arisen and now exists between the parties concerning their respective rights and duties in that

9    Plaintiff contends that he is entitled to purchase the Property based on the execution of the Purchase

10    Agreement and the Escrow Instructions by Izabella, who is the legal record title owner of the

11    Property.  Plaintiff has remained ready, willing and able to carry out all terms and conditions of the

12    Purchase Agreement to obtain title  to the Property and it should be transferred to him for the

13    consideration as stated in the Purchase Agreement, and that Nikolay should surrender possession of

14    the Property to Plaintiff since, Izabella contends that she is afraid to proceed any further in the matter

15    because she fears retribution from Nikolay, if he is forced to move from the Property.  Michael may

16    also contend he has a community property interest in the Property which could prevent Plaintiff from

17    receiving clear title to the Property.  Nikolay will not vacate the Property and filed a complaint

18    against Izabella and the Kleemoff Family Trust concerning the Property, which was subsequently

19    dismissed.

20    30.    Plaintiff has no adequate or speedy remedy to resolve this dispute between the parties

21    other than declaratory judgment from this court.  Because of the urgency and importance of the

22    issues presented by the parties in dispute, it is necessary and appropriate for the court to resolve this

23    dispute by issuing a judicial declaration determining the rights and obligations of the parties with

24    respect to the Purchase Agreement for purchase of the Property, termination of the right of Nikolay

25    to continue in possession of the Property or to have any right to title to the Property, and to terminate

26    any community property interest of Michael in the Property.

27    ///

28    ///

1    WHEREFORE, Plaintiffs pray for judgment as follows:

2    ## FIRST CAUSE OF ACTION

3    1.    That Defendants Izabella specifically perform the terms and conditions of the

4    Purchase Agreement and that good title to the Property be delivered to Plaintiff;

5    ## SECOND CAUSE OF ACTION

6    2.    For a judicial determination of Plaintiff's rights and duties in a declaration that

7    Plaintiff has the right to purchase the Property pursuant to the terms of the Purchase Agreement since

8    Izabella has failed and refused to carry out the terms of the Purchase Agreement;

9    3.    That Defendant Izabella has no further right to the Property, and possession of the

10    Property will be conveyed to Plaintiff upon close of escrow;

11    4.    That Nikolay has no right to possession or title to the Property and will be ordered

12    to vacate the property; and

13    5.    That Michael does not have a community property interest in the Property;

14    ## AS TO ALL CAUSES OF ACTION

15    6.    For attorney fees according to proof;

16    7.    For costs of suit incurred herein;

17    8.    For such other and further relief as the Court may deem just and proper.

18    Dated:   July 1, 2015                    HAYDEN & KASSEL, a Law Corporation,

19

20

21                                    By: _____

22                                        GLENN M. HAYDEN
                                          *Attorneys for Plaintiff*

23

24

25

26

27

28

DocuSign Envelope ID: ED312AFB-917E-4... ...47438E2D592C

**CALIFORNIA ASSOCIATION OF REALTORS®**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 11/14 )

Date Prepared: _02/09/2015_

**1. OFFER:**
- **A. THIS IS AN OFFER FROM** _____ *B Daniel Binafard* _____ ("Buyer").
- **B. THE REAL PROPERTY to be acquired is** _10701 Wilshire #1802/1803, Los Angeles, CA 90024_, situated in _Los Angeles_ (City), _Los Angeles_ County, California, _90024_ (Zip Code), Assessor's Parcel No. _4360-011-129 , 4360-011-130_ ("Property").
- **C. THE PURCHASE PRICE offered is** *Eight Hundred Thirty-Five Thousand* _____ Dollars $ _835,000.00_.
- **D. CLOSE OF ESCROW shall occur on** _or before March 10, 2015_ (date)(or _____ Days After Acceptance).
- **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
- **A. DISCLOSURE:** The Parties each acknowledge receipt of a ☑"Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
- **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
  Listing Agent _Rodeo Realty, Inc._ (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
  Selling Agent _Rodeo Realty, Inc._ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
- **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☑"Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
- **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _25,050.00_
  (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____ );
  OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ ) to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____ ).
  Deposit checks given to agent shall be an original signed check and not a copy.
  (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
- **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
  within _____ Days After Acceptance (or _____ ).
  If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID)at the time the increased deposit is delivered to Escrow Holder.
- **C.** ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
- **D. LOAN(S):**
  (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
  This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
  (2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
  This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
  (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.
- **E. ADDITIONAL FINANCING TERMS:** _____
- **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . $ _809,950.00_
  to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
- **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _835,000.00_

Buyer's Initials ( _BDB_ ) ( _____ )          Seller's Initials ( _ff_ ) ( _____ )

© 1991-2014, California Association of REALTORS®, Inc.

**RPA-CA REVISED 11/14 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Rodeo Realty, 202 N. Canon Drive Beverly Hills, CA 90210        Phone: (310)724-7100    Fax:        Crown Towers
Joshua Flagg        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: ED312AFB-917E-4... .-B...-47438B2D592C

Property Address: *10701 Wilshire #1802/1803, Los Angeles, CA  90024* _____ Date: *February 9, 2015*

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

**J. LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within **3 (or ___ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing.  Buyer shall pursue the financing specified in this Agreement.  Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**
A. ADDENDA:

| | | |
|---|---|---|
| | ☐ Addendum # | (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) | |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☒ Other *Rodeo Realty Addendum/Toxic Mold* | |

B. BUYER AND SELLER ADVISORIES:

| | | |
|---|---|---|
| | ☑ Buyer's Inspection Advisory (C.A.R. Form BIA) | |
| ☐ Probate Advisory (C.A.R. Form PAK) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) | |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) | |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other | |

**6. OTHER TERMS:** *All costs, fees and monies related to owning the condo will be paid for by seller and prorated up until the close of escrow*
_____
_____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report.**
(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
_____ prepared by *Property ID* _____ .
(2) ☐ Buyer ☒ Seller shall pay for the following Report *Termite Inspection* _____
prepared by _____ .
(3) ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____

Buyer's Initials ( *BDB* ) ( _____ )          Seller's Initials ( *IE* ) ( _____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Crown Towers

DocuSign Envelope ID: ED312AFB-917E-4

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA  90024**                    Date: **February 9, 2015**

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
  (1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
  (2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
  (ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
  (iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
  (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee **Each to pay their own 50/50** _____
  (b) Escrow Holder shall be **Homestead Escrow - Gracie Jaramillo** _____.
  (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
  (2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____.
  (b) Owner's title policy to be issued by **Fidelity National Title - Brandon Miller** _____.
  (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____.
  (2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____.
  (3) ☐ Buyer ☒ Seller shall pay Homeowners' Association ("HOA") transfer fee _____.
  (4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
  (5) ☐ Buyer ☒ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
  (6) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____.
  (7) ☐ Buyer ☐ Seller shall pay for _____.
  (8) ☐ Buyer ☐ Seller shall pay for _____.
  (9) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ .
  Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
  OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
  **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
  **B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
  (1) All EXISTING fixtures and fittings that are attached to the Property;
  (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
  (3) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
  (4) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency of this Agreement as specified in paragraph 14B.
  (5) The following additional items: _____.
  (6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except  the items and systems identified pursuant to 8B(4) and _____ _____ , and (ii) are transferred without Seller warranty regardless of value.
  **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items)  if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) **all attached light fixtures and furniture** _____

_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or** ☐ **will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials ( *BDB* ) ( _____ )                    Seller's Initials ( *IE* ) ( _____ )

RPA-CA REVISED 11/14 (PAGE 3 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Crown Towers

054

DocuSign Envelope ID: ED312AFB-917E-4...

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA 90024**                    Date: **February 9, 2015**

**9. CLOSING AND POSSESSION:**
   **A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   **B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( _____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ____ ☐ AM/ ☐ PM on _____ .
   **C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
   **D. Tenant-occupied property: Property shall be vacant** at least **5 (or ___ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
   OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).
   **E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
   **F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   **A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or SSD).
      **(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
      **(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
      **(4)** Seller, unless exempt from the obligation to provide a TDS, shall, within the time specified in paragraph 14A, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ) **OR** ☐ Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD).
      **(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
      **(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
      **(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After** Delivery in person, or **5 Days After** Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
   **B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.
   **C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
   **D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
   **E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

Buyer's Initials ( _BDB_ )( _____ )                    Seller's Initials ( _lk_ )( _____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          **Crown Towers**

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA 90024** _____ Date: **February 9, 2015**_____

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

(1) **SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold **(a)** "AS-IS" in its **PRESENT** physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

  **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

  **C.** **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; **(v)** review and seek approval of leases that may need to be assumed by Buyer; and **(vi)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except to the extent required to prepare a Pest Control Report; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

  **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

  **D.** **Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

  **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

  **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( **BVB** ) ( _____ )                                    Seller's Initials ( **lk** ) ( _____ )

RPA-CA REVISED 11/14 (PAGE 5 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Crown Towers

056

EQUAL HOUSING OPPORTUNITY

Property Address: <u>10701 Wilshire #1802/1803, Los Angeles, CA 90024</u>                    Date: <u>February 9, 2015</u>

    E.  Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

    A.  **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(4), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

    B. (1) **BUYER HAS: 17 (or _10_ ) Days** After Acceptance, unless otherwise agreed in writing, to:
        (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(4), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
      (2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
      (3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
      (4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14C(1).

    C.  **SELLER RIGHT TO CANCEL:**
      (1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
      (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vi)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(vii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    D.  **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

    E.  **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

    F.  **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or _____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

    G.  **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD) Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ☐ ____ ) Days** Prior to Close Of Escrow, **NOT AS A CONTINGENCY OF THE SALE,** but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

Buyer's Initials ( _BVB_ ) ( _____ )                    Seller's Initials ( _lk_ ) ( _____ )

DocuSign Envelope ID: ED312AFB-917E-...-...-E-4743B82D592C

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA  90024** Date: **February 9, 2015**

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as, but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
    **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days After** Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.
    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

Buyer's Initials ( *BVB* ) ( _____ )                Seller's Initials ( *LK* ) ( _____ )

RPA-CA REVISED 11/14 (PAGE 7 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      Crown Towers

058

DocuSign Envelope ID: ED312AFB-917E-...-...-...-4743862D592C

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA  90024**                               Date: **February 9, 2015**

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.  If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price.  Any excess shall be returned to Buyer. Except as provided in paragraph 14G, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials **BDB** / _____          Seller's Initials **lk** / _____

## 22. DISPUTE RESOLUTION:

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials **BDB** / _____          Seller's Initials **lk** / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i)The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (ii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

Buyer's Initials ( **BDB** )( _____ )          Seller's Initials ( **lk** )( _____ )

RPA-CA REVISED 11/14 (PAGE 8 OF 10)

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    **Crown Towers**

059

DocuSign Envelope ID: ED312AFB-917E-4...-...-47438B2D592C

Property Address: __10701 Wilshire #1802/1803, Los Angeles, CA  90024_____ Date: __February 9, 2015__

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale, and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee.  Such consent shall not be unreasonably withheld.  Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA)

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**  Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** means this document and any incorporated addenda, counter offers and written terms Signed by all Parties collectively forming the binding agreement between the Parties. All terms and conditions of any addenda checked and Signed are incorporated into this Agreement.
   C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
   J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
   K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by ____Josh Flagg____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM, on _____(date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual.  See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date __2/9/2015_____ BUYER _____

(Print name) _B Daniel Binafard_    *B Daniel Binafard*  —DocuSigned by:

Date _____ BUYER _____0A10AF21589E438..._____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( ___ ) ( _____ )

**RPA-CA REVISED 11/14 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Crown Towers

DocuSign Envelope ID: ED312AFB-917E-...

Property Address: **10701 Wilshire #1802/1803, Los Angeles, CA 90024** _____ Date: **February 9, 2015** ___

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ **(If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date 2/10/2015 ___ SELLER *Izabella Kleemoff* _____
(Print name) **Izabella Kleemoff** ___ 27C4936D2CDF408... _____

Date _____ SELLER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )   **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.** Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **Rodeo Realty, Inc.** _____ CalBRE Lic. # **00951359** ___
By *Josh Flagg* ___ **Josh Flagg** CalBRE Lic. # **01470467** ___ Date **2/9/2015** ___
By 16E035D3034444Z... _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Real Estate Broker (Listing Firm) **Rodeo Realty, Inc.** _____ CalBRE Lic. # **00951359** ___
By *Josh Flagg* ___ **Josh Flagg** CalBRE Lic. # **01470467** ___ Date **2/9/2015** ___
By 16F035D3034444Z... _____ CalBRE Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee _____

**RPA-CA REVISED 11/14 (PAGE 10 of 10)**    Buyer's Initials ( _____ ) ( _____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Crown Towers

DocuSign Envelope ID: 5CAF29F7-7C87-4...



**CALIFORNIA
ASSOCIATION
OF REALTORS®**



# SELLER COUNTER OFFER No. ___1___
### May not be used as a multiple counter offer.
(C.A.R. Form SCO, 11/14)

Date **February 10, 2015**

This is a counter offer to the: ☒ California Residential Purchase Agreement, ☐ Buyer Counter Offer No.___ , or ☐ Other _____ ("Offer"),
dated __February 9, 2015__ , on property known as __10701 Wilshire #1802/1803, Los Angeles, CA  90024__ ("Property"),
between __B Daniel Binafard__ ("Buyer") and __Izabella Kleemoff__ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. **OTHER TERMS:** *1. Seller has 10 day contingency to sort out HOA issues*

   D. **The following attached addenda are incorporated into this Seller Counter offer:** ☐ Addendum No. _____
   ☐ _____    ☐ _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 3 (if more than one signature then, the last signature date)(or by _____ ☐AM ☐PM on _____ (date)) (i) it is signed in paragraph 4 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or __Josh Flagg__ , who is authorized to receive it.
   OR B. If Seller withdraws it in writing (CAR Form WOO) anytime prior to Acceptance.

3. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller *Izabella Kleemoff* __Izabella Kleemoff__ Date 2/10/2015
   Seller _27C4036D2C8F408...__ Date _____

4. **ACCEPTANCE: I/WE** accept the above Seller Counter Offer (**If checked** ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER**) and acknowledge receipt of a Copy.
   Buyer *B Daniel Binafard* **B Daniel Binafard** Date 2/10/2015 Time _____ ☐AM/☐PM
   Buyer _0A10AF21589E438...__ Date _____ Time _____ ☐AM/☐PM

**CONFIRMATION OF ACCEPTANCE:**

(_____ / _____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) _____ at _____ ☐AM/☐PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SCO 11/14 (PAGE 1 OF 1)**

Reviewed by _____ Date _____

### SELLER COUNTER OFFER (SCO PAGE 1 OF 1)

Rodeo Realty, 202 N. Canon Drive Beverly Hills, CA 90210     Phone: (310)724-7100     Fax:     Crown Towers
Joshua Flagg                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

062

EXHIBIT  B
Legal Description

**For APN/Parcel ID(s):  4360-011-130 and 4360-011-129**

THE LAND REFERRED BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

PARCEL 1A

THAT PORTION OF LOT 1 OF TRACT NO. 23389, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 901 PAGES 41 TO 43 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT 91 ON THE (AMENDED) CONDOMINIUM PLAN RECORDED NOVEMBER 14, 1978 AS INSTRUMENT NO. 78-1266599 OF OFFICIAL RECORDS AND AS AMENDED BY AN INSTRUMENT RECORDED NOVEMBER 14, 1978 AS INSTRUMENT NO. 78-126600 AND AN INSTRUMENT RECORDED NOVEMBER 24,1978 AS INSTRUMENT NO. 78-1312177 OF OFFICIAL RECORDS.

PARCEL 1B:

AN UNDIVIDED .0083182 INTEREST IN AND TO LOT 1 OF SAID TRACT NO. 23389.

EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNTTS 1 TO 119 INCLUSIVE ON SAID CONDOMINIUM PLAN.

PARCEL 1C:

AN NON-EXCLUSIVE EASEMENT FOR A SIDEWALK OVER THE EASTERLY 3 FEET OF THE SOUTHERLY 52.17 FEET OF LOT 19 OF BLOCK 8 OF TRACT NO. 9070, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 121 PAGES 42 TO 46 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID LAND IS A PORTION OF PARCEL B, AS SHOWN ON PARCEL MAP OF LOS ANGELES NO.409 FILED IN BOOK 3 PAGE 7 OF PARCEL MAPS. IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID LAND IS ALSO A PORTION OF LOT 1 OF TRACT NO. 23904, AS PER MAP RECORDED IN BOOK 759 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 1D:

A NON-EXCLUSIVE EASEMENT FOR PEDESTRIAN INGRESS AND EGRESS OVER THAT PORTION OF LOT 19 IN BLOCK B OF TRACT NO. 9070, AS PER MAP RECORDED IN BOOK 121 PAGES 42 TO 46 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS;

---

CLTA Preliminary Report Form - Modified (11/17/2006)           Printed:  02.24.15 @ 11:33PM
                                                  CA-CT-FLAX-02180.055690-SPS-1-14-111407442

EXHIBIT   B



**EXHIBIT B**
Legal Description

COMMENCING AT THE SOUTHEASTERLY CORNER OF SAID LOT 19; THENCE ALONG THE EASTERLY LINE OF SAID LOT NORTH 14 DEGREES 28' 40" WEST 71.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 75 DEGREES 31' 20" WEST 6.25 FEET; THENCE SOUTH 14 DEGREES 28' 40' EAST, 50.78 FEET; THENCE SOUTH 80 DEGREES 31' 20" WEST 14.81 FEET; THENCE SOUTH 14 DEGREES 28' 40" EAST, 21.51 FEET TO THE SOUTHERLY LINE OF SAID LOT 19; THENCE ALONG SAID LAST MENTIONED SOUTHERLY LINE SOUTH 75 DEGREES 31' 20" WEST, 5.00 FEET; THENCE NORTH 14 DEGREES 28' 40' WEST 25.47 FEET; THENCE NORTH 80 DEGREES 31' 20" EAST 16.32; "THENCE NORTH 14 DEGREES 28' 40' WEST, 51.96 FEET; THENCE NORTH 75 DEGREES 31' 20" EAST, 9.75 FEET TO THE EASTERLY LINE OF SAID LOT 19; THENCE ALONG SAID LAST MENTIONED EASTERLY LINE SOUTH 14 DEGREES 28' 40" EAST 5.00 FEET TO THE TRUE POINT OF BEGINNING.

SAID LAND IS A PORTION OF PARCEL B, AS SHOWN ON PARCEL MAP OF LOS ANGELES NO. 409 FILED IN BOOK 3 PAGE 7 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

A CONDOMINIUM COMPRISED OF:

PARCEL 2A:

THAT PORTION OF LOT 1 OF TRACT NO. 23389, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 901, PAGE(S) 41 TO 43 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT 90 ON THE (AMENDED) CONDOMINIUM PLAN RECORDED NOVEMBER 14, 1978 AS INSTRUMENT NO. 78-1266599, OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2B:

AN UNDIVIDED .0059544 INTEREST IN AND TO LOT 1 OF TRACT NO. 23389.

EXCEPT THEREFROM THOSE PORTIONS SHOWN AND DEFINED AS UNITS 1 TO 119, INCLUSIVE, ON SAID CONDOMINIUM PLAN.

PARCEL 2C:

A NON-EXCLUSIVE EASEMENT FOR A SIDEWALK OVER THE EASTERLY 3 FEET OF THE SOUTHERLY 52.17 FEET OF LOT 19 IN BLOCK 8 OF TRACT NO. 9070, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 131 PAGES 42 TO 45 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID LAND IS A POINT OF PARCEL "B", IN THE CITY OF LOS ANGELES, AS SHOWN ON PARCEL MAP OF LOS ANGELES NO. 409 FILED IN BOOK 3 PAGE 7 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

---

CLTA Preliminary Report Form - Modified (11/17/2006)

EXHIBIT B
Legal Description

SAID LAND IS ALSO A PORTION OF LOT 1 OF TRACT NO. 23094, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 759 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2D:

A NON-EXCLUSIVE EASEMENT FOR PEDESTRIAN INGRESS AND EGRESS OVER THAT PORTION OF LOT 19 IN BLOCK 8 OF TRACT NO. 9070, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 121 PAGES 42 TO 46 INCLUSIVE, OF MAPS, IN THE OFFICE OF TEE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEASTERLY CORNER OF SAID LOT 19; THENCE ALONG THE EASTERLY LINE OF SAID LOT, NORTH 14° 28' 40" WEST 71.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 75° 31' 20" WEST 6.25 FEET; THENCE SOUTH 14° 28' 40" EAST 50.70 FEET; THENCE SOUTH 80° 31' 20" WEST 14.81 FEET; THENCE SOUTH 14° 28' 40" EAST 21.51 FEET TO THE SOUTHERLY LINE OF SAID LOT 19; THENCE ALONG SAID LAST MENTIONED SOUTHERLY LINE SOUTH 75° 31' 20" WEST 5.00 FEET; THENCE NORTH 14° 28' 40" WEST 25.47 FEET; THENCE NORTH 80° 31' 20" EAST 16.32 FEET; THENCE NORTH 14° 28' 40" WEST 51.96 FEET; THENCE NORTH 75° 31' 20" EAST 9.75 FEET TO THE EASTERLY LINE OF SAID LOT 19; THENCE ALONG SAID LAST MENTIONED EASTERLY LINE SOUTH 14° 28' 40" EAST 5.00 FEET TO THE TRUE POINT OF BEGINNING.

SAID LAND IS A PORTION OF PARCEL "B" IN THE CITY OF LOS ANGELES, AS SHOWN ON PARCEL MAP OF LOS ANGELES NO. 409 FILED IN BOOK 3 PAGE 7 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SAID LAND IS ALSO A PORTION OF LOT 2 OF TRACT NO. 23094, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 759 PAGES 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Exhibit "D"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/23/2019 03:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:14-bk-29611-RK    Doc 73    Filed 10/18/20    Entered 10/18/20 12:38:08    Desc
Main Document        Page 70 of 141

1  LAW OFFICES OF JULIA SKLAR
   JULIA SKLAR (Bar No. 200948)
2  14414 Hamlin Street
   Van Nuys, CA 91401
3  Telephone: (818) 904-1597
   Fax (818) 947-0177
4
5  Attorneys for Defendant
   and Cross-Defendant
6  Nikolay Machevsky

7
             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8
          **FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT**
9

10 | | |
|---|---|
| BENZAD DANIEL BINAFARD also known ) | Case No.: BC586794 |
| as B. DANIEL BINAFARD, ) | Assigned: Hon. Malcolm H. Mackey |
| ) | Dept. 55 |
| Plaintiff, ) | |
| ) | **VERIFIED CROSS-COMPLAINT** |
| vs. ) | **OF DEFENDANT NIKOLAY** |
| ) | **MACHEVSKY FOR:** |
| IZABELLA KLEEMOFF, individually, ) | |
| MICHAEL KLEEMOFF, individually, ) | **1.    QUIET TITLE** |
| IZABELLA KLEEMOFF and MICHAEL ) | |
| KLEEMOFF, TRUSTEES OF THE ) | **2.    INJUNCTIVE RELIEF** |
| KLEEMOFF FAMILY TRUST OF 2006; ) | |
| NIKOLAY MACHEVSKY, AND DOES 1 ) | **3.    DECLARATORY RELIEF** |
| through 10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ——————————————— ) | |
| ) | |
| NIKOLAY MACHEVSKY, ) | |
| ) | |
| Cross-complainant, ) | |
| ) | |
| vs. ) | |
| ) | |
| BENZAD DANIEL BINAFARD, also known ) | |
| as B. DANIEL BINAFARD, ) | |
| AND DOES 1 through 10, inclusive, ) | |
| ) | |
| Cross-Defendants. ) | |
| ——————————————— ) | |

27        COMES NOW Defendant and Cross-Complainant NIKOLAY MACHEVSKY

28 ("hereinafter - "Cross-Complainant") and against Plaintiff and Cross-Defendant BENZAD

067            1
**CROSS-COMPLAINT**

1   DANIEL BINAFARD (hereinafter -"Cross-Defendant") and Does 1 through 10, inclusive,

2   complains and alleges as follows:

## GENERAL ALLEGATIONS

4       1.      Cross-Complainant Nikolay Machevsky, the individual (hereinafter - "Cross-

5   Complainant" or "Mr. Machevsky") is now, and at all times mentioned in this complaint was,

6   the resident of the State of California, County of Los Angeles.

7       2.      Cross-Defendant BENZAD DANIEL BINAFARD ("Cross-Defendant" or

8   "Mr. Binafard") is now, and at all times mentioned in this complaint was, the resident of the

9   State of California, County of Los Angeles.

10      3.      Cross-Defendants Does 1 through 10, inclusive, are sued herein under

11  fictitious names because their true names and capacities whether individual, associate,

12  corporate, governmental or otherwise are unknown to Cross-Complainant.    Cross-

13  Complainant will ask leave of this Court to amend this Complaint to assert the true names

14  and capacities of said Cross-Defendants when same are ascertained.

15      4.      Cross-Complainant is informed and believes and thereon alleges that the

16  Cross-Defendants, whether business entities or individuals, were the agents and/or employees

17  of the other Cross-Defendants, and in doing the things alleged in this Cross-Complaint were

18  acting within the course and scope of that agency and employment.    Cross-Defendants, and

19  each of them, are sued as principals and/or agents, servants, employees of said principals

20  and/or agents of each other and all of the acts as alleged in this Cross-Complaint were

21  performed as agents and employees in the course and within the scope of their authority

22  and/or employment and/or agency with the other Cross-Defendants, and with the consent

23  and/or authorization and/or ratification of each of the Cross-Defendants.

24      5.      Cross-Complainant is informed and believes, and thereon alleges, that at all

25  times mentioned herein each of the Cross-Defendants was the successor-in-interest to each

26  of the remaining Cross-Defendants, and on that basis, is liable for any act, or omission, of

27  said Cross-Defendants alleged in this Cross-Complaint.

28      6.      All transactions mentioned herein were performed and/or contract was entered

2

**CROSS-COMPLAINT**

1    into and/or performed in the County of Los Angeles, State of California.

2        7.    Cross-Complainant alleges that this Cross-Complaint is a real property claim

3    and affects the title and/or right to possession of the real property..

4    ### FIRST CAUSE OF ACTION

5    ### (To Quiet Title Against All Cross-Defendants)

6        8.    Cross-Complainant repeats and re-alleges each and every allegation contained

7    in paragraphs 1 through 7, inclusive, of the General Allegations, and incorporate them by

8    reference as if set forth in full herein.

9        9.    Cross-Complainant is the true and rightful owner in fee of the following real

10   property:

11       The real property located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles, CA.  The

12   Legal Description of the property is as follows: Tract no. 23389; Subd. Crown Towers HOA

13   TR#23389Condominium Unit 90 City/Muni/TWP: Regional cluster 07/07/397.   The real

14   property is further referred as "Unit 1802."

15       The real property located at 10701 Wilshire Blvd. Apt. 1803, Los Angeles, CA.  The

16   Legal Description of the property is as follows: Lot 1 Tract No. 23389 Map Ref. MB901

17   PG41-43 City/Muni/TWP: Los Angeles. The real property is further referred as "Unit 1803."

18       10.    Cross-Complainant purchased in 1994 the real property designated herein as

19   Unit 1802.  The purchase was recorded on March 29, 1994 by Recorder's Office of the Los

20   Angeles County as the Document no. 94-0614792 BK-PG.

21       11.    The Unit 1803 was transferred to Cross-Complainant in 2012 by Intra-family

22   Transfer which was recorded on March 15, 2012 by Recorder's Office of the Los Angeles

23   County as the Document no. 12-0407509 BK-PG.   Both Units 1802 and 1803 are referred

24   to herein as "Property".

25       12.    On July 1, 2015, Plaintiff and Cross-Defendant Binafard filed a complaint

26   in the instant case against Izabella Kleemoff, Michael Kleemoff ("Kleemoffs"), Izabella

27   Kleemoff and Michael Kleemoff, Trustees of the Kleemoff Family Trust OF 2006; and Mr.

28   Machevsky.

13.    Plaintiff and Cross-Defendant Binafard seeks a specific performance in regard to the Property alleging that he had purchased it earlier in the same 2015 by a contract from Kleemoffs.

14.    Kleemoffs sold the Property to Mr. Binafard presenting themselves as the owners of the Property transferred to them from Mr. Machevsky based on the following documents:

Gift Deed recorded on November 13, 2000 by Recorder's Office of the Los Angeles County as the Document no. 00-1770410 BK-PG, in regard to the transfer by Nikolay Machevsky to Kleemoff of the property located at 10701 Wilshire Blvd. Apt. 1802, Los Angeles, CA;

Quitclaim Deed recorded on June 11, 2014 by Recorder's Office of the Los Angeles County as the Document no. 14-0602686 BK-PG, in regard to the transfer by Nikolay Machevsky to Izabella Kleemoff of the property located at 10701 Wilshire Blvd. Apt. 1803, Los Angeles, CA.

Both Deeds are referred hereinafter as the "Kleemoffs Deeds."

15.    On September 7, 2016, Mr. Machevsky filed his Answer to the aforesaid complaint of Mr. Binafard.

16.    As early as on March 10, 2015, Mr. Machevsky had filed in Superior Court of the State of California a complaint against Kleemoffs titled "Nikolay Machevsky v. Izabella Kleemoff; Michael Kleemoff; Kleemoff Family Trust," Case No. BC 574900. Mr. Machevsky claimed in the complaint that the Kleemoffs obtained the Property from him fraudulently and that Kleemoffs Deeds should be cancelled.

17.    On August 26, 2016 the Court in the Case No. BC 574900 entered the Judgment in favor of Mr. Machevsky.   Per the Judgment, both the Kleemoffs Deeds are cancelled.  The cancellation of the Kleemoffs Deeds is properly recorded.  Accordingly, Mr. Machevsky remains the only true owner of the Property from the time he obtained his property rights.

18.    On August 8, 2016, the Court in the instant case entered a default judgment

1  against Kleemoffs and Mr. Machevsky in favor of Mr. Binafard. On October 31, 2016, said

2  judgment amended and in regard of Mr. Machevsky was vacated.    Thus, Mr. Machevsky

3  remains the only defendant in the instant case.

4       19.    Since the Kleemoffs Deeds are cancelled from the time they were executed,

5  Kleemoffs had no right to sell the Property that did not belong to them.    Accordingly, Mr.

6  Binafard did not obtain any rights to the Property which is rightfully owned by Mr.

7  Machevsky.

8       20.    Mr. Binafard still maintains the instant action against Mr. Machevsky and by

9  that the adverse claim as to the right, title or the interest of Mr. Machevsky to the Property

10  against which a determination is sought.

11       21.    The adverse claim of Mr. Binafard is without right, and he has no estate, title,

12  or interest in the Property.  Mr. Machevsky remains the true and rightful owner in fee of the

13  Property.

14       22.    Based upon the Cross-Defendant Binafard's acts, Cross-Complainant

15  Machevsky seeks to quiet title against the claims of said Cross-Defendant in the subject

16  Property, against the claims of any/all successors of the Cross-Defendant, and against the

17  claims of any/all unknown cross-defendants, whether or not such claims or clouds of title are

18  known to the Cross-Complainant.

19       23.    The present determination is sought by Cross-Complainant Machevsky as of

20  the dates he acquired the Property.

21       **SECOND CAUSE OF ACTION**

22       **Injunctive Relief**

23       **(Against All Defendants)**

24       24.    Cross-Complainant repeats and re-alleges each and every allegation contained

25  in paragraphs 1 through 23, inclusive, and incorporate them by reference as if set forth in

26  full herein.

27       25.    As a direct and proximate result of Cross-Defendant Binafard's acts,

28  Mr. Machevsky is deprived of his rights to possession of the Property, in that he faces the

1    loss of the Property that belongs to him, and he has to submit to Mr. Binafard demand to

2    vacate the Property with no other place for him to live.  Mr. Binafard has infringed on Mr.

3    Machevsky's right to possession of the Property.

4      26.    Mr. Machevsky is informed and believes, and thereon alleges, that, unless

5    restrained and enjoined, Mr. Binafard will sell the property leaving Mr. Machevsky on the

6    street.

7      27.    Mr. Machevsky requests that Mr. Binafard be ordered not to sell the Property,

8    to refrain from any acts directed to sell the Property, or disposing of the Pproperty in any

9    aspect.

10     28.    Mr. Machevsky has no plain, adequate or speedy remedy at law to enforce his

11    rights, and, particularly, to protect the Property from any sale by Mr. Binafard, and, unless

12    restrained, Mr. Binafard or any other on his behalf will cause Mr. Machevsky to suffer

13    irreparable damages, injury and harm.

14     29.    There is a reasonable probability that Mr. Machevsky will prevail on the merits

15    of his claims as set forth in this Cross-Complaint.  The harm that Mr. Machevsky may suffer

16    in the absence of the injunction sought greatly outweighs the harm to Mr. Binafard from

17    imposing the injunction.

18     30.    Given the equities of this action, Mr. Machevsky  is entitled to appropriate

19    injunctive relief (temporary restraining order, preliminary and permanent injunction) to

20    enjoin and prohibit cross-defendants from sale of the Property, any acts directed to sell the

21    Property, or disposing of the Property in any aspect. .

22                        **THIRD CAUSE OF ACTION**

23                          **Declaratory Relief**

24                       **(Against All Cross-Defendants)**

25     31.    Cross-Complainant repeats and re-alleges each and every allegation

26    contained in paragraphs 1 through 30, inclusive, and incorporate them by reference as if

27    set forth in full herein.

28     32.    An actual controversy has arisen and now exists between Mr. Machevsky

1   and Cross-Defendants, and each of them, concerning their respective rights, duties and

2   obligations arising from the aforesaid dealings and promises.

3        33.    Mr. Machevsky contends that Mr. Binafard did not obtain any rights to the

4   Property which is rightfully owned by Mr. Machevsky.

5        34.    Mr. Machevsky desire a judicial determination of the respective rights and

6   duties of Mr. Machevsky, on the one hand, and Mr. Binafard, on the other hand,

7   particularly that Mr. Binafard did not obtain any rights to the Property which is rightfully

8   owned by Mr. Machevsky.

9        35.    Such a declaration is necessary and appropriate at this time in order Cross-

10  Complainant and Cross-Defendants may ascertain their rights and duties with respect to the

11  acts alleged herein.   Furthermore, a determination of the respective rights and liabilities

12  of said plaintiff and defendants is necessary and appropriate in order to avoid a

13  circumvention of laws and the circuitry and multiplicity of actions concerning the subject

14  transaction.

15       WHEREFORE, Cross-Complainant prays for relief as follows:

16  AS TO THE FIRST CAUSE OF ACTION:

17      1.    For a judgment quieting the title of Cross-Complainant Machevsky to the

18          subject Property as the true and rightful owner in due course;

19      2.    Declaring that neither Cross-Defendant Binafard nor his successors,

20          assignees, employees  or any agents have the right to possession of the

21          Property.

22  AS TO THE SECOND CAUSE OF ACTION:

23      1.    For an order requiring Cross-Defendants to show cause, if any they have,

24          why they should not be enjoined as set forth in this Cross-Complaint, during

25          the pendency of this action;

26      2.    For appropriate injunctive relief (temporary restraining order, preliminary

27          injunction and permanent injunction), all enjoining and prohibiting Cross-

28          Defendants, and each of them, and their respective agents, servants, and

1   employees, and all persons acting under, in concert with, or for them, from

2   sale of the Property, any acts directed to sell the Property, or disposing of the

3   Property in any aspect.

4   <u>AS TO THE THIRD CAUSE OF ACTION</u>:

5   1.    For a judicial determination of the respective rights and duties of rights and

6         duties of Mr. Machevsky, on the one hand, and Mr. Binafard, on the other

7         hand, particularly that Mr. Binafard did not obtain any rights to the Property

8         which is rightfully owned by Mr. Machevsky.

9   <u>ALL CAUSES OF ACTION</u>

10  1.    For costs of suit incurred herein and prejudgment interest;

11  2.    For such other and further relief as the Court deems just and proper.

12  Dated: November 30, 2018        LAW OFFICES OF JULIA SKLAR

13

14                          Julia Sklar, Attorney for Plaintiff
                            Nikolay Machevsky
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    8
074                         **CROSS-COMPLAINT**

## VERIFICATION

I, Nikolay Machevsky, am the Cross-Complainant in this action.    I have read the complaint and it is true of my own knowledge, except to those matters stated on information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this day of November, 2018 at Los Angeles, California.

_____

Nikolay Machevsky

**CROSS-COMPLAINT**

1

PROOF OF SERVICE 1013 A(3) C.C.P.

**Binafard v. Machevsky**

**Case No.: BC586794**

2

3    STATE OF CALIFORNIA           )
                                   )    ss.
4    COUNTY OF LOS ANGELES         )

5         I am employed in the County of Los Angeles, State of California. I am over the age of 18, and
not a party to the within action; my business address is 14414 Hamlin Street, Van Nuys, California
91401.

6         On **January 4, 2019** I served the document(s) described as: **VERIFIED CROSS
COMPLAINT** on all parties in this action by placing a true copy thereof enclosed in a sealed envelope
7    addressed as follows:

8

**Attorney for Behzad Daniel Binafard**
9    Jack M. Zakariaie
     Zakariaie & Zakariaie
10   10100 Santa Monica Blvd., Suite 300
     Los Angeles, CA 90067

11   Tel: 310-552-0066;  Fax: 310-552-4585

12   __x__   **(BY MAIL)**  I am readily familiar with the firm's practice of collection and processing
              correspondence for mailing. Under that practice it would be deposited with U.S. postal service on
13            that same day with postage thereon fully prepaid at Van Nuys, California in the ordinary course
              of business. I am aware that on motion of the party served, service is presumed invalid if postal
14            cancellation date or postage meter date is more than one day after date of deposit for mailing in
              affidavit.

15
              **(BY FACSIMILE)**  I transmitted from a facsimile transmission machine whose telephone
16   ___      number is (818) 947 - 0177 the following documents described above to:
              _____, whose telephone number is ( )    -         .
17   The above described transmission was reported as complete without error by a transmission
     report issued by the facsimile transmission machine upon which the said transmission was made
18   immediately following the transmission. A true and correct copy of the said transmission report
     is attached hereto and incorporated herein by this reference.
19   ___      **(BY PERSONAL SERVICE)**  I Delivered such envelope by hand to the offices of the
              addressee.

20   Executed on **January 4, 2019** at Van Nuys, California.

21   __x__   **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the
              above is true and correct.

22
              **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at
23   ___      whose direction the service was made.
                                                    _____
24                                                  NATASHA MAY

25

26

27

28

# Exhibit "E"

Case 2:14-bk-29611-RK   Claim 7-1   Filed 11/05/19   Desc

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | NIKOLAY MACHEVSKY |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: Central District of California | |
| Case number | 2:14-bk-29611-RK |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | DATA LEVERAGE, LLC (New Mexico LLC)<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>MICHAEL SMENT, ESQ.<br>Name<br>770 County Square Drive, Suite 210<br>Number    Street<br>Ventura          CA          93003<br>City              State        ZIP Code<br>Contact phone 805-654-0311<br>Contact email smentlaw@aol.com | **Where should payments to the creditor be sent? (if different)**<br>DATA LEVERAGE, LLC<br>Name<br>317 Commercial St., NE, Suite A<br>Number    Street<br>Albuquerque      NM          87102<br>City              State        ZIP Code<br>Contact phone 818-987-5459<br>Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____<br>                                                                            MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6.  Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |
| **7.  How much is the claim?** | $_____ 293,694.87 . **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8.  What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

MONEY LOANED TO/ADVANCED FOR DEBTOR/ATTORNEY FEE

ACTUAL, NECESSARY COSTS OF PRESERVING ESTATE AND ESTATE PROPERTY

**9.  Is all or part of the claim secured?**

☑ No<br>☐ Yes.  The claim is secured by a lien on property.

    **Nature of property:**

    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    Value of property: $_____

    Amount of the claim that is secured: $_____

    Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

    Amount necessary to cure any default as of the date of the petition: $_____

    Annual Interest Rate (when case was filed) _____%
    ☐ Fixed
    ☐ Variable

**10. Is this claim based on a lease?**

☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**

☑ No<br>☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No | | |
|---|---|---|---|
| | ☑ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $____20,774.19 |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |

— CLAIM ENTITLED TO PRIORITY AS ADMINISTRATIVE EXPENSE UNDER 11 USC § 503(b)(1)(A) OR OTHERWISE—
*Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.*

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  11/04/2019
                    MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| Name | DAVID | LINTON | PREYS |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Manager | | |
| Company | DATA LEVERAGE, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 317 Commercial St., NE, Suite A | | |
| | Number    Street | | |
| | Albuquerque | NM | 87102-3453 |
| | City | State | ZIP Code |
| Contact phone | 818-987-5459 | Email | |

In re NIKOLAY MACHEVSKY
USBC Case No. 2:14-bk-29611-RK
Chapter 7

## ITEMIZATION OF PROOF OF CLAIM
## (by DATA LEVERAGE, LLC)

| | |
|---|---|
| 10/15/2018 – Due Diligence/Legal Fees & Expenses (for agmt with Debtor)… | $   6,500.00 |
| 11/01/2018 – Reinstatement of First Trust Deed Loan (Selene Finance) …… | $122,572.68 |
|     (Loan No. 783605) | |
|     (for 10701 Wilshire Blvd., Unit #1802, Los Angeles, CA 90024) | |
| 12/15/2018 – Payoff/Removal of Second Trust Deed Loan (JPMorgan Chase)… | $ 30,000.00 |
|     (for 10701 Wilshire Blvd., Unit #1802, Los Angeles, CA 90024) | |
| 1/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 2/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 3/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 4/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 5/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 6/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,435.32 |
| 7/01/2019 – Payment to First Trust Deed Loan (Selene Finance) …… | $   2,362.08 |
|     Sub-Total (Loan Payments) - | $ 16,974.00 |
| 6/27/2019  -  Payment to Los Angeles County Tax Collector …. | $ 20,774.19 |
|     (Delinquent Property Taxes) | |
|     (for 10701 Wilshire Blvd., Unit #1803, Los Angeles, CA 90024) | |
| 11/01/2018-7/31/2019 – Advance of Legal Fees & Costs (to Debtor)…. | $ 96,874.00 |
|     (for State Court Litigation - Binafard v. Kleemoff, Machevsky, | |
|     LASC Case No. BC586794) | |
| **Present Total of Claim -** | **$293,694.87*** |

[Not including: Interest @ 10 % from 10/15/2018; additional advances of
Legal Fees & Costs; additional advances of loan payments; additional
advances of real property taxes or supplements; or additional Legal Fees
or Expenses or other agreed-to or allowed items, charges or fees]

[Creditor reserves the right to amend or supplement this Claim with additional
amounts, information, details, documents or other evidence or supporting materials]

[As of 11/4/2019]

# Bank of America 

**Your checking account**

| Account # ·         749 | November 1, 2018 to November 30, 2018

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 11/13/18 | Online Banking transfer from CHK 9736 Confirmation# 7287662182 | 50,000.00 |
| **Total deposits and other credits** | | **$50,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 11/01/18 | WIRE TYPE:WIRE OUT DATE:181101 TIME:0527 ET TRN:2018103100565487 SERVICE REF:003314 BNF:SELENE FINANCE ID:1500960201 BNF BK:SIGNATURE BANK ID:026013576 PMT DET:7DBDGN8QL /ACC/REF: LOAN  NO: 783605, KLEEMOFF | -122,572.68 |

Page 5 of 6



This page is part of your document - DO NOT DISCARD



# 20181321741



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/31/18 AT 02:04PM**

| | | |
|---|---|---:|
| FEES: | | 20.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 95.00 |



**L E A D S H E E T**



201812312840119

00016115568



009543201

**SEQ:**
**01**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**

E18826S

Loan Number: 100900429420606037

Requested by:
Lien Release
JPMorgan Chase Bank, N.A.

Record and Return to:
MICHAEL KLEEMOFF AND IZABELLA KLEEMOFF
TRUSTEES OF THE "KLEEMOFF FAMILY TRUST OF 2006"
AS THEIR COMMUNITY PROPERTY
230 174TH ST APT 1603
SUNNY ISLES BEACH, FL 33160-3331

Document Number: 16115568

Batch Number: 9543201

## DEED OF RECONVEYANCE

CALIFORNIA RECONVEYANCE COMPANY as duly appointed Trustee under the Deed of Trust executed by MICHAEL KLEEMOFF AND IZABELLA KLEEMOFF TRUSTEES OF THE "KLEEMOFF FAMILY TRUST OF 2006" AS THEIR COMMUNITY PROPERTY as Trustor on October 31, 2007 and recorded on November 29, 2007 in Volume/Book at Page and/or as Document 20072625024 in the Office of the County Recorder of LOS ANGELES County, California. This Reconveyance is solely for the purpose of releasing the real property described above from the lien created by the Deed of Trust.

Property Address: 10701 WILSHIRE BLVD APT 1802, LOS ANGELES, CA 90024. Assessor Parcel Number(s), if applicable:

Now therefore, the present Trustee having received from the present owner of the beneficial interest under said Deed of Trust and the obligations secured thereby a written request to reconvey by reason of the obligations secured by said Deed of Trust, does hereby reconvey, without warranty, to the persons legally entitled thereto, the estate, title and interest now held by it under said Deed of Trust in LOS ANGELES County, California, describing the land therein.

CALIFORNIA RECONVEYANCE COMPANY

ANGELA WILLIAMS
Vice President

STATE OF Louisiana
COUNTY/PARISH OF OUACHITA

On December 24, 2018, before me appeared ANGELA WILLIAMS, to me personally known, who did say that he/she/they is (are) the Vice President of CALIFORNIA RECONVEYANCE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

MARY BLANCHE - 64436, Notary Public
LIFETIME COMMISSION

MARY BLANCHE
Ouachita Parish, Louisiana
LIFETIME COMMISSION
NOTARY ID # 64436

Outbound Date: 12/21/18

CA89
11/01/18GC

084

# Exhibit "F"

**PURCHASE AND SALE AGREEMENT**

This PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of October 30, 2018 (the "Effective Date"), is entered into between Data Leverage LLC, a New Mexico Limited Liability Company whose address is 317 Commercial Street, NE, Suite A, Albuquerque, New Mexico 87102 ("Buyer") and Nikolay Machevsky ("Seller") with respect to the following facts:

A.  Seller is the owner of that certain real property located at 10701 Wilshire Boulevard, units 1802 and 1803, Los Angeles, California 90024, APN 4360-011-130 and 4360-011-129, respectively (collectively the "Property" and individually "Unit 1802" and "Unit 1803");

B.  In exchange for Seller's transfer to buyer Buyer of all of his right, title and interest in and to the Property, Buyer, subject to the terms and conditions of this Agreement, has agreed to and will pay all mortgage payments and property taxes on the Property, including any unpaid mortgage payments or property taxes, and transfer to Buyer a life estate in Unit 1802;

C.  Seller is willing to transfer all of his right title and interest in and to the Property to Buyer in exchange for a life estate in Unit 1802 and Buyer's payment of all past due and future mortgage and property tax payments with respect to said Unit subject to the terms and conditions of this Agreement;

D.  The parties acknowledge and agree that certain claims, liens and arrearages exist which adversely affect the Property (the "Adverse Matters"). The parties further acknowledge that taking into consideration the Adverse Matters, the terms hereof are fair and reasonable.

NOW, THEREFORE, the parties hereto have agreed as follows:

## 1.  PURCHASE AND SALE

Subject to the terms and conditions of this Agreement hereinafter set forth, Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller all of Seller's right, title, and interest in and to the following (collectively referred to as the "Property"):

(a)  Units 1802 and 1803, consisting of two adjoining condominium units which are more particularly described in Exhibit "A" hereto;

(b)  All rights, privileges, easements and rights of way appurtenant to the Property (collectively, the "Appurtenances");

(c)  All improvements and fixtures located on or in the Property or for its benefit located in any common area, including, without limitation: (i) all apparatus, equipment and appliances used in connection with the occupancy of the Property and (ii) all facilities used to provide any services to the Property (collectively, the "Improvements");

(d)  All tangible personal property located in and used in connection with the Property or the Improvements (collectively, the "Personal Property");

(e)  All rights, warranties, guarantees, utility contracts, approvals (governmental or otherwise), permits, certificates of occupancy, surveys, plans and specifications,and any agreements, covenants or

indemnifications that Seller received from the preceding and/or any prior owner, and relating to the Property, Appurtenances or Improvements (collectively, the "Intangible Property").

## 2. CONSIDERATION

In consideration of Seller's transfer of all of his right, title and interest in the Property pursuant to paragraph 1 hereof and the Buyer's agreements set forth in this paragraph 2, subject to the terms and conditions of this agreement being fully performed and/or satisfied, as the case may be:

(a)  Buyer shall assume, bring current and/or pay off the existing encumbrances on the Property plus any arrearage with respect to property taxes affecting the Property and thereafter timely pay such mortgage payments and property taxes affecting the Property as may thereafter come due;

(b)  Subject to Buyer's right to replace the wall between Units 1802 and 1803 as more particularly described hereinafter, Buyer shall concurrently convey to Seller a life estate in and to Unit 1802 (the "Life Estate") by way of a quit claim deed in the form and content of Exhibit "B" attached hereto (the "Life Estate Deed"). Seller shall have no obligation to pay Buyer rent or property taxes with respect to said Unit which Buyer agrees to pay. Buyer shall cause to be recorded the Life Estate Deed as part of the closing referred to hereinafter (the "Closing"). Buyer shall have no obligation to pay for maintenance, repairs or other expenses incidental and/or related to the Life Estate, all of which shall solely be the Buyer's responsibility.

(c)  Other than Buyer's agreement with respect to the obligations set forth in paragraphs 2 (a) and (b), there shall be no other consideration to Seller for the transfer of title to the Property to Buyer.

(d)  Seller shall deliver to Buyer at least three (3) business days prior to the Closing: 1. A quitclaim deed in recordable form transferring all of his right, title, and interest in and to the Property in the form and content of Exhibit "C" attached hereto (the "Transfer Deed") which will be recorded as part of the Closing; 2. Executed assignments of the Appurtenances, Improvements, Personal Property, and the Intangible Property; and, 3. To the extent in the possession of Seller, all books, records and other documents related to the Property and all keys, key cards and codes for entrance into the Property and identification of the locks to which they correspond.

## 3. EXPUNGEMENT OF *LIS PENDENS*

Seller agrees to use his best efforts to cause the *lis pendens* which is been filed by Behzad Daniel Binafard, as plaintiff, in Los Angeles Superior Court case No. BC 586794 (the "Action") to be ordered expunged by the Court in the Action. Seller and Buyer agree to cooperate in the preparation of an appropriate motion or other application to the Court in the Action for such order expunging the said lis pendens. In the event that the parties are unsuccessful in obtaining said expungement in the Action, this contract made be immediately canceled by Buyer by giving Seller written notice of such cancellation.

## 4. ACCESS

(a)  Buyer and its agents, employees, consultants, inspectors, appraisers, engineers and contractors (collectively "Buyer's Representatives") shall have the right, at all times through the Closing Date, from time to time, upon the advance notice required pursuant to Subsection 4(b), to enter upon the Property during normal business hours to examine and visually inspect the same. Buyer shall have the right to terminate this Agreement in the event of its discovery of conditions or circumstances which render the Property unsuitable for Buyer's intended purposes with respect thereto.

(b)  In conducting any inspection or otherwise accessing the Property, Buyer shall at all times comply with all laws and regulations of all applicable governmental authorities and shall schedule and coordinate all inspections of the Property or other access thereto with Seller and shall give Seller at least one (1) business day's prior written notice thereof. Seller shall be entitled to have a representative present at all times during each such inspection or other access.

(c)  In the event that the Closing shall not occur for any reason whatsoever, Buyer shall promptly return to Seller copies of all due diligence materials delivered by Seller to Buyer and shall destroy all copies and abstracts thereof. The provisions of this subsection (c) shall survive the Closing or any termination of this Agreement.

(d)  Buyer agrees to indemnify and hold Seller and his heirs, successors or assigns harmless from and against any and all losses, costs, damages, liens, claims, liabilities or expenses (including, but not limited to, reasonable attorneys' fees, court costs and disbursements) arising from or by reason of Buyer's and/or Buyer's Representatives' access to, or inspection of, the Property, or any tests, inspections or other due diligence conducted by or on behalf of Buyer, except to the extent such losses, costs, damages, liens, claims, liabilities or expenses are caused by an existing condition at the Property or are caused by the gross negligence or willful misconduct of any of the Seller, his heirs, successors or assigns. The provisions of this subsection (d) shall survive the Closing or any termination of this Agreement.

## 4.  THE CLOSING

(a)  The completion of the transaction contemplated hereby (the "Closing") shall take place on October__2018, or upon such date as all conditions of Closing herein provided are complied with or waived, or at such other time and place as shall hereafter be mutually agreed upon by Seller and Buyer, which date shall constitute the "Closing Date".  At the Closing, the transactions contemplated herein shall be consummated by as follows:

1.  All documents required to be delivered by Seller pursuant to this Agreement shall be delivered to Buyer and all documents required to be delivered by Buyer shall be delivered to Seller.

2.  Seller shall have vacated the Property except for Unit 1802 which shall thereafter be the sole portion of the Property he shall have any right, title or interest in or any right whatsoever, to occupy

3.  All documents required to be recorded pursuant to the terms of this Agreement shall be properly and promptly recorded by Buyer in the office of the County Recorder of Los Angeles County.

## 5.  EXCEPTIONS TO TITLE; TITLE MATTERS

(a)  The Property shall be sold, assigned and conveyed by Seller to Buyer, and Buyer shall accept and assume same, subject only to the following matters (collectively, the "Permitted Exceptions"):

1.  The Adverse Matters.

2.  All present and future laws, ordinances, codes, restrictions and regulations of all governmental authorities having jurisdiction with respect to the Property.

3. All covenants, restrictions, conditions, easements and agreements with respect to the Property, provided as to any such exceptions that are not set forth in the Title Report, do not interfere with the present use of the Property, do not prohibit the maintenance and operation of the Property and do not impose any financial or other obligations on the Buyer.

4. Existing liens, encumbrances or other title exceptions approved or waived by Buyer.

5. Any other matter which the Title Company will insure against collection or enforcement of same out of the Property and/or that no prohibition of present use or maintenance of the Property will result therefrom, as may be applicable.

(b) Buyer shall promptly order from____(the "Title Company"), a title report (the "Title Report"). No later than five o'clock p.m., PST, on the date that is five (5) business days after the Title Report is received by Buyer,(the "Title Report Objection Date"), Buyer or Buyer's attorney shall furnish to Seller a writing (the "Title Report Objection Notice") specifying any exceptions to title to the Property set forth in the Title Report which are not Permitted Exceptions (each, a "Title Objection"). Buyer's failure to timely deliver the Title Report Objection Notice on or prior to the time specified on the Title Report Objection Date shall constitute Buyer's irrevocable acceptance of the Title Report and Buyer shall be deemed to have unconditionally waived any right to object to any matters set forth therein.

(c) Buyer shall only have the right to object to those exceptions to title disclosed on Schedule B of the Title Report that are not Permitted Exceptions. Permitted Exceptions shall be deemed to include, without limitation, any liens, encumbrances or other title exceptions: (i) which the Title Company is willing to omit as exceptions to title (without additional cost to Buyer or where Seller pays such cost for Buyer provided that the Title Company will also agree to provide the same coverage to subsequent Buyers without cost); (ii) which will be extinguished upon the transfer of the Property or (iii) which are set forth in paragraph 6(a).

(d) If, on the Closing Date, this agreement has not already been canceled by Buyer by reason of a Title Objection, Seller is unable to convey title to the Property to Buyer subject to and in accordance with the provisions of this Agreement, Buyer shall have the right to immediately cancel this Agreement by giving Seller and the Escrow Holder written notice of cancellation.

One

(e) Notwithstanding anything in subsection 6 (d) to the contrary, Buyer may at any time accept such title as Seller can convey, for the consideration herein set forth. The acceptance by Buyer of the Transfer Deed under such circumstances shall be deemed to be full performance of, and discharge of, every agreement and obligation on Seller's part to be performed under this Agreement, except for such matters which are expressly stated to survive the Closing hereunder.

(f) Seller acknowledges that Buyer may be unable to remove or otherwise sure some of the Adverse Matters and that Buyer's inability to do so may adversely affect Seller's Life Estate, among other things.

## 6.  COSTS

(a)  1.  Buyer shall pay all costs of and expenses incidental to the Escrow, services of the Title Company, and charges of the County Recorder;

2.  Buyer shall pay any and all costs incurred by it in connection with the preparation, review and negotiation of this Agreement and the transactions contemplated herein and the closing, including Seller's attorney's fees.

(b) Seller shall pay any and all costs incurred by him in connection with the preparation, review and negotiation of this Agreement and the transactions contemplated herein and the closing, including Buyer's attorney's fees.

## 7.  TERMINATION

This Agreement may be terminated and the transaction herein provided for may be abandoned at any time prior to the Closing Date upon the occurrence of any of the following:

(a)  Mutual consent of the parties hereto so to do; or

(b)  At the election of Buyer, if there shall be a failure of any condition set forth in any of the paragraphs hereof.

## 8.  NOTICE OF TERMINATION

In the event an election pursuant to Paragraph 8 is made to terminate this Agreement:

(a) If Buyer elects to terminate this Agreement, it shall give written notice thereof to Seller.

(b) Provided that the election pursuant to Paragraph 8 is validly exercised, upon the giving of notice as provided in Section 9 (a) or if by mutual consent, without notice, the transaction, the subject hereof, shall be abandoned and, except for payment of their own costs and expenses incident to this Agreement, there shall be no liability on the part of either party as a result of such termination and abandonment.

## 10.  SELLER'S COVENANTS

(a)  From the Effective Date until the Closing, Seller shall:

1.  Maintain the Property in the ordinary course of business and deliver the Property to Buyer at the Closing in substantially the same condition it was in as of the Effective Date, ordinary wear and tear excepted;

2.  Maintain liability and property damage insurance in amounts that Seller has customarily maintained; and

3.  Comply with all laws, CC & R's, condominium association rules, and any other requirement or restriction applicable to the Property, its use or occupancy thereof.

(b)  If Buyer so chooses, two (2) Business Days prior to the Closing Date, Buyer may perform a final walk-through of the Property. Seller shall provide access to Buyer for that purpose, provided same is during normal business hours. Seller may accompany Buyer on said walk-through.

## 10. REPRESENTATIONS AND WARRANTIES

(a)  Seller represents and warrants that:

1.  This Agreement is valid and binding upon Seller, subject to bankruptcy, reorganization and other similar laws affecting the enforcement of creditors' rights generally;

2.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions contemplated hereby is prohibited by, or requires Seller to obtain any consent, authorization, approval or registration under any law, statute, rule, regulation, judgment, order, writ, injunction or decree which is binding upon Seller;

3.  Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code 1986, as amended, or any regulations promulgated thereunder (collectively, the **"Code"**);

(b)  Buyer represents and warrants that:

1.  Buyer has full power and authority to enter into and perform this Agreement in accordance with its terms. Buyer is a limited liability company validly formed and in good standing under the laws of the State of New Mexico.  Buyer is duly qualified to do business and is in good standing in the State of California. All requisite action has been taken by Buyer in connection with this Agreement or shall have been taken on or prior to the Closing Date. Buyer's execution, delivery and performance of this Agreement have been duly authorized and all required consents or approvals have been obtained. The individuals executing this Agreement on behalf of Buyer have the power and authority to bind Buyer to the terms and conditions of this Agreement;

2.  This Agreement is a valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally;

3.  Buyer has not violated any agreement, contract or other document to which Buyer is a party nor any judicial order, judgment or decree to which Buyer is bound by: (i) entering into this Agreement; (ii) executing any of the documents Buyer is obligated to execute and deliver on the Closing Date; or, (iii) performing any of its duties or obligations under this Agreement or otherwise necessary to consummate the transactions contemplated by this Agreement;

4.  There are no actions, lawsuits, litigation or proceedings pending or threatened in any court or before any governmental or regulatory agency that affect Buyer's power or authority to enter into or perform this Agreement.

## 11.  CONDITIONS TO CLOSING

(a)  Notwithstanding anything to the contrary contained herein, the obligation of Seller to close title in accordance with this Agreement is expressly conditioned upon the fulfillment by and as of the time of the Closing of each of the conditions listed below; provided, that Seller, at his election, evidenced by written notice delivered to Buyer at or prior to the Closing, may waive any of such conditions:

1.  Buyer shall have: (i) executed and delivered to Buyer for recording the Life Estate Deed and (ii) taken or caused to be taken all of the other action required of Buyer pursuant to this Agreement.

2.  On the Closing Date all representations and warranties made by Buyer shall be true and correct as if made on the Closing Date.

(b) Notwithstanding anything to the contrary contained herein, the obligation of Buyer to close in accordance with this Agreement is expressly conditioned upon the fulfillment by and as of the time of the Closing of each of the conditions listed below; provided, that Buyer, at its election, evidenced by written notice delivered to Seller at or prior to the Closing, may waive all or any of such conditions:

1.  Seller shall have executed and delivered to Escrow all of the documents required to be delivered by Seller at the Closing and shall have taken all other action required of Seller at the Closing.

2.  All representations and warranties made by Seller herein shall be true and correct in all material respects as if made on the Closing Date; provided, however, to the extent the facts and circumstances underlying such representations and warranties may have changed as of the Closing Date, Seller shall have the right to update its representations and warranties as of the Closing Date and Buyer shall be obligated to consummate the transactions contemplated by this Agreement on the Closing Date.

3.  The Title Company shall be willing to insure title to the Property pursuant to an ALTA Title Insurance Policy in the amount of_____, subject only to the Permitted Exceptions and as otherwise provided in this Agreement (the "Title Insurance Policy").

(a)  If Buyer is unable to timely satisfy (and Seller has not waived in writing) the conditions precedent to Seller's obligation to effect the Closing, then such failure shall constitute a default hereunder, in which case, Seller shall have the right to terminate this Agreement by notice thereof to Buyer in accordance with the terms of this Agreement and, thereafter, neither party shall have any further obligations hereunder, except those expressly stated to survive the termination hereof.

(b)  If Seller is unable to timely satisfy the conditions precedent to Buyer's obligation to effect the Closing (and Buyer has not waived the same in writing), then Buyer or Seller shall be entitled to terminate this Agreement by notice thereof to the other party in accordance with the terms of this Agreement and, thereafter, neither party shall have any further obligations hereunder, except those expressly stated to survive the termination hereof.

## 13. NO BROKERAGE COMMISSIONS

(a)  Each party hereto represents and warrants to other that he/it has not dealt or negotiated with, or engaged on his/its own behalf or for his/its benefit, any broker, finder, consultant, advisor, or professional in the capacity of a broker or finder (each a "Broker") in connection with this Agreement or the transactions contemplated hereby. Each party hereto hereby agrees to indemnify, defend and the other and its disclosed and undisclosed direct and indirect shareholders, officers, directors, partners, principals, members, employees, agents, contractors, heirs, successors and assigns, harmless from and against any and all claims, demands, causes of action, losses, costs and expenses (including reasonable attorneys' fees, court costs and disbursements) arising from any claim for commission, fees or other compensation or reimbursement for expenses made by any Broker engaged by or claiming to have dealt with the indemnifying party in connection with this Agreement or the transactions contemplated hereby.

(b)  The provisions of this paragraph 13 shall survive the termination of this Agreement or the Closing.

## 14. RISK OF LOSS

If prior to the Closing Date any portion of the Property shall be taken by condemnation or eminent domain or damaged or destroyed by fire or other casualty, Buyer shall have the right to cancel this Agreement.

## 15. REMEDIES

(a)  THE PARTIES AGREE THAT THEIR SOLE REMEDY IN THE EVENT OF A BREACH OF THIS AGREEMENT BY THE OTHER PARTY HERETO, AT LAW OR IN EQUITY, IS FOR THE NONBREACHING PARTY TO CANCEL BY WRITTEN NOTICE THIS AGREEMENT. UPON GIVING SUCH NOTICE OF CANCELLATION THIS AGREEMENT SHALL TERMINATE AND NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT

EXCEPT FOR THOSE THAT EXPRESSLY SURVIVE THE TERMINATION HEREOF. THE PARTIES AGREE THAT THE REMEDY OF CANCELLATION SHALL BE IN LIEU OF ANY OTHER RELIEF TO WHICH EITHER PARTY MIGHT OTHERWISE HAVE BEEN BE ENTITLED AND EACH OF THEM HEREBY WAIVES ANY RIGHT HE/IT MIGHT HAVE HAD TO ANY ACTION, AT LAW OR IN EQUITY, AGAINST THE OTHER; PROVIDED, HOWEVER, THIS PROVISION SHALL HAVE NO EFFECT ON THE REMEDIES OF THE AGGRIEVED PARTY IN THE EVENT OF FRAUD, INCLUDING, WITHOUT LIMITATION, INTENTIONAL OR NEGLIGENT FRAUD BY THE OTHER PARTY HERETO IN CONNECTION WITH THIS TRANSACTION.

(b)  The provisions of this Paragraph 15 shall survive the termination of this Agreement and the Closing.

## 17.  RIGHT TO RESTORE PROPERTY TO TWO UNITS

Seller understands and agrees that Buyer's intention is to restore the wall which previously separated Units 1802 and 1803 following the Closing. Buyer shall, in all respects, provide access to, Seller at all reasonable and necessary times (but excluding weekends) to permit Seller to complete the restoration. In this regard, Seller shall permit Buyer's contractors, subcontractors, workers, building inspectors, and all other persons whose access to said construction is reasonably necessary and/or convenient to its completion. Buyer will use its good faith efforts to cause as little disruption as reasonably possible to Seller's enjoyment of the Life Estate during said construction. The provisions of paragraph 16 shall have no application to any remedies which Buyer may seek against Seller in the event Seller fails to comply with the provisions of this paragraph 17.

## 17.  GENERAL PROVISIONS

(a)  This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations and understandings of the parties.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all parties.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

(b)  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(c)  Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third person to any party to this Agreement, nor shall any provision give any third persons any right of subrogation or action over and against any party to this Agreement.

(d)  Any and all notices or other communication required or desired to be given hereunder shall be validly given or made if given in writing, by messenger, e-mail, FAX or telecopier or deposited in the United States mail, postage prepaid, by registered or certified mail (return receipt requested) and addressed to the parties at their respective addresses above given or to such other address as either of the parties may designate in writing in the manner provided for the giving of notices in this paragraph.  Any notice shall be

deemed to be given seventy-two hours after deposit in the U.S. mail, or on the date of e-mailing, telecopying or by messenger, if by e-mail, FAX or messenger.

(e) Each of the parties hereto agrees that it shall execute such further agreements, documents or instruments as may be necessary or appropriate in order to more effectively carry out the intent and purpose of this Agreement.

(f) This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, executors and administrators, personal representatives, successors and assigns.

(g) Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is a conflict between any provision of this Agreement and any present or future law, ordinance or regulation, the latter shall prevail, but the provision of this Agreement affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. Should any part, term or provision of this Agreement or any document required herein to be executed be declared invalid, void or unenforceable, all remaining parts, terms and provisions hereof shall remain in full force and effect and shall in no way be invalidated, impaired or affected thereby.

(h) This Agreement shall be governed by the laws of the State of California applicable to agreements executed and to be wholly performed in the State of California. Any dispute that arises under or relates to this Agreement (whether contract, tort, or both) shall be resolved in the Los Angeles Superior Court, Central District, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere.

(i) No party hereto shall transfer or assign this Agreement or any interest therein or any sums that may be or become due hereunder without the prior written consent of the other party hereto, and no purported assignment or transfer in violation of this restriction shall be valid to pass any interest to the assignee or transferee.

(j) In the event any action shall be brought to enforce the rights of any of the parties hereunder, the losing party agrees to pay all costs of such action and such reasonable attorneys' fees as may be awarded by the Court.  TO THE EXTENT PERMITTED BY LAW, EACH PARTY HERETO IRREVOCABLY WAIVES ANY RIGHT ANY PARTY HERETO MAY HAVE TO ASSERT THE DOCTRINE OF *FORUM NON CONVENIENS*, TO ASSERT THAT ANY PARTY HERETO IS NOT SUBJECT TO THE JURISDICTION OF THE AFORESAID COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS ARTICLE 20. SERVICE OF PROCESS, SUFFICIENT FOR PERSONAL JURISDICTION IN ANY ACTION AGAINST ANY PARTY HERETO, MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ANY SUCH PARTY'S ADDRESS INDICATED IN SECTION 20.01 HEREOF.

(l) Each party represents that (a) no other party, nor any agent or attorney of any other party, has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the execution of this Agreement; (b) no party has executed this Settlement Agreement in reliance on any promise, representation or warranty not contained herein and (c) no portion of any claim, obligation or liability released hereby has heretofore been assigned, encumbered or otherwise transferred to any other person or entity.

(m) The Parties agree that this Agreement shall be deemed to have been prepared by all of the Parties jointly, and no ambiguity shall be resolved against any Party on the premise that it

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Data herein above set forth.

Data Leverage LLC, a New Mexico Limited Liability Company

By_____

David Linton Preys, its Manager  "Buyer"


_____

Nikolay Machevsky   "Seller"

# Exhibit "G"

# CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:**  BC574900
NIKOLAY MACHEVSKY VS IZABELLA KLEEMOFF ET AL

**Filing Courthouse:**  Stanley Mosk Courthouse

**Filing Date:**  03/10/2015
**Case Type:**  Other Real Property (not eminent domain, landlord/tenant, foreclosure) (General Jurisdiction)
**Status:**  Default Judgment By Court - Before Trial 08/26/2016

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

Unknown Cross Reference:  BC586794 on 04/11/2019

Unknown Cross Reference:  BC586794 on 04/11/2019

# FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

# PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

KLEEMOFF FAMILY TRUST - Defendant

KLEEMOFF IZABELLA - Defendant

KLEEMOFF LIVING TRUST - Defendant/Respondent's AKA

KLEEMOFF MICHAEL - Defendant

LAW OFFICES OF JULIA SKLAR - Attorney for Plaintiff

MACHEVSKY NIKOLAY - Plaintiff

# DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

## Documents Filed (Filing dates listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

07/08/2015

**04/11/2019** Minute Order ( (Court Order))

Filed by Clerk

**09/26/2016** PROOF OF SERVICE OF NOTICE OF ENTRY OF JUDGEMENT

**09/26/2016** Proof of Service (not Summons and Complaint)
Filed by Nikolay Machevsky (Plaintiff)

**09/06/2016** NOTICE OF ENTRY OF JUDGMENT OR ORDER

**09/06/2016** Notice of Entry of Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Minute order entered: 2016-08-26 00:00:00
Filed by Clerk

**08/26/2016** REQUEST FOR DISMISSAL

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** DEFAULT JUDGMENT BY COURT

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** Minute Order

**08/26/2016** SUMMARY OF THE CASE

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** DECLARATION OF NIKOLAY MACHEVSKY

**08/26/2016** Miscellaneous-Other
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Declaration
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Dismissal
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/24/2016** NOTICE OF CONTINUANCE OF DEFAULT PROVE UP HEARING TO PRESENT LIVE TESTIMONY

**08/24/2016** Notice Re: Continuance of Hearing and Order
Filed by Nikolay Machevsky (Plaintiff)

**08/16/2016** NOTICE RE: CONTINUANCE OF HEARING

**08/16/2016** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**08/16/2016** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**07/21/2016** NOTICE OF CONTINUANCE OF DEFAULT PROVE UP HEARING TO PRESENT LIVE TESTIMONY

**07/21/2016** Notice Re: Continuance of Hearing and Order
Filed by Nikolay Machevsky (Plaintiff)

**07/05/2016** COURT RULING

**07/05/2016** Order
Filed by Court

**07/01/2016** Minute order entered: 2016-07-01 00:00:00
Filed by Clerk

**07/01/2016** Minute Order

**06/17/2016** Minute order entered: 2016-06-17 00:00:00
Filed by Clerk

**06/08/2016** Minute order entered: 2016-06-08 00:00:00
Filed by Clerk

**06/08/2016** Minute Order

**04/18/2016** Minute order entered: 2016-04-18 00:00:00
Filed by Clerk

**04/18/2016** Minute Order

**03/01/2016** Minute order entered: 2016-03-01 00:00:00
Filed by Clerk

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** Minute Order

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**01/06/2016** Minute order entered: 2016-01-06 00:00:00
Filed by Clerk

**01/06/2016** Minute Order

**12/28/2015** Proof of Publication

**12/28/2015** Proof of Publication
Filed by Nikolay Machevsky (Plaintiff)

**11/19/2015** SUMMONS

**11/19/2015** Summons
Filed by Nikolay Machevsky (Plaintiff)

**11/09/2015** Minute order entered: 2015-11-09 00:00:00
Filed by Clerk

**11/09/2015** Minute Order

**11/09/2015** APPLICATION FOR PUBLICATION

**11/09/2015** ORDER FOR PUBLICATION

**11/09/2015** Miscellaneous-Other
Filed by Nikolay Machevsky (Plaintiff)

100

**11/09/2015** Order
Filed by Nikolay Machevsky (Plaintiff)

**10/19/2015** Minute order entered: 2015-10-19 00:00:00
Filed by Clerk

**10/19/2015** Minute Order

**08/31/2015** DECLARATION OF JULIA SKLAR FOR ORDER TO SHOW CAUSE RE: FAILURE TO SERVE DEFENDANT
AND

**08/31/2015** Declaration
Filed by Nikolay Machevsky (Plaintiff)

**08/20/2015** Minute order entered: 2015-08-20 00:00:00
Filed by Clerk

**08/20/2015** Minute Order

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP　07/08/2015

**07/08/2015** Minute order entered: 2015-07-08 00:00:00
Filed by Clerk

**07/08/2015** Minute Order

**07/07/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**07/07/2015** Notice of Case Management Conference
Filed by Clerk

**07/02/2015** CIVIL DEPOSIT

**06/15/2015** Minute order entered: 2015-06-15 00:00:00
Filed by Clerk

**06/15/2015** Minute Order

**05/27/2015** CLERK'S NOTICE OF VOIDING OF FILING

**05/27/2015** Clerk's Notice of Voiding of Filing
Filed by Clerk

**05/19/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**05/19/2015** Notice of Case Management Conference
Filed by Nikolay Machevsky (Plaintiff)

**05/06/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**05/06/2015** Notice of Case Management Conference
Filed by Clerk

**05/05/2015** Order on Court Fee Waiver After Hearing (Superior Court)
Filed by Court

**05/05/2015** ORDER ON COURT FEE WAIVER AFTER HEARING (SUPERIOR COURT)

**04/09/2015** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**04/09/2015** Request to Waive Court Fees
Filed by Nikolay Machevsky (Plaintiff)

**04/09/2015** ORDER ON COURT FEE WAIVER

**03/26/2015** Order on Court Fee Waiver After Hearing (Superior Court)
Filed by Court

**03/26/2015** ORDER ON COURT FEE WAIVER AFTER HEARING (SUPERIOR COURT)

**03/19/2015** NOTICE 0F PENDING ACTION

**03/19/2015** Notice
Filed by Nikolay Machevsky (Plaintiff)

**03/19/2015** NOTICE OF PENDING ACTION

**03/19/2015** Notice
Filed by Nikolay Machevsky (Plaintiff)

**03/11/2015** ORDER ON COURT FEE WAIVER

**03/11/2015** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**03/10/2015** PLAINTIFFS VERIFIED COMPLAINT FOR: 1. FRAUD; ETC

**03/10/2015** Request to Waive Court Fees
Filed by Nikolay Machevsky (Plaintiff)

**03/10/2015** Complaint
Filed by Nikolay Machevsky (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   07/08/2015

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**04/11/2019** at 4:10 PM in Department 55, Malcolm Mackey, Presiding
Court Order

**08/26/2016** at 08:45 AM in Department 14
Default Prove Up Hearing - **Held**

**07/01/2016** at 08:46 AM in Department 14
Non-Appearance Case Review - **Held**

**06/17/2016** at 08:45 AM in Department 14
Non-Appearance Case Review

**06/08/2016** at 08:45 AM in Department 14
(OSC-Failure to File Default Judg; Off Calendar) -

**04/18/2016** at 08:45 AM in Department 14
Unknown Event Type - **Held**

**03/01/2016** at 08:45 AM in Department 14
Case Management Conference - **Held**

**01/06/2016** at 08:45 AM in Department 14
Further Status Conference - **Held**

**11/09/2015** at 08:45 AM in Department 14
Status Conference - **Held**

**10/19/2015** at 08:45 AM in Department 14

Case Management Conference (Conference-Case Management; Matter continued) -

**08/20/2015** at 08:45 AM in Department 14

Case Management Conference (Conference-Case Management; Matter continued) -

**07/08/2015** at 08:45 AM in Department 14

Non-Appearance Case Review - **Held**

**06/15/2015** at 08:45 AM in Department 14

Non-Appearance Case Review - **Held**

**05/05/2015** at 1:30 PM in Department 44

(Hearing-Re:Court Fees; Denied) -

**03/26/2015** at 1:30 PM in Department 44

(Hearing-Re:Court Fees; Denied) -

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings
Held

### Register of Actions (Listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

07/08/2015

**04/11/2019** at 4:10 PM in Department 55, Malcolm Mackey, Presiding

Court Order

**04/11/2019** Minute Order ( (Court Order))

Filed by Clerk

**09/26/2016** Proof of Service (not Summons and Complaint)

Filed by Nikolay Machevsky (Plaintiff)

**09/26/2016** PROOF OF SERVICE OF NOTICE OF ENTRY OF JUDGEMENT

**09/06/2016** NOTICE OF ENTRY OF JUDGMENT OR ORDER

**09/06/2016** Notice of Entry of Judgment

Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** at 08:45 AM in Department 14

Default Prove Up Hearing - **Held**

**08/26/2016** DEFAULT JUDGMENT BY COURT

**08/26/2016** REQUEST FOR DISMISSAL

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** Miscellaneous-Other

Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Declaration

Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment

Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment

Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** Minute order entered: 2016-08-26 00:00:00
Filed by Clerk

**08/26/2016** REQUEST FOR ENTRY OF DEFAULT

**08/26/2016** SUMMARY OF THE CASE

**08/26/2016** Minute Order

**08/26/2016** Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Dismissal
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** Request for Entry of Default / Judgment
Filed by Nikolay Machevsky (Plaintiff)

**08/26/2016** DECLARATION OF NIKOLAY MACHEVSKY

**08/24/2016** Notice Re: Continuance of Hearing and Order
Filed by Nikolay Machevsky (Plaintiff)

**08/24/2016** NOTICE OF CONTINUANCE OF DEFAULT PROVE UP HEARING TO PRESENT LIVE TESTIMONY

**08/16/2016** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**08/16/2016** Notice Re: Continuance of Hearing and Order
Filed by Clerk

**08/16/2016** NOTICE RE: CONTINUANCE OF HEARING

**07/21/2016** Notice Re: Continuance of Hearing and Order
Filed by Nikolay Machevsky (Plaintiff)

**07/21/2016** NOTICE OF CONTINUANCE OF DEFAULT PROVE UP HEARING TO PRESENT LIVE TESTIMONY

**07/05/2016** COURT RULING

**07/05/2016** Order
Filed by Court

**07/01/2016** at 08:46 AM in Department 14
Non-Appearance Case Review - **Held**

**07/01/2016** Minute Order

**07/01/2016** Minute order entered: 2016-07-01 00:00:00
Filed by Clerk

**06/17/2016** at 08:45 AM in Department 14
Non-Appearance Case Review

**06/17/2016** Minute order entered: 2016-06-17 00:00:00
Filed by Clerk

**06/08/2016** at 08:45 AM in Department 14
(OSC-Failure to File Default Judg; Off Calendar) -

**06/08/2016** Minute order entered: 2016-06-08 00:00:00
Filed by Clerk

**06/08/2016** Minute Order

**04/18/2016** at 08:45 AM in Department 14
Unknown Event Type - **Held**

**04/18/2016** Minute order entered: 2016-04-18 00:00:00
Filed by Clerk

**04/18/2016** Minute Order

**03/01/2016** at 08:45 AM in Department 14
Case Management Conference - **Held**

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** Minute Order

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**03/01/2016** Default Entered
Filed by Plaintiff/Petitioner

**03/01/2016** REQUEST FOR ENTRY OF DEFAULT

**03/01/2016** Minute order entered: 2016-03-01 00:00:00
Filed by Clerk

**01/06/2016** at 08:45 AM in Department 14
Further Status Conference - **Held**

**01/06/2016** Minute order entered: 2016-01-06 00:00:00
Filed by Clerk

**01/06/2016** Minute Order

**12/28/2015** Proof of Publication
Filed by Nikolay Machevsky (Plaintiff)

**12/28/2015** Proof of Publication

**11/19/2015** SUMMONS

**11/19/2015** Summons
Filed by Nikolay Machevsky (Plaintiff)

**11/09/2015** at 08:45 AM in Department 14
Status Conference - **Held**

**11/09/2015** Order
Filed by Nikolay Machevsky (Plaintiff)

**11/09/2015** Miscellaneous-Other
Filed by Nikolay Machevsky (Plaintiff)

**11/09/2015** ORDER FOR PUBLICATION

**11/09/2015** APPLICATION FOR PUBLICATION

**11/09/2015** Minute Order

**11/09/2015** Minute order entered: 2015-11-09 00:00:00
Filed by Clerk

**10/19/2015** at 08:45 AM in Department 14

Case Management Conference (Conference-Case Management; Matter continued) -

**10/19/2015** Minute order entered: 2015-10-19 00:00:00

Filed by Clerk

**10/19/2015** Minute Order

**08/31/2015** Declaration

Filed by Nikolay Machevsky (Plaintiff)

**08/31/2015** DECLARATION OF JULIA SKLAR FOR ORDER TO SHOW CAUSE RE: FAILURE TO SERVE DEFENDANT
AND

**08/20/2015** at 08:45 AM in Department 14

Case Management Conference (Conference-Case Management; Matter continued) -

**08/20/2015** Minute order entered: 2015-08-20 00:00:00

Filed by Clerk

**08/20/2015** Minute Order

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   07/08/2015

**07/08/2015** at 08:45 AM in Department 14

Non-Appearance Case Review - **Held**

**07/08/2015** Minute order entered: 2015-07-08 00:00:00

Filed by Clerk

**07/08/2015** Minute Order

**07/07/2015** Notice of Case Management Conference

Filed by Clerk

**07/07/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**07/02/2015** CIVIL DEPOSIT

**06/15/2015** at 08:45 AM in Department 14

Non-Appearance Case Review - **Held**

**06/15/2015** Minute order entered: 2015-06-15 00:00:00

Filed by Clerk

**06/15/2015** Minute Order

**05/27/2015** Clerk's Notice of Voiding of Filing

Filed by Clerk

**05/27/2015** CLERK'S NOTICE OF VOIDING OF FILING

**05/19/2015** Notice of Case Management Conference

Filed by Nikolay Machevsky (Plaintiff)

**05/19/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**05/06/2015** Notice of Case Management Conference

Filed by Clerk

**05/06/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**05/05/2015** at 1:30 PM in Department 44

(Hearing-Re:Court Fees; Denied) -

**05/05/2015** ORDER ON COURT FEE WAIVER AFTER HEARING (SUPERIOR COURT)

**05/05/2015** Order on Court Fee Waiver After Hearing (Superior Court)
Filed by Court

**04/09/2015** Request to Waive Court Fees
Filed by Nikolay Machevsky (Plaintiff)

**04/09/2015** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**04/09/2015** ORDER ON COURT FEE WAIVER

**03/26/2015** at 1:30 PM in Department 44
(Hearing-Re:Court Fees; Denied) -

**03/26/2015** Order on Court Fee Waiver After Hearing (Superior Court)
Filed by Court

**03/26/2015** ORDER ON COURT FEE WAIVER AFTER HEARING (SUPERIOR COURT)

**03/19/2015** NOTICE OF PENDING ACTION

**03/19/2015** NOTICE 0F PENDING ACTION

**03/19/2015** Notice
Filed by Nikolay Machevsky (Plaintiff)

**03/19/2015** Notice
Filed by Nikolay Machevsky (Plaintiff)

**03/11/2015** Order on Court Fee Waiver (Superior Court)
Filed by Clerk

**03/11/2015** ORDER ON COURT FEE WAIVER

**03/10/2015** PLAINTIFFS VERIFIED COMPLAINT FOR: 1. FRAUD; ETC

**03/10/2015** Complaint
Filed by Nikolay Machevsky (Plaintiff)

**03/10/2015** Request to Waive Court Fees
Filed by Nikolay Machevsky (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   07/08/2015

# Exhibit "H"

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** BC586794

BEHZAD DANIEL BINAFARD VS IZABELLA KLEEMOFF ET AL

**Filing Courthouse:** Stanley Mosk Courthouse

**Filing Date:** 07/01/2015
**Case Type:** Other Real Property (not eminent domain, landlord/tenant, foreclosure) (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

Unknown Cross Reference: BC574900 on 04/11/2019

Unknown Cross Reference: BC574900 on 04/11/2019

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**03/30/2021** at 08:30 AM in Department 55 at 111 North Hill Street, Los Angeles, CA 90012
Status Conference Re: Bankruptcy

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

BINAFARD B. DANIEL - Plaintiff/Petitioner's AKA

BINAFARD BEHZAD DANIEL - Cross-Defendant

BINAFARD BEHZAD DANIEL AKA B. DANIEL BINAFARD - Plaintiff

KLEEMOFF FAMILY TRUST - Defendant

KLEEMOFF IZABELLA - Defendant

KLEEMOFF IZABELLA - Defendant

KLEEMOFF IZABELLA AND MICHAEL TRUSTEES - Defendant

KLEEMOFF LIVING TRUST - Defendant/Respondent's AKA

KLEEMOFF MICHAEL - Defendant

KLEEMOFF MICHAEL - Defendant

MACHEVSKY NIKOLAY - Cross-Complainant

MACHEVSKY NIKOLAY - Defendant

MACHEVSKY NIKOLAY - Plaintiff

ZAKARIAIE JACK M. ESQ. - Attorney for Plaintiff

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings
Held

### Documents Filed (Filing dates listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

01/04/2019   09/07/2016   07/01/2015

**09/29/2020** Notice (of Court Orders)
Filed by Behzad Daniel Binafard (Plaintiff)

**09/29/2020** Minute Order ( (Non-Appearance Case Review Re: Bankruptcy; Non-Jury Trial Qui...))
Filed by Clerk

**02/18/2020** Notice (of Court Orders)
Filed by Behzad Daniel Binafard (Plaintiff)

**01/29/2020** Minute Order ( (Non-Appearance Case Review Re: Bankruptcy; Non-Jury Trial Qui...))
Filed by Clerk

**01/10/2020** Brief (Plaintiff's Report Regarding Status of Bankruptcy and Response to OSC)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/20/2019** Notice (of Court Orders)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/06/2019** Certificate of Mailing for ((Final Status Conference) of 12/06/2019)
Filed by Clerk

**12/06/2019** Minute Order ( (Final Status Conference))
Filed by Clerk

**10/30/2019** Proof of Service by Mail
Filed by Nikolay Machevsky (Cross-Complainant)

**10/25/2019** Proof of Service - Order Granting Attorney's Motion to be Relieved as Counsel
Filed by Julia Sklar, Esq. (Attorney)

**10/25/2019** Minute Order ( (Hearing on Motion to be Relieved as Counsel))
Filed by Clerk

**10/25/2019** Order Granting Attorney's Motion to Be Relieved as Counsel-Civil (RE Julia Sklar)
Filed by Julia Sklar, Esq. (Attorney)

**10/04/2019** Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil
Filed by Julia Sklar, Esq. (Attorney)

**09/27/2019** Motion to Be Relieved as Counsel
Filed by Nikolay Machevsky (Cross-Complainant)

**08/02/2019** Notice of Stay of Proceedings (Bankruptcy)
Filed by Behzad Daniel Binafard (Plaintiff)

**05/14/2019** Notice (of Unavailability)
Filed by Behzad Daniel Binafard (Plaintiff)

**05/02/2019** Answer (ANSWER TO CROSS-COMPLAINT)
Filed by Behzad Daniel Binafard (Cross-Defendant)

**04/11/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike))
Filed by Clerk

110

**04/04/2019** Reply (to Opposition to Demurrer to Cross Complaint)
Filed by Behzad Daniel Binafard (Cross-Defendant)

**03/25/2019** Request for Judicial Notice
Filed by Nikolay Machevsky (Cross-Complainant)

**03/25/2019** Opposition (to demurrer to cross-complaint)
Filed by Nikolay Machevsky (Cross-Complainant)

**02/20/2019** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**02/19/2019** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**02/19/2019** Demurrer - without Motion to Strike
Filed by Behzad Daniel Binafard (Plaintiff)

**01/23/2019** Cross-Complaint (Verified Cross-Complaint of Defendant Nikolay Machevsky)
Filed by Nikolay Machevsky (Cross-Complainant)

**01/09/2019** Notice of Ruling
Filed by Nikolay Machevsky (Defendant)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   01/04/2019   09/07/2016   07/01/2015

**01/04/2019** Minute Order ((Hearing on Motion for Leave to File a Cross-Complaint))
Filed by Clerk

**12/26/2018** Reply (to opposition of plaintiff to motion for leave to file cross complaint; Momorandum of points and authorities
in support thereof; supplemental declaration of Julia Sklar)
Filed by Nikolay Machevsky (Defendant)

**12/20/2018** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**12/20/2018** Opposition (Opp to Motion for Leave to File Cross-complaint)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/13/2018** Notice (of Unavailability)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/04/2018** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff)

**12/03/2018** Notice of Motion and Motion for Leave to File Cross-Complaint; Memorandum of Points and Authorities in
Support Thereof; Declaration of Julia Sklar
Filed by Nikolay Machevsky (Defendant)

**12/03/2018** Minute Order ((Hearing on Motion to Expunge Lis Pendens))
Filed by Clerk

**11/26/2018** Reply (to Response to Motion to Expunge Lis Pendens)
Filed by Nikolay Machevsky (Defendant)

**11/19/2018** Declaration of Julia Sklar; Amended Proof of Service
Filed by Nikolay Machevsky (Defendant)

**11/16/2018** Plaintiff's Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**11/16/2018** Response (to Motion to Expunge Lis Pendens)
Filed by Behzad Daniel Binafard (Plaintiff)

**11/06/2018** Motion to Expunge Lis Pendens
Filed by Nikolay Machevsky (Defendant)

**11/06/2018** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**10/30/2018** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff)

**10/29/2018** Declaration (of Nikolay Machevsky)
Filed by Nikolay Machevsky (Defendant)

**10/29/2018** Declaration (of Julia Sklar)
Filed by Nikolay Machevsky (Defendant)

**10/29/2018** Ex Parte Application (to Expunge Lis Pendens)
Filed by Nikolay Machevsky (Defendant)

**10/29/2018** Opposition (to Ex Parte Application to Expunge Lis Pendens)
Filed by Behzad Daniel Binafard (Plaintiff)

**10/29/2018** Minute Order ((Ex-Parte Proceedings-for Order to Expunge Lis Pendens))
Filed by Clerk

**07/27/2018** SUBSTITUTION OF ATTORNEY

**07/27/2018** Substitution of Attorney
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**11/04/2016** Minute Order

**11/01/2016** DEFENDANT NIKOLAY MACHEVSKY'S OBJECTION TO TO AMENDED JUDGMENT PROPOSED BY
PLAINTIFF BENZAD BINAFARD

**11/01/2016** DEFENDANT NIKOLAY MACHEVSKY'S REQUEST FOR JUDICIAL NOTICE

**11/01/2016** NOTICE OF RULING

**11/01/2016** Objection Document
Filed by Nikolay Machevsky (Defendant)

**11/01/2016** Notice of Ruling
Filed by Nikolay Machevsky (Defendant)

**11/01/2016** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**10/31/2016** ORDER ON EX PARTE APPLICATION FOR MOTION TO AMEND JUDGMENT

**10/31/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**10/31/2016** DECLARATION OF GLENN M. HAYDEN RE EX PARTE NOTICE

**10/31/2016** NOTICE OF MOTION AND MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER
CCP SECTION 473(D) AND CARRY OUT TERMS OF AMENDED JUDGMENT DATED SEPTEMBER 12, 2016;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GLENN M. HAYDEN; [PROPOSED] ORDER

**10/31/2016** Minute Order

**10/31/2016** AMENDED JUDGMENT

**10/31/2016** NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR MOTION TO AMEND
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GLENN M. HAYDEN; AND
[PROPOSED] ORDER

**10/31/2016** Default Judgment (Amended/Corrected)
Filed by Behzad Daniel Binafard (Plaintiff)

**10/31/2016** Order
Filed by Plaintiff/Petitioner

**10/31/2016** Order
Filed by Plaintiff/Petitioner

**10/31/2016** Declaration
Filed by Plaintiff/Petitioner

**10/31/2016** Motion
Filed by Plaintiff/Petitioner

**10/31/2016** Declaration
Filed by Plaintiff/Petitioner

**10/31/2016** Ex-Parte Application
Filed by Plaintiff/Petitioner

**10/24/2016** DEFENDANT NIKOLAY MACHE VSKY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE
DEFAULT AND DEFAULT JUDGMENT; MEMORANDUM OF POINTS ANE AUTHORITIES

**10/24/2016** DEFENDANT NIKOLAY MACHE VSKY'S REQUEST FOR JUDICIAL NOTICE

**10/24/2016** Reply/Response
Filed by Nikolay Machevsky (Defendant)

**10/24/2016** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**10/18/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**10/18/2016** OPPOSITION TO MOTION OF DEFENDANT NIKOLAY MACHEVSKY TO VACATE DEFAULT AND DEFAULT
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF GLENN M. HAYDEN

**10/18/2016** Opposition Document
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/18/2016** Declaration
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/29/2016** PROOF OF SERVICE BY MAIL OF AMENDED JUDGMENT

**09/29/2016** Proof of Service (not Summons and Complaint)
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/12/2016** ORDER GRANTING MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER CCP
473(D)

**09/12/2016** Minute Order

**09/12/2016** AMENDED JUDGMENT

**09/12/2016** Amended/Corrected Judgment
Filed by Plaintiff/Petitioner

**09/12/2016** Order
Filed by Plaintiff/Petitioner

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   01/04/2019   09/07/2016   07/01/2015

**09/07/2016** ANSWER OF DEFENDANT NIKOLAY MACHEVSKY TO COMPLAINT

**09/07/2016** NOTICE OF MOTION AND MOTION OF DEFENDANT NIKOLAY MACHEVSKY TO VACATE DEFAULT AND
ETC.

**09/07/2016** Notice of Motion
Filed by Nikolay Machevsky (Defendant)

**09/07/2016** Answer
Filed by Nikolay Machevsky (Defendant)

**09/02/2016** SUPPLEMENT TO MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER CCP
473(D); ETC.

**09/02/2016** DECLARATION OF MARK J. ROSENBAUM, ATTORNEY FOR CROWN TOWERS HOMEOWNERS'
ASSOCIATION AND EXHIBITS RE: RELEASES OF LIEN AND WITHDRAWALS OF LIS PENDENS AGAINST THE
SUBJECT PROPERTY, ASSOCIATION FEES, COSTS AND ATTORNEY FEES

**09/02/2016** Declaration
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/02/2016** Supplement
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/10/2016** PROOF OF SERVICE OF JUDGMENT

**08/10/2016** NOTICE OF MOTION AND MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER
CCP SECTION 473(D); ETC

**08/10/2016** Proof of Service (not Summons and Complaint)
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/10/2016** Notice of Motion
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/08/2016** Minute Order

**08/08/2016** JUDGMENT

**08/08/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**08/08/2016** MEMO COSTS SUMMARY

**08/08/2016** TRIAL BRIEF FOR DEFAULT PROVE-UP JUDGMENT; [PROPOSED] ORDER

**08/08/2016** Declaration
Filed by Plaintiff/Petitioner

**08/08/2016** Memo of Costs
Filed by Plaintiff/Petitioner

**08/08/2016** Brief
Filed by Plaintiff/Petitioner

**08/08/2016** Judgment
Filed by Plaintiff/Petitioner

**07/13/2016** Minute Order

**06/20/2016** REQUEST FOR ENTRY OF DEFAULT

**06/20/2016** Default Entered
Filed by Plaintiff/Petitioner

**06/15/2016** NOTICE OF CASE MANAGEMENT CONFERENCE

**06/15/2016** Notice of Case Management Conference
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**05/31/2016** Minute Order

**05/24/2016** PROOF OF SERVICE SUMMONS

114

**05/24/2016** Proof-Service/Summons
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**05/20/2016** Notice of Case Management Conference
Filed by Clerk

**05/20/2016** NOTICE OF CASE MANAGEMENT CONFERENCE

**03/28/2016** Minute Order

**01/26/2016** Minute Order

**01/14/2016** Default Entered
Filed by Plaintiff/Petitioner

**01/14/2016** REQUEST FOR ENTRY OF DEFAULT

**12/28/2015** Proof of Publication
Filed by Nikolay Machevsky (Plaintiff)

**11/13/2015** Default Entered
Filed by Plaintiff/Petitioner

**11/13/2015** REQUEST FOR ENTRY OF DEFAULT

**10/29/2015** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/29/2015** NOTICE OF RULING

**10/28/2015** Minute Order

**10/01/2015** CASE MANAGEMENT STATEMENT

**10/01/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**10/01/2015** Notice of Case Management Conference
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/01/2015** Case Management Statement
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** Proof-Service/Summons
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**07/15/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**07/15/2015** Notice of Case Management Conference
Filed by Clerk

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   01/04/2019   09/07/2016   07/01/2015

**07/01/2015** SUMMONS

**07/01/2015** COMPLAINT FOR SPECIFIC PERFORMANCE OF CONTRACT AND FOR DECLARATORY RELIEF

**07/01/2015** Complaint
Filed by Behzad Daniel Binafard (Plaintiff)

**03/10/2015** Complaint
Filed by Nikolay Machevsky (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   01/04/2019   09/07/2016   07/01/2015

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

03/28/2016

**09/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Non-Jury Trial (Quiet Title) - **Not Held - Advanced and Vacated**

**09/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Non-Appearance Case Review (ReBankruptcy) - **Held**

**01/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Non-Appearance Case Review (ReBankruptcy) - **Held - Continued**

**01/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Non-Jury Trial (Quiet Title) - **Held - Continued**

**12/16/2019** at 09:00 AM in Department 55, Malcolm Mackey, Presiding
Non-Jury Trial (Quiet Title) - **Not Held - Advanced and Continued - by Court**

**12/06/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Final Status Conference - **Held - Continued**

**10/25/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication

**10/25/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion to be Relieved as Counsel - **Held - Motion Granted**

**07/29/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**05/02/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**04/15/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**04/11/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Demurrer - without Motion to Strike - **Held**

**03/15/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**01/04/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Leave to File a Cross-Complaint - **Held - Motion Granted**

**12/03/2018** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion to Expunge Lis Pendens - **Held - Motion Denied**

**10/29/2018** at 3:06 PM in Department 55, Malcolm Mackey, Presiding
Ex-Parte Proceedings

**11/04/2016** at 12:00 PM in Department 55
Non-Appearance Case Review (Non-Appearance (Case Review; Court makes order) -

116

**10/31/2016** at 08:30 AM in Department 55

Hearing on Motion to Vacate ((Court makes order)) -

**09/12/2016** at 08:30 AM in Department 55

Unknown Event Type - **Held - Motion Granted**

**08/08/2016** at 09:00 AM in Department 55

Default Prove Up Hearing (Civil Default Prove Up Hearing; Finding in favor of Plaintiff) -

**07/13/2016** at 08:30 AM in Department 55

Case Management Conference (Conference-Case Management; Court makes order) -

**05/31/2016** at 08:30 AM in Department 55

(OSC-Failure to File Default Judg; Matter continued) -

**04/28/2016** at 08:30 AM in Department 55

Order to Show Cause Re: Failure to File Proof of Service

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   03/28/2016

**03/28/2016** at 08:30 AM in Department 55

Order to Show Cause Re: Failure to File Proof of Service - **Held - Continued**

**01/26/2016** at 08:30 AM in Department 55

Case Management Conference (Conference-Case Management; Matter continued) -

**10/28/2015** at 08:30 AM in Department 55

Case Management Conference (Conference-Case Management; Matter continued) -

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   03/28/2016


# REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings
Held

## Register of Actions (Listed in descending order)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
02/20/2019   10/24/2016   10/29/2015

**09/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding

Non-Appearance Case Review (ReBankruptcy) - **Held**

**09/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding

Non-Jury Trial (Quiet Title) - **Not Held - Advanced and Vacated**

**09/29/2020** Notice (of Court Orders)

Filed by Behzad Daniel Binafard (Plaintiff)

**09/29/2020** Minute Order ( (Non-Appearance Case Review Re: Bankruptcy; Non-Jury Trial Qui...))

Filed by Clerk

**02/18/2020** Notice (of Court Orders)

Filed by Behzad Daniel Binafard (Plaintiff)

**01/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding

Non-Appearance Case Review (ReBankruptcy) - **Held - Continued**

**01/29/2020** at 08:30 AM in Department 55, Malcolm Mackey, Presiding

Non-Jury Trial (Quiet Title) - **Held - Continued**

**01/29/2020** Minute Order ( (Non-Appearance Case Review Re: Bankruptcy Non-Jury Trial Qui...))
Filed by Clerk

**01/10/2020** Brief (Plaintiff's Report Regarding Status of Bankruptcy and Response to OSC)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/20/2019** Notice (of Court Orders)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/16/2019** at 09:00 AM in Department 55, Malcolm Mackey, Presiding
Non-Jury Trial (Quiet Title) - **Not Held - Advanced and Continued - by Court**

**12/06/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Final Status Conference - **Held - Continued**

**12/06/2019** Certificate of Mailing for ((Final Status Conference) of 12/06/2019)
Filed by Clerk

**12/06/2019** Minute Order ( (Final Status Conference))
Filed by Clerk

**10/30/2019** Proof of Service by Mail
Filed by Nikolay Machevsky (Cross-Complainant)

**10/25/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication

**10/25/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion to be Relieved as Counsel - **Held - Motion Granted**

**10/25/2019** Minute Order ( (Hearing on Motion to be Relieved as Counsel))
Filed by Clerk

**10/25/2019** Proof of Service - Order Granting Attorney's Motion to be Relieved as Counsel
Filed by Julia Sklar, Esq. (Attorney)

**10/25/2019** Order Granting Attorney's Motion to Be Relieved as Counsel-Civil (RE Julia Sklar)
Filed by Julia Sklar, Esq. (Attorney)

**10/04/2019** Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil
Filed by Julia Sklar, Esq. (Attorney)

**09/27/2019** Motion to Be Relieved as Counsel
Filed by Nikolay Machevsky (Cross-Complainant)

**08/02/2019** Notice of Stay of Proceedings (Bankruptcy)
Filed by Behzad Daniel Binafard (Plaintiff)

**07/29/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**05/14/2019** Notice (of Unavailability)
Filed by Behzad Daniel Binafard (Plaintiff)

**05/02/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**05/02/2019** Answer (ANSWER TO CROSS-COMPLAINT)
Filed by Behzad Daniel Binafard (Cross-Defendant)

**04/15/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

**04/11/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Demurrer - without Motion to Strike - **Held**

**04/11/2019** Minute Order ( (Hearing on Demurrer - without Motion to Strike))
Filed by Clerk

**04/04/2019** Reply (to Opposition to Demurrer to Cross Complaint)
Filed by Behzad Daniel Binafard (Cross-Defendant)

**03/25/2019** Request for Judicial Notice
Filed by Nikolay Machevsky (Cross-Complainant)

**03/25/2019** Opposition (to demurrer to cross-complaint)
Filed by Nikolay Machevsky (Cross-Complainant)

**03/15/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Summary Adjudication - **Not Held - Rescheduled by Party**

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/20/2019   10/24/2016   10/29/2015

**02/20/2019** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**02/19/2019** Demurrer - without Motion to Strike
Filed by Behzad Daniel Binafard (Plaintiff)

**02/19/2019** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**01/23/2019** Cross-Complaint (Verified Cross-Complaint of Defendant Nikolay Machevsky)
Filed by Nikolay Machevsky (Cross-Complainant)

**01/09/2019** Notice of Ruling
Filed by Nikolay Machevsky (Defendant)

**01/04/2019** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion for Leave to File a Cross-Complaint - **Held - Motion Granted**

**01/04/2019** Minute Order ((Hearing on Motion for Leave to File a Cross-Complaint))
Filed by Clerk

**12/26/2018** Reply (to opposition of plaintiff to motion for leave to file cross complaint; Momorandum of points and authorities
in support thereof; supplemental declaration of Julia Sklar)
Filed by Nikolay Machevsky (Defendant)

**12/20/2018** Opposition (Opp to Motion for Leave to File Cross-complaint)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/20/2018** Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**12/13/2018** Notice (of Unavailability)
Filed by Behzad Daniel Binafard (Plaintiff)

**12/04/2018** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff)

**12/03/2018** at 08:30 AM in Department 55, Malcolm Mackey, Presiding
Hearing on Motion to Expunge Lis Pendens - **Held - Motion Denied**

**12/03/2018** Notice of Motion and Motion for Leave to File Cross-Complaint; Memorandum of Points and Authorities in
Support Thereof; Declaration of Julia Sklar
Filed by Nikolay Machevsky (Defendant)

**12/03/2018** Minute Order ((Hearing on Motion to Expunge Lis Pendens))
Filed by Clerk

**11/26/2018** Reply (to Response to Motion to Expunge Lis Pendens)
Filed by Nikolay Machevsky (Defendant)

**11/19/2018** Declaration of Julia Sklar; Amended Proof of Service
Filed by Nikolay Machevsky (Defendant)

**11/16/2018** Response (to Motion to Expunge Lis Pendens)
Filed by Behzad Daniel Binafard (Plaintiff)

**11/16/2018** Plaintiff's Request for Judicial Notice
Filed by Behzad Daniel Binafard (Plaintiff)

**11/06/2018** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**11/06/2018** Motion to Expunge Lis Pendens
Filed by Nikolay Machevsky (Defendant)

**10/30/2018** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff)

**10/29/2018** at 3:06 PM in Department 55, Malcolm Mackey, Presiding
Ex-Parte Proceedings

**10/29/2018** Minute Order ((Ex-Parte Proceedings-for Order to Expunge Lis Pendens))
Filed by Clerk

**10/29/2018** Opposition (to Ex Parte Application to Expunge Lis Pendens)
Filed by Behzad Daniel Binafard (Plaintiff)

**10/29/2018** Declaration (of Julia Sklar)
Filed by Nikolay Machevsky (Defendant)

**10/29/2018** Declaration (of Nikolay Machevsky)
Filed by Nikolay Machevsky (Defendant)

**10/29/2018** Ex Parte Application (to Expunge Lis Pendens)
Filed by Nikolay Machevsky (Defendant)

**07/27/2018** Substitution of Attorney
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**07/27/2018** SUBSTITUTION OF ATTORNEY

**11/04/2016** at 12:00 PM in Department 55
Non-Appearance Case Review (Non-Appearance (Case Review); Court makes order) -

**11/04/2016** Minute Order

**11/01/2016** DEFENDANT NIKOLAY MACHEVSKY'S OBJECTION TO TO AMENDED JUDGMENT PROPOSED BY
PLAINTIFF BENZAD BINAFARD

**11/01/2016** DEFENDANT NIKOLAY MACHEVSKY'S REQUEST FOR JUDICIAL NOTICE

**11/01/2016** NOTICE OF RULING

**11/01/2016** Objection Document
Filed by Nikolay Machevsky (Defendant)

**11/01/2016** Notice of Ruling
Filed by Nikolay Machevsky (Defendant)

**11/01/2016** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**10/31/2016** at 08:30 AM in Department 55
Hearing on Motion to Vacate ((Court makes order)) -

**10/31/2016** NOTICE OF MOTION AND MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER
CCP SECTION 473(D) AND CARRY OUT TERMS OF AMENDED JUDGMENT DATED SEPTEMBER 12, 2016;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GLENN M. HAYDEN; [PROPOSED] ORDER

**10/31/2016** Minute Order

**10/31/2016** AMENDED JUDGMENT

**10/31/2016** NOTICE OF EX PARTE APPLICATION AND EX PARTE APPLICATION FOR MOTION TO AMEND
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GLENN M. HAYDEN; AND
[PROPOSED] ORDER

**10/31/2016** Default Judgment (Amended/Corrected)
Filed by Behzad Daniel Binafard (Plaintiff)

**10/31/2016** Order
Filed by Plaintiff/Petitioner

**10/31/2016** Order
Filed by Plaintiff/Petitioner

**10/31/2016** Declaration
Filed by Plaintiff/Petitioner

**10/31/2016** Motion
Filed by Plaintiff/Petitioner

**10/31/2016** Declaration
Filed by Plaintiff/Petitioner

**10/31/2016** Ex-Parte Application
Filed by Plaintiff/Petitioner

**10/31/2016** ORDER ON EX PARTE APPLICATION FOR MOTION TO AMEND JUDGMENT

**10/31/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**10/31/2016** DECLARATION OF GLENN M. HAYDEN RE EX PARTE NOTICE

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   02/20/2019   10/24/2016   10/29/2015

**10/24/2016** DEFENDANT NIKOLAY MACHE VSKY'S REQUEST FOR JUDICIAL NOTICE

**10/24/2016** Request for Judicial Notice
Filed by Nikolay Machevsky (Defendant)

**10/24/2016** DEFENDANT NIKOLAY MACHE VSKY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE
DEFAULT AND DEFAULT JUDGMENT; MEMORANDUM OF POINTS ANE AUTHORITIES

**10/24/2016** Reply/Response
Filed by Nikolay Machevsky (Defendant)

**10/18/2016** Opposition Document
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/18/2016** Declaration
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/18/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**10/18/2016** OPPOSITION TO MOTION OF DEFENDANT NIKOLAY MACHEVSKY TO VACATE DEFAULT AND DEFAULT
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF GLENN M. HAYDEN

**09/29/2016** Proof of Service (not Summons and Complaint)
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/29/2016** PROOF OF SERVICE BY MAIL OF AMENDED JUDGMENT

**09/12/2016** at 08:30 AM in Department 55
Unknown Event Type - **Held - Motion Granted**

**09/12/2016** Minute Order

**09/12/2016** Order
Filed by Plaintiff/Petitioner

**09/12/2016** ORDER GRANTING MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER CCP
473(D)

**09/12/2016** AMENDED JUDGMENT

**09/12/2016** Amended/Corrected Judgment
Filed by Plaintiff/Petitioner

**09/07/2016** ANSWER OF DEFENDANT NIKOLAY MACHEVSKY TO COMPLAINT

**09/07/2016** Answer
Filed by Nikolay Machevsky (Defendant)

**09/07/2016** Notice of Motion
Filed by Nikolay Machevsky (Defendant)

**09/07/2016** NOTICE OF MOTION AND MOTION OF DEFENDANT NIKOLAY MACHEVSKY TO VACATE DEFAULT AND
ETC.

**09/02/2016** Supplement
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/02/2016** SUPPLEMENT TO MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER CCP
473(D); ETC.

**09/02/2016** DECLARATION OF MARK J. ROSENBAUM, ATTORNEY FOR CROWN TOWERS HOMEOWNERS'
ASSOCIATION AND EXHIBITS RE: RELEASES OF LIEN AND WITHDRAWALS OF LIS PENDENS AGAINST THE
SUBJECT PROPERTY, ASSOCIATION FEES, COSTS AND ATTORNEY FEES

**09/02/2016** Declaration
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/10/2016** Notice of Motion
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/10/2016** Proof of Service (not Summons and Complaint)
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**08/10/2016** NOTICE OF MOTION AND MOTION TO AMEND JUDGMENT TO CORRECT CLERICAL MISTAKE UNDER
CCP SECTION 473(D); ETC

**08/10/2016** PROOF OF SERVICE OF JUDGMENT

**08/08/2016** at 09:00 AM in Department 55
Default Prove Up Hearing (Civil Default Prove Up Hearing; Finding in favor of Plaintiff) -

**08/08/2016** JUDGMENT

**08/08/2016** Minute Order

**08/08/2016** Memo of Costs
Filed by Plaintiff/Petitioner

**08/08/2016** TRIAL BRIEF FOR DEFAULT PROVE-UP JUDGMENT; [PROPOSED] ORDER

**08/08/2016** Brief
Filed by Plaintiff/Petitioner

**08/08/2016** Judgment
Filed by Plaintiff/Petitioner

**08/08/2016** MEMO COSTS SUMMARY

**08/08/2016** Declaration
Filed by Plaintiff/Petitioner

**08/08/2016** DECLARATION OF GLENN M. HAYDEN RE: ATTORNEY FEES

**07/13/2016** at 08:30 AM in Department 55
Case Management Conference (Conference-Case Management; Court makes order) -

**07/13/2016** Minute Order

**06/20/2016** REQUEST FOR ENTRY OF DEFAULT

**06/20/2016** Default Entered
Filed by Plaintiff/Petitioner

**06/15/2016** NOTICE OF CASE MANAGEMENT CONFERENCE

**06/15/2016** Notice of Case Management Conference
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**05/31/2016** at 08:30 AM in Department 55
(OSC-Failure to File Default Judg; Matter continued) -

**05/31/2016** Minute Order

**05/24/2016** PROOF OF SERVICE SUMMONS

**05/24/2016** Proof-Service/Summons
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**05/20/2016** NOTICE OF CASE MANAGEMENT CONFERENCE

**05/20/2016** Notice of Case Management Conference
Filed by Clerk

**04/28/2016** at 08:30 AM in Department 55
Order to Show Cause Re: Failure to File Proof of Service

**03/28/2016** at 08:30 AM in Department 55
Order to Show Cause Re: Failure to File Proof of Service - **Held - Continued**

**03/28/2016** Minute Order

**01/26/2016** at 08:30 AM in Department 55
Case Management Conference (Conference-Case Management; Matter continued) -

**01/26/2016** Minute Order

**01/14/2016** Default Entered
Filed by Plaintiff/Petitioner

**01/14/2016** REQUEST FOR ENTRY OF DEFAULT

**12/28/2015** Proof of Publication
Filed by Nikolay Machevsky (Plaintiff)

**11/13/2015** REQUEST FOR ENTRY OF DEFAULT

**11/13/2015** Default Entered
Filed by Plaintiff/Petitioner

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:

TOP   02/20/2019   10/24/2016   10/29/2015

**10/29/2015** NOTICE OF RULING

**10/29/2015** Notice of Ruling
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/28/2015** at 08:30 AM in Department 55
Case Management Conference (Conference-Case Management; Matter continued) -

**10/28/2015** Minute Order

**10/01/2015** Case Management Statement
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**10/01/2015** CASE MANAGEMENT STATEMENT

**10/01/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**10/01/2015** Notice of Case Management Conference
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**09/28/2015** Proof-Service/Summons
Filed by Behzad Daniel Binafard (Plaintiff); B. Daniel Binafard (Legacy Party)

**09/28/2015** PROOF OF SERVICE (SUMMONS)

**07/15/2015** Notice of Case Management Conference
Filed by Clerk

**07/15/2015** NOTICE OF CASE MANAGEMENT CONFERENCE

**07/01/2015** SUMMONS

**07/01/2015** Complaint
Filed by Behzad Daniel Binafard (Plaintiff)

**07/01/2015** COMPLAINT FOR SPECIFIC PERFORMANCE OF CONTRACT AND FOR DECLARATORY RELIEF

**03/10/2015** Complaint
Filed by Nikolay Machevsky (Plaintiff)

Click on any of the below link(s) to see Register of Action Items on or before the date indicated:
TOP   02/20/2019   10/24/2016   10/29/2015

# Exhibit "I"

1 | NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
ANTHONY N.R. ZAMORA (State Bar No. 146619)
2 | ZAMORA & HOFFMEIER, A Professional Corporation
U.S. Bank Tower
3 | 633 West 5th Street, Suite 2600
Los Angeles, California   90071
4 | (213) 488-9411   FAX:  (213) 488-9418
e-mail: zamora3@aol.com
5 |
Attorneys for Wesley H. Avery,
6 | Chapter 7 Trustee

7 |                  UNITED STATES BANKRUPTCY COURT

8 |                  CENTRAL DISTRICT OF CALIFORNIA

9 |                     LOS ANGELES DIVISION

10 | In re                              )  Case No. 1:14-bk-29611-RK
                                       )
11 | NIKOLAY MACHEVSKY,                 )  Chapter 7
                                       )
12 |                 Debtor.            )  NOTICE OF MOTION FOR
                                       )  ORDER:(1) APPROVING
13 |                                    )  COMPROMISE;(2) AUTHORIZING
                                       )  TRUSTEE TO TRANSFER REAL
14 |                                    )  PROPERTY FREE AND CLEAR OF
                                       )  LIENS AND INTERESTS;(3)
15 |                                    )  REQUIRING DEBTOR TO TURN
                                       )  OVER REAL PROPERTY OF THE
16 |                                    )  ESTATE; AND(4) AUTHORIZING
                                       )  TRUSTEE TO UTILIZE U.S.
17 |                                    )  MARSHAL AND OTHER LAW
                                       )  ENFORCEMENT
18 |                                    )
                                       )  [FILED CONCURRENTLY WITH
19 |                                    )  MOTION FOR ORDER:(1)
                                       )  APPROVING COMPROMISE;(2)
20 |                                    )  AUTHORIZING TRUSTEE TO
                                       )  TRANSFER REAL PROPERTY
21 |                                    )  FREE AND CLEAR OF LIENS
                                       )  AND INTERESTS;
22 |                                    )  (3)REQUIRING DEBTOR TO
                                       )  TURN OVER REAL PROPERTY OF
23 |                                    )  THE ESTATE; AND(4)
                                       )  AUTHORIZING TRUSTEE TO
24 |                                    )  UTILIZE U.S. MARSHAL AND
                                       )  OTHER LAW ENFORCEMENT;
25 |                                    )  MEMORANDUM OF POINTS AND
                                       )  AUTHORITIES; DECLARATION
26 |                                    )  IN SUPPORT]
                                       )
27 | _____ )  [No hearing required]

28 |

126

Settlement and Sale Motion/Notice.001

TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE,
DEBTOR, THE UNITED STATES TRUSTEE, ALL CREDITORS AND OTHER PARTIES
IN INTEREST:

PLEASE TAKE NOTICE that Wesley H. Avery, Chapter 7 Trustee
("Trustee") of the bankruptcy estate (the "Estate") in the above-
captioned chapter 7 bankruptcy case (the "Case") of debtor Nikolay
Machevsky ("Debtor") is filing a motion (the "Motion") for entry of
an order (the "Order") by the Court:

1.    approving a compromise (the "Compromise"), pursuant to
Federal Rule of Bankruptcy Procedure 9019 ("FRBP 9019"), between
Trustee and plaintiff Behzad Daniel Binafard aka Daniel Binafard
("Binafard") regarding the State Court Action (defined below) and
the Real Property (defined below) that provides, among other
things, for Trustee to transfer the Real Property to Binafard (or
his designee) and, in exchange, for Binafard to tender the Sales
Price (defined below) and dismiss the State Court Action;

2.    authorizing Trustee to sell and transfer to Binafard (or
his designee) that certain real property consisting of those
certain residential condominiums commonly known as 10701 Wilshire
Boulevard, #1802, Los Angeles, California 90024 and 10701 Wilshire
Boulevard, #1803, Los Angeles, California 90024 and identified as
Los Angeles County Assessor's Parcel Nos. 4360-011-129 and 4360-
011-130 (the "Real Property"), free and clear of any interests and
liens pursuant to 11 U.S.C. §§363(b), (f) and (m), and on an "AS-
IS, WHERE-IS" basis in exchange for (a) Binafard's tender of the
sales price of $880,000.00 (the "Sales Price") through escrow for
sale of the Real Property (the "Sale Escrow") pending with Better
Escrow Service ("BES") and on the other terms and conditions set

2.

127

Settlement and Sale Motion/Notice.001

forth in that certain Purchase and Sale Agreement and Settlement
Agreement (Residential Property) dated as of July 9, 2020 (the
"Agreement") and (b) Binafard's dismissal, with prejudice, of that
specific performance and quiet title action captioned *Binafard v.
Machevsky, et al.* and assigned Los Angeles County Superior Court
Case No. BC586794 (the "Binafard Case") that has been consolidated
with the action captioned *Machevsky v. Kleemoff, et al.* and
assigned Los Angeles County Superior Court Case No. BC574900 (the
"Machevsky Case") with the Binafard Case as the lead case
(collectively, the "State Court Action"); and

  3. requiring Debtor to (a) vacate and turn over the Real
Property to Trustee prior to close of the Sale Escrow that is to
occur on the first business day that is at least five (5) business
days after Trustee provides written notice to Binafard and
Binafard's counsel that any and all occupants of the Real Property
have been removed from and/or otherwise vacated the Real Property
(but in no event sooner that fifteen (15) days after entry of the
Order), and requiring Debtor to remove all personal property of
Debtor from the Real Property.

  A true and correct copy of the Agreement is attached as
Exhibit A to the Declaration of Wesley H. Avery (the "Declaration")
attached to the Motion and incorporated therein by reference.

## I. SUMMARY OF COMPROMISE

  Generally, the Agreement provides for:

  1. Binafard to tender the Sales Price of $880,000.00 through
    the Sale Escrow;

  2. Binafard to dismiss, with prejudice, the State Court
    Action;

3.

3.     Trustee to sell and transfer the Real Property to Binafard (or his designee), free and clear of all liens and interests; and

4.     Trustee to deliver the Real Property vacant to Binafard.

By the Motion, Trustee also moves for approval and authorization to execute the Agreement and any and all other documents necessary to implement the provisions of the Agreement, including sale and transfer of the Real Property to Binafard (or his designee).

## II. UNDISPUTED LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW

Trustee moves for approval and authorization to execute any and all documents necessary to sell and transfer the Real Property from the Estate to Binafard (or his designee) and to pay from the Sale Escrow at BES:

A.     Seller's closing costs including, but not limited to, city and county transfer taxes, escrow fees, title fees, recording fees, and required reports (the "Closing Costs"), estimated to be approximately $11,179.50 based on information contained in the estimated closing statement prepared by BES (the "Estimated Closing Statement") (a true and correct copy of the Estimated Closing Statement is attached as Exhibit D to the Declaration);

B.     the secured portion of the Claim (defined below) in the amount of $20,000.00;

C.     the net proceeds to Trustee on behalf of the Estate (estimated at approximately $174,458.38) (the "Net Proceeds"); and

4.

D.   the undisputed liens listed below:

1.   the debt secured by the first deed of trust (the "First TD") in the original principal amount of $393,894.00 recorded on June 12, 2012 as instrument no. 12-870029 of Official Records in the Office of the Recorder of Los Angeles County, California ("Official Records") for the benefit of JPMorgan Chase Bank, with the beneficial interest assigned to Wilmington Savings Fund Society, FSB, as Indenture Trustee for the NRPL Trust 2019-3 Mortgage-Backed Notes Series 2019-3 ("Lender") by various assignments, the last of which was  recorded April 24, 2020 as Instrument No. 20-451536 of Official Records now in the estimated payoff amount of approximately $360,458.83 (based on the current payoff demand (the "Fay Payoff Demand") received from Fay Servicing, LLC ("Fay")), subject to a final payoff demand (the "First TD Payoff") to be provided to BES by Lender's current loan servicer, Fay (collectively with Lender, "First TD Holder"), referred to at exception no. 16 in the Preliminary Title Report identified by order number 5924112, updated as of July 9, 2020 (the "PTR") prepared by First American Title Company ("First American") (a true and correct copy of the PTR is attached as Exhibit C to the Declaration and a true and correct copy of the Fay Payoff Demand is attached as part of Exhibit E to the Declaration),

2.   the debt secured by those homeowners association assessment liens (the "HOA Liens") of Crown Towers Homeowners Association (the "HOA"), notice of which were recorded on June 1, 2015 as instrument no. 15-635549 of Official Records, on June 15, 2015 as instrument no. 15-705011 of Official Records, on August 29, 2018 as instrument no. 18-871931, and on August 29, 2018 as

5.

1  instrument no. 18-872016 of Official Records, and for which related

2  lis pendens were recorded on April 22, 2016 as instrument no. 16-

3  460005 of Official Records, on April 22, 2016 as instrument no. 16-

4  460332 of Official Records, on December 17, 2018 as instrument no.

5  18-1277295 of Official Records, and on December 17, 2018 as

6  instrument no. 18-1277302 of Official Records, now in the aggregate

7  estimated payoff amount of approximately $246,919.54 (based on the

8  current payoff demand (the "HOA Payoff Demand") received from HOA's

9  counsel and on the Estimated Closing Statement), subject to a final

10 payoff demand (the "Final HOA Payoff") to be provided to BES by

11 HOA's counsel, referred to at exception nos. 18-19, 21-22, and 24-27

12 in the PTR (a true and correct copy of the Fay Payoff Demand is

13 attached as part of <u>Exhibit E</u> to the Declaration), and

14        3.    pro-rated real property taxes, supplemental taxes,

15 and delinquent taxes owed to the County of Los Angeles as of the

16 closing date (the "Real Property Taxes") currently estimated at

17 $67,053.10 based on information contained at exception nos. 1-5 in

18 the PTR and in the Estimated Closing Statement.

19        To the extent there are other debts secured by valid,

20 enforceable liens recorded against the Real Property, if any, the

21 sale shall be free and clear of such liens and such liens shall

22 attach to the Net Proceeds in the amount, validity, and order of

23 priority that currently exist.  Trustee's position is that there are

24 no such valid, enforceable liens.  Trustee reserves the right to

25 object to and dispute any and all such liens.

26 **III. <u>DISPUTED AND ZERO BALANCE LIENS AND DEBTOR'S LIS PENDENS</u>**

27        In the PTR, there are certain liens, other than the First TD

28 and the HOA Liens, that are listed as recorded against the Real

Property.  One lien is being released without any payment required

as there is no remaining debt owed; a second lien is subject to a

*bona fide* dispute by Trustee; and a third  is a lis pendens recorded

by Debtor that Trustee will release.

A.    According to the correspondence dated October 22, 2019

(the "Zero Demand and Release") from Lexington National Insurance

Company ("Lexington"), no remaining balance is owed to Lexington

from the debt that previously was secured by that certain deed of

trust recorded January 10, 2013 as instrument no. 13-47743 of

Official Records for the benefit of Lexington (the "Lexington TD"),

referred to at exception no. 23 in the PTR.  A true and correct copy

of the Zero Demand and Release is attached as <u>Exhibit G</u> to the

Declaration.

B.    The deed of trust (the "Disputed TD") recorded February

13, 2018 as instrument no. 18-149351 of Official Records that

appears to secure debt of $30,000.00 for the benefit of Liubov

Parenago ("Parenago"), referred to at exception no. 20 in the PTR,

is in *bona fide* dispute as Debtor executed the Disputed TD after the

petition date of October 16, 2014 (the "Petition Date") without any

legal authority to do so.  Trustee is entitled to avoid and recover

the Disputed TD for the benefit of the Estate pursuant to 11 U.S.C.

§§547 and 551 and will file a complaint against Parenago to commence

an adversary proceeding related to the Case.  A true and correct

copy of the Disputed TD is attached as <u>Exhibit H</u> to the Declaration.

C.    A lis pendens recorded March 13, 2015 as instrument no.

15-276671 of Official Records, referred to at exception no. 17 in

the PTR (the "Machevsky Lis Pendens"), relates to title to the Real

Property that was resolved in favor of Debtor by that certain

7.

1  Default Judgment by Court in the Machevsky Case filed on August 26,

2  2016 (the "Judgment").   Trustee can execute a release of the

3  Machevsky Lis Pendens as title to the Real Property was returned to

4  Debtor by the Judgment.

5      Rather than delay the Settlement and the Sale Escrow, Trustee

6  requests that the *bona fide* dispute regarding the Disputed TD be

7  resolved after the close of the Sale Escrow as Trustee is informed

8  that the amount at issue (approximately $30,000.00) is less than the

9  Net Proceeds.

10  **IV.   <u>UNSECURED CLAIMS</u>**

11      The claims bar date in the Case was noticed for November 4,

12  2019 (the "Claims Bar Date").   Two (2) creditors timely-filed

13  claims.  Claim no. 1 ("Claim No. 1") is an unsecured claim to which

14  Trustee will object if the claim is not amended or withdrawn.  Claim

15  no. 2 ("Claim No. 2") is the secured claim of the HOA that will be

16  paid through the Sale Escrow.

17      Trustee and Jacqueline Calderin, Chapter 7 Trustee ("Calderin")

18  of the bankruptcy estate (the "Klemoff Estate") of debtor Izabella

19  Kleemoff ("Kleemoff") in case no. 20-12743-AJC in the United States

20  Bankruptcy Court, Southern District of Florida (Miami) (the

21  "Kleemoff Case") stipulated to that certain claim (the "Claim") of

22  Calderin, on behalf of the Kleemoff Estate, in the total amount of

23  $86,000.00 consisting of a secured portion in the amount of

24  $20,000.00 and an unsecured portion in the amount of $66,000.00.

25  A true and correct copy of the stipulation regarding the Claim (the

26  "Stipulation") is attached as <u>Exhibit F</u> to the Declaration.  The

27  Stipulation is the subject of a separate compromise motion that

28  Trustee is filing concurrently with the filing of the Motion.

8.

**V.   FINDING OF GOOD FAITH PURCHASER**

By the Motion, Trustee requests that the Order include a finding that Binafard is a "good faith purchaser" pursuant to Bankruptcy Code §363(m).

**VI.   TURNOVER OF REAL PROPERTY BY DEBTOR AND ENFORCEMENT**

By the Motion and pursuant to 11 U.S.C. §§542 and 105, Trustee requests that Debtor be required to turn over the Real Property to Trustee.  Such relief is necessary to allow Trustee to perform his statutory duties to liquidate the Real Property and pay creditors of the Estate.  The Real Property is property of the Estate and the Agreement requires Trustee to deliver the Real Property vacant to Binafard to close the Sale Escrow.

Trustee requests that the Order require that Debtor, prior to August 31, 2020:

A.   Turn over to Trustee all keys, garage openers, security or computer codes, combinations to locks, and any other implement or code necessary to access or secure the Real Property;

B.   Vacate the Real Property and cause anyone living with Debtor ("Other Occupant") to vacate the Real Property; and

C.   Remove all exempt personal property that belongs to Debtor and/or any Other Occupant without causing material damage to or leaving excess debris at the Real Property.

If Debtor and Other Occupant, if any, fail to comply with the August 31, 2020 deadline, Trustee further requests that the Order provide that Trustee may enforce the Order with the assistance of law enforcement including, but not limited to, the United States Marshal, and that Trustee shall be entitled, on an emergency *ex parte* basis, to seek a writ of possession from this Court.

9.

1  VII. **BASIS FOR MOTION AND NOTICE**

2      The Motion is based on and made pursuant to Federal Rule of

3  Bankruptcy Procedure 9019, 11 U.S.C. §§363(b), (f) and (m), and

4  Local Bankruptcy Rule 9013-1(o), the memorandum of points and

5  authorities and the Declaration, including exhibits, attached

6  thereto, and this notice of the Motion (the "Notice") being filed

7  with this Court and served on Debtor, the United States Trustee,

8  all creditors, and other interested parties.

9      PLEASE TAKE FURTHER NOTICE that in accordance with Local

10  Bankruptcy Rule 9013-1(o)(1), if you oppose the Motion you must

11  file a written "Objection and Request for Hearing" within

12  fourteen (14) days of the date of service of this Notice and

13  serve a copy of the "Objection and Request for Hearing" on

14  Trustee at the address of Trustee's counsel set forth above and

15  on the United States Trustee, 915 Wilshire Boulevard, Suite 1850,

16  Los Angeles, California 90017.  Failure to timely file and serve

17  the "Objection and Request for Hearing" may result in the Court's

18  entry of an order approving the Motion.

19      PLEASE TAKE FURTHER NOTICE that Local Bankruptcy Rule 9013-

20  1(h) provides:  "If a party does not timely file and serve

21  documents, the court may deem this to be consent to the granting

22  or denial of the motion, as the case may be."

23  DATE:  August 11, 2020          ZAMORA & HOFFMEIER,
                                     A Professional Corporation
24

25

26                                  By:  /s/Nancy Hoffmeier Zamora
                                         Nancy Hoffmeier Zamora
27                                       Attorneys for Chapter 7 Trustee
                                         Wesley H. Avery
28

10.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

U.S. Bank Tower, 633 West 5th Street, Suite 2600, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*):
**NOTICE OF MOTION FOR ORDER: (1) APPROVING COMPROMISE; (2) AUTHORIZING TRUSTEE TO TRANSFER REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS; (3) REQUIRING DEBTOR TO TURN OVER REAL PROPERTY OF THE ESTATE; AND (4) AUTHORIZING TRUSTEE TO UTILIZE U.S. MARSHAL AND OTHER LAW ENFORCEMENT**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 11, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

U.S. Trustee: United States Trustee, ustpregion16.la.ecf@usdoj.gov
Trustee: Wesley H Avery (TR) wes@averytrustee.com, C117@ecfcbis.com, lucy@averytrustee.com, Isabel@averytrustee.com
Counsel for Trustee: Nancy H. Zamora, zamora3@aol.com
Counsel for Binafard: Charles Shamash, cs@locs.com, generalbox@locs.com
Counsel for Crown Towers HOA: Johnny White, JWhite@wrslawyers.com, aparisi@wrslawyers.com, eweiman@wrslawyers.com, chamilton@wrslawyers.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On August 11, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Nikolay Machevsky, 10701 Wilshire Blvd., 1802, Los Angeles, CA  90024
U.S. Trustee: Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA  90017
Escrow: Sebastian Amirian, Better Escrow Service, 3303 Burbank Blvd., Burbank, CA 91505
Title: Michelle Pascual, First American Title, 207 Goode Ave., Suite 410, Glendale, CA  91203
Trustee Calderin: Jesse Randall Cloyd, Esq., Agentis Law, 55 Alhambra Place, Suite 800, Coral Gables, FL 33134
Lienholders: Jim Lawlor, Bankruptcy Account Manager, Personal NMLS #401469, Fay Servicing, LLC
425 S. Financial Place, Suite 2000, Chicago, IL 60605; Lexington National Insurance Corporation
P.O. Box 6098, Lutherville, MD 21094, Attn: Ashley Deady; Los Angeles County Tax Collector, 225 North Hill Street, #1, Los Angeles, CA 90012; Liubov Parenago, 5280 Los Bonitos Way, Los Angeles, CA  90027-1008

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 11, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 11, 2020 | Cynthia Casas | /s/ Cynthia Casas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## Additional Service List for Notice

American Medical Response
20101 Hamilton Ave, Ste 300
Torrance, CA 90502

Asset Acceptance LLC
P.O. Box 1630
Warren, MI 48090

Atlas Judgment Recovery
269 S. Beverly Dr. Ste. 102
Beverly Hills, CA 90212

Aurora Las Encinas, LLC
P.O. Box 77430
Corona, CA 92877-0114

Awa Collections
P.O. Box 6605
Orange, CA 92863

Bay Area Credit Service
P.O. Box 468449
Atlanta, GA 31146

Cap One
P.O. Box 85520
Richmond, VA 23285

Capital One
P.O. Box 85520
Richmond, VA 23285

Cedars Sinai Imaging Medical group
P.O. Box 607
Newbury Park, CA 91319-0607

Cedars Sinai Medical Center
File 1108
1801 West Olympic
Pasadena, CA 91199-1108

Credit Collection Services
Two Wells Ave
Newton Center, MA 02459

First Premier Bank
601 S Minnesota Ave
Sioux Falls, SD 57104

Grant & Weber
26575 West Agoura Road
Calabasas, CA 91302

LCA Collections
P.O. Box 2240
Burlington, NC 27216-2240

Medicredit Corporation
1801 California Ave
Corona, CA 92881

Merrick Bank
P.O. Box 9201
Old Bethpage, NY 11804

Midland Funding
8875 Aero Dr Ste 200
San Diego, CA 92123

Olympia Medical Center
Business Office
5900 West Olympic Blvd
Los Angeles, CA 90036

Osbourne Head & Neck Institute
8631 W. Third Street, Ste 945E
Los Angeles, CA 90048

Prog Mgt Sys
1521 W. Cameron Av First Floor
West Covina, CA 91790

Quest Diagnostics
P.O. Box 740987
Cincinnati, OH 45274-0987

Sequoia Financial Services
500 N. Brand Blvd
Glendale, CA 91203

SMPA
2400 Mission Street
San Marino, CA 91108

UCLA Dentistry
Box 951668, CHS A0-156
Los Angeles, CA 90095-1668

UCLA Medical Center
File 748260
Los Angeles, CA 90074-8260

UCLA Medical Group
P.O. Box 748156
Los Angeles, CA 90074-8156

UCLA Medical Group
File #749220
Los Angeles, CA 90074-9220

USCB America
P.O. Box 74929
Los Angeles, CA 90004

Westside Recovery Services
6200 Wilshire Blvd., #1100
Los Angeles, CA 90048

In re    **Nicolay Machevsky  Debtor**                                    **2:14-bk-29611 RK**
                                                                           **Chapter 7**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **17835 Ventura Blvd., Suite 306, Encino, CA 91316**

A true and correct copy of the foregoing document entitled MOTION UNDER F.R.C.P. RULE 60(B)(1), (3) AND (6) TO SET ASIDE ONE PORTION OF ENTERED ORDER (1) APPROVING COMPROMISE; (2) AUTHORIZING TRUSTEE TO TRANSFER REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS; (3) REQUIRING DEBTOR TO TURN OVER REAL PROPERTY OF THE ESTATE; AND (4) AUTHORIZING TRUSTEE TO UTILIZE U.S. MARSHAL AND OTHER LAW ENFORCEMENT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 17, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Wesley H Avery (TR) wes@averytrustee.com, C117@ecfcbis.com;lucy@averytrustee.com;
alexandria@averytrustee.com Charles Shamash cs@locs.com, generalbox@locs.com United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov Johnny White Jwhite@wrslawyers.com, aparisi@wrslawyers.com;
eweiman@wrslawyers.com;chamilton@wrslawyers.com Nancy H Zamora zamora3@aol.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **October 18, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor" Nikolay Machevsky, 10701 Wilshire Blvd, 1802, L.A. CA 90024 by mail on October 19, 2020

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 19, 2020**, I will cause the following persons and/or entities to be served by personal delivery, ~~overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows~~.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Robert Kwan, U.S. Bankruptcy Judge, 255 East Temple Street. L.A. CA 90021

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Oct. 18, 2020 | Steven R. Fox | /s/ Steven R. Fox |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.